IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No.: 5:17-cv-460-FL

| | |
|---|---|
| TBM CONSULTING GROUP, INC., BILL REMY, MICHELE BENNETT, DAN SULLIVAN, and KEN KOENEMANN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| LUBBOCK NATIONAL BANK, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

FRANKFURT KURNIT KLEIN & SELZ, P.C.
John B. Harris
Amelia K. Brankov
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120

*Attorneys for Plaintiffs
TBM Consulting Group, Inc., Bill Remy, Michele
Bennett, Dan Sullivan and Ken Koenemann*

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND...................................................................................................... 1

LEGAL STANDARD............................................................................................................. 3

ARGUMENT ......................................................................................................................... 6

    I.  THE INDIVIDUAL PLAINTIFFS HAVE STANDING TO BRING THE
        ERISA CLAIMS ................................................................................................... 6

    II.  TBM'S NEGLIGENT MISREPRESENTATION CLAIM IS NOT
        PREEMPTED BY ERISA ................................................................................. 144

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbott v. Lockheed Martin Corp.,
  No. 06-CV-0701-MJR, 2010 WL 547172 (S.D. Ill. Feb. 10, 2010)........................................11

Ashcroft v. Iqbal,
  556 U.S. 662 (2009).........................................................................................................6

Blankenship v. Chamberlain,
  695 F. Supp. 2d 966 (E.D. Mo. 2010)...............................................................................8

Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,
  519 U.S. 316 (1997) (Scalia, J., concurring) .........................................................15

CGM, LLC v. BellSouth Telecommunications, Inc.,
  664 F.3d 46 (4th Cir. 2011) ...........................................................................................4, 5

Clatterbuck v. City of Charlottesville,
  708 F.3d 549 (4th Cir. 2013) ....................................................................................12, 13

Coan v. Kaufman,
  457 F.3d 250 (2d Cir. 2006)......................................................................................5, 8, 9

Coyne & Delany Co. v. Selman,
  98 F.3d 1457 (4th Cir. 1996) ......................................................................................17

Darcangelo v. Verizon Commc'ns, Inc.,
  292 F.3d 181 (4th Cir. 2002) ..................................................................................16, 17

David v. Alphin,
  704 F.3d 327 (4th Cir. 2013) .........................................................................................5

Fish v. Greatbanc Trust Co.,
  667 F. Supp. 2d 949 (N.D. Ill. 2009) ...........................................................................11

Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske
  Logistics LLC,
  No. ELH-12-2376, 2013 WL 3895011 (D. Md. July 25, 2013) .................................4

George v. Kraft Foods Global, Inc.,
  No. 08-C-3799, 2011 WL 5118815 (N.D. Ill. Oct. 25, 2011) .................................11

Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.,
  523 F.3d 266 (4th Cir. 2008) .........................................................................................16

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2003) ...............................................................................................6

*Griggs v. E.I. Dupont de Nemours & Co.*,
  237 F.3d 371 (4th Cir. 2001) ................................................................................18

*Huizinga v. Genzink Steel Supply & Welding Co.*,
  No. 1:10-CV-223, 2013 WL 4511291 (W.D. Mich. Aug. 23, 2013) ...................7, 9

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ...............................................................................................18

*Jenkins v. Moses H. Cone Memorial Health Services Corp.*,
  No. 5:16-cv-0188-FL, 2016 WL 9406697 (E.D.N.C. Dec. 30, 2016) ...................18

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ...................................................................................7

*LeBlanc v. Cahill*,
  153 F.3d 134 (4th Cir. 1998) ................................................................................19

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) .................................................................................................5

*Medical Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC*,
  No. 2:11-cv-1522, 2012 WL 683938 (D.S.C. Mar. 2, 2012) ...................................4

*Mendenhall v. Out of Site Infrastructure, Inc.*,
  No. 14-4996, 2017 WL 3394735 (E.D. Pa. Aug. 8, 2017) ....................................10

*In re Mutual Fund Investment Litigation*,
  529 F.3d 207 (4th Cir. 2008) ...................................................................................5

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995) ..........................................................................................15, 17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com., Inc.*,
  591 F.3d 250 (4th Cir. 2009) ...................................................................................5

*Perez v. Bruister*,
  54 F. Supp. 3d 629 (S.D. Miss. 2014), *modified on other grounds,* 823 F.3d
  250 (5th Cir. 2016) .................................................................................................10

*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) .............................................................................5, 13

*Raritan River Steel Co. v. Cherry, Bekaert & Holland*,
    322 N.C. 200, 367 S.E.2d 609 (1988) ................................................................18

*Sonoco Prods. Co. v. Physicians Health Plan*,
    338 F.3d 366 (4th Cir. 2003) ...............................................................14, 16, 17

*Stevens v. E.I. Dupont de Nemours & Co.*,
    145 F. Supp. 3d 541 (E.D.N.C. 2015) .............................................................18

*Thornton v. Evans*,
    692 F.2d 1064 (7th Cir. 1982) ...........................................................................9

*Wagner v. Stiefel Laboratories, Inc.*,
    No. 1:12-CV-3234-MHC, 2015 WL 4557686 (N.D. Ga. June 18, 2015) ...............11

*Waldron v. Dugan*,
    No. 07 C 286, 2007 WL 4365358 (N.D. Ill. Dec. 13, 2007) ...........................7, 8, 9

*Wilmington Shipping Co. v. New England Life Insurance Co.*,
    496 F.3d 326 (4th Cir. 2007) ..........................................................................5, 8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ........................................................................11, 12

**Statutes**

ERISA § 2, 29 U.S.C. § 1001 ................................................................15, 16

ERISA § 3, 29 U.S.C. § 1002 ....................................................................1, 16

ERISA § 406, 29 U.S.C. § 1106 ...........................................................................2

ERISA § 502, 29 U.S.C. § 1132 .................................................... *passim*

ERISA § 514, 29 U.S.C. § 1144 .........................................................14, 15, 19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...............................................3, 4, 5

Federal Rule of Civil Procedure 12(b)(6) .......................................... *passim*

Federal Rule of Civil Procedure 23 .....................................................................7

Federal Rule of Civil Procedure 23.1 ..................................................................7

Federal Rule of Civil Procedure 52 .....................................................................5

Federal Rule of Evidence 201 ...........................................................................12

Plaintiffs TBM Consulting Group, Inc. ("TBM") and Bill Remy, Michele Bennett, Dan Sullivan and Ken Koenemann (the "Individual Plaintiffs") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in opposition to the motion by defendant Lubbock National Bank ("Defendant" or "Lubbock") to dismiss the Complaint for lack of statutory standing and for failure to state a claim. As set forth more fully below, each of the Individual Plaintiffs, as participants in the ERISA Plan at issue in this case, is statutorily permitted to sue Lubbock for breach of Lubbock's fiduciary duty and, as co-plaintiffs, will take appropriate steps to represent the Plan as a whole. Similarly, TBM, as a non-beneficiary suing Lubbock purely for state law negligent misrepresentation, states a valid claim and is not preempted by ERISA from pursuing Lubbock for damages.

For these reasons, Lubbock's makeweight motion to dismiss should be summarily rejected.

## FACTUAL BACKGROUND

TBM is a management consulting firm headquartered in Morrisville, North Carolina. Complaint ("Compl.") (Dkt. No. 1) ¶ 11. In order for TBM employees to obtain an ownership interest in the company, in or around 2003, TBM established an employee stock ownership plan known as the "TBM Consulting Group, Inc. Employee Stock Ownership Plan" (the "ESOP" or the "Plan"), which is a pension plan covered by ERISA. *Id.* ¶¶ 12-14.

In or around 2011, in anticipation of his retirement, Anand Sharma, who was then TBM's President and Chief Executive Officer, proposed to sell to the ESOP most of the shares of TBM Series B common stock that he owned personally or that were owned by two entities that Sharma managed and/or controlled, the Anand Sharma 2009 GRAT and Lotus One, LLC (collectively, "the Sharma Parties"). *Id.* ¶¶ 15, 17. Sharma and the Sharma Parties were parties-in-interest under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H) and the transaction (the "ESOP Transaction")

was therefore a "prohibited transaction" under ERISA § 406(a), 29 U.S.C. § 1106(a), subject to limited statutory exemptions. Compl. ¶ 19.

In or about July 2011, just weeks before the ESOP Transaction, Sharma recommended to the TBM Board of Directors that it replace the longstanding trustee of the ESOP (North Star Trust Company), with Lubbock, and the Board agreed to the replacement. *Id.* ¶¶ 20-21. As alleged by Plaintiffs, Lubbock was propounded as Trustee based on its close relationship with the attorney advising TBM and Sharma with respect to the ESOP Transaction. *Id.* ¶ 24.

Lubbock's duty as Trustee of the ESOP was to independently represent the participants of the ESOP and the related trust. *Id.* ¶ 29. Lubbock retained a financial advisor to prepare a valuation of TBM stock for the ESOP Transaction, and a fairness opinion concerning, among other things, the proper consideration to be paid by the ESOP for the shares to be sold by the Sharma Parties. *Id.* ¶ 32-33. Although Plaintiffs do not have access to the valuation report prepared in connection with the ESOP Transaction, Plaintiffs allege upon information and belief that the report relied heavily on financial projections for 2011 through 2015 which, influenced by Sharma, reflected substantial future increases in the business of TBM. *Id.* ¶ 34. These forecast increases were inconsistent with the company's historical performance, as audited, for the years 2006 through 2010, and with the internally prepared financial statements of TBM for the first seven months of 2011. *Id.* ¶ 35. The projections relied upon by Lubbock were never subsequently achieved and were well in excess of TBM's actual performance. *Id.* ¶ 36.

Despite Lubbock's unfamiliarity with TBM, its knowledge that the future projections were heavily influenced by Sharma (whose obvious interest was to maximize the amount paid by the ESOP), and its knowledge that the actual historical performance of TBM significantly differed from the projections, Lubbock nonetheless rushed to close the ESOP Transaction, ignoring multiple red flags before it. *Id.* ¶ 38.

Lubbock closed the ESOP Transaction on September 12, 2011. *Id.* ¶ 40. In that transaction, the Sharma Parties sold to Lubbock as Trustee 62,239.26 shares of TBM stock for $10,500,000 in cash, paid at the closing. *Id.* ¶ 42. Lubbock knew that TBM – a non-participant in the ESOP – was relying on its independent, objective determination of the purchase price and that TBM was borrowing money that would, in turn, be loaned to the ESOP to finance the ESOP Transaction. In actual reliance on Lubbock's determination, TBM in fact loaned the ESOP $10.5 million, which it financed through a credit facility from Fifth Third Bank. *Id.* ¶ 43.

Unbeknownst to Plaintiffs, instead of abiding by its duties under ERISA to assess the true fair market value of the shares owned by the Sharma Parties and to negotiate the price and other terms of the ESOP Transaction in the best interest of the ESOP, Lubbock, in order to appease its attorney referral source and to benefit the Sharma Parties, instead allowed the ESOP to overpay the Sharma Parties by millions of dollars, thereby damaging the ESOP and the Individual Plaintiffs. *Id.* ¶ 48. TBM was independently injured because it justifiably relied upon Lubbock's diligence and independence in assessing the fair market value of the shares sold by the Sharma Parties and thereby was induced to borrow far more than it should have been required to borrow. *Id.* ¶ 49.

## LEGAL STANDARD

In the first part of its motion to dismiss, Lubbock argues that the Individual Plaintiffs lack statutory standing to bring their claims under Section 502(a)(2) of ERISA and, using extrinsic documents not referenced in the Complaint, attack one of the Individual Plaintiffs as an inadequate representative of the absent Plan participants—an argument that Lubbock asserts is a "factual challenge to subject matter jurisdiction," governed by Federal Rule of Civil Procedure 12(b)(1). Defendant's Mem. in Support of Mot. to Dismiss ("Def. Mem.") (Dkt. No. 19) at 12 n.3; *see also id.* at 6 ("The question whether plaintiffs have standing under section 502(a)(2) is a

question of subject matter jurisdiction." (citation omitted)). Lubbock thus claims that the Complaint is not to be judged on its face, but can be undermined by Lubbock's factual allegations.

Lubbock is wrong. This motion is not governed by Rule 12(b)(1), but rather must be resolved through the conventional standards of Rule 12(b)(6), which requires courts to look to the face of the pleading and generally forbids raising factual issues through extrinsic documents. As the Fourth Circuit made clear in *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011), Rule 12(b)(6) governs motions to dismiss for lack of statutory standing, while 12(b)(1) governs, among other things, the separate requirement of Article III standing. The *CGM* court noted that statutory standing is "a concept distinct from Article III and prudential standing," and is "perhaps best understood" as not standing at all, but as "'statutory construction.'" *Id.* at 52-53 (quoting *Washington-Dulles Transp., Ltd. v. Metro. Wash. Airports Auth.*, 263 F.3d 371, 377 (4th Cir. 2001)). As a result, multiple courts in this Circuit have expressly rejected defendants' attempts to apply Rule 12(b)(1) to dismiss ERISA actions for lack of statutory standing. *See, e.g.*, *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, No. ELH-12-2376, 2013 WL 3895011, at *5 (D. Md. July 25, 2013) (concluding that a motion to dismiss for lack of statutory standing under ERISA "d[id] not present a jurisdictional issue appropriate for resolution under Rule 12(b)(1)," and was instead governed by Rule 12(b)(6)); *Medical Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC*, No. 2:11-cv-1522, 2012 WL 683938, at *2 (D.S.C. Mar. 2, 2012) ("Because defendant argues plaintiff lacks statutory standing [under ERISA], this court will consider whether plaintiff sufficiently stated a claim upon which relief can be granted rather than analyze the case under Rule 12(b)(1).").

4

Here, Lubbock makes no claim that the Individual Plaintiffs lack Article III standing and—despite the clear authority set forth above—erroneously claims the right to raise factual arguments against statutory standing. None of the authorities Lubbock cites holds that Rule 12(b)(1) applies to challenges to statutory standing. *Wilmington Shipping Co. v. New England Life Insurance Co.*, 496 F.3d 326, 337-38 (4th Cir. 2007) and *In re Mutual Fund Investment Litigation*, 529 F.3d 207, 219 (4th Cir. 2008) both *separately* address statutory standing under ERISA from Article III standing, and do not apply Rule 12(b)(1) rather than 12(b)(6) to the statutory standing allegation.[1] Indeed, not one of the cases cited by Lubbock regarding the adequacy of Plaintiffs' representation of the Plan or of absent Plan participants permitted the introduction of extrinsic evidence to challenge statutory standing under Rule 12(b)(1) and virtually all of the cases arose at a substantially later stage in the proceedings. *See, e.g.*, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 137 (1985) (summary judgment); *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016) (findings of fact and conclusions of law under Rule 52); *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (summary judgment).

Because Lubbock's motion to dismiss against the Individual Plaintiffs' statutory standing is properly governed by Rule 12(b)(6), the standard is whether the Complaint is legally sufficient and the Court must "accept[] all well-pled facts as true and construe[] these facts in the light most favorable to the plaintiff . . . ." *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com., Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Adcock*

---

[1] Another Fourth Circuit case cited by Lubbock, *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) does not hold otherwise. While that case states that "we have subject matter jurisdiction over ERISA claims only where the appellants have both statutory *and* constitutional standing," that case does not contradict *CGM* by holding that the Rule 12(b)(1) standard applies to issues of statutory standing. *See id.* (emphasis in original). In fact, it was undisputed in *David* that plaintiffs had statutory standing under ERISA.

*v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008)).  A complaint need not contain "detailed factual allegations," to survive a Rule 12(b)(6) motion, but it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Plaintiffs readily satisfy this standard.

## ARGUMENT

## I.

## THE INDIVIDUAL PLAINTIFFS HAVE STANDING TO BRING THE ERISA CLAIMS

Lubbock claims that the Individual Plaintiffs do not have standing to bring the ERISA claims because they "have made no effort to adequately represent the Plan or absent Plan participants," and therefore the Court lacks subject matter jurisdiction over these claims.  Def. Mem. at 6-15.[2]  This claim is puzzling at best.  Not only do the Individual Plaintiffs make clear that they are acting to benefit the Plan as a whole, *see* Compl. ¶ 9, the reality is that neither ERISA nor the Federal Rules of Civil Procedure impose any heightened requirement upon participants to demonstrate that they made special efforts to adequately represent the interests of other participants in order to seek recovery on behalf of the ESOP.  Lubbock's claim is badly misplaced.

ERISA is a "'comprehensive and reticulated statute, the product of a decade of congressional study.'"  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209

---

[2] TBM is not asserting an ERISA claim.  Therefore, there is no reason to address Def. Mem. Section I(B).

(2003) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)) (internal quotation marks omitted); *see also Waldron v. Dugan*, No. 07 C 286, 2007 WL 4365358, at *6 (N.D. Ill. Dec. 13, 2007). "For this reason, courts should be very reluctant to tinker with its plain language." *See Waldron*, 2007 WL 4365358, at *6.

By its terms, ERISA authorizes participants to sue in their individual capacity. Section 502(a)(2) expressly provides that "[a] civil action may be brought— . . . by the Secretary [of Labor], or by a [plan] participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title . . . ." 29 U.S.C. § 1132(a)(2). The Individual Plaintiffs allege—and it is unchallenged—that they are participants of the ESOP, and that Lubbock, an undisputed fiduciary, breached its fiduciary duty ("the ERISA Claims"), claims squarely within the scope of ERISA Section 502(a)(2).

On its face Section 502(a)(2) does *not* require participants to sue as a class, in a derivative capacity, or use any other special procedures to represent absent participants. *See* 29 U.S.C. § 1132(a)(2). Further, neither Rule 23 (which governs class actions) nor Rule 23.1 (which governs derivative actions) requires suits against ERISA fiduciaries to use special procedures. *See* Fed. R. Civ. P. 23 (lacking any mandatory requirements for any type of case to be brought as a class action); Fed. R. Civ. P. 23.1 (setting forth derivative procedures for suits involving corporations or unincorporated associations); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462-63 (9th Cir. 1995) (Rule 23.1 does not apply to Section 502(a)(2) suits); *Huizinga v. Genzink Steel Supply & Welding Co.*, No. 1:10-CV-223, 2013 WL 4511291, at *8 (W.D. Mich. Aug. 23, 2013) (holding that plaintiff "is a Plan participant, and he is seeking to recover for the Plan as a whole. These are the only requirements on the face of the statute, itself"). Given that neither ERISA nor the Federal Rules of Civil Procedure mandate any special

procedures, this Court should decline Defendant's invitation to impose such a requirement on the Individual Plaintiffs. *See Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 973-74 (E.D. Mo. 2010) (participants adequately represented plan by naming multiple plaintiffs and those plaintiffs conceded they could only recover for the plan); *Waldron,* 2007 WL 4365358, at *5-7 (declining to impose class-or derivative-action requirement on Section 502(a)(2)).

In the absence of any support from the text of ERISA and the procedural rules, Lubbock relies exclusively on much-criticized decisions from courts outside this Circuit where plaintiffs were found not to be adequate representatives to assert claims on behalf of the Plan. As Lubbock concedes, the Fourth Circuit has never required plaintiffs in ERISA cases to establish that they are adequate representatives of the plan and absent plan participants in order to seek restoration of funds to a plan caused by breaches of fiduciary duty by a trustee. *See* Def. Mem. at 7. Indeed, when called upon to interpret Section 502(a)(2), the Fourth Circuit has adhered to the plain language of the statute, which permits participants to sue without qualification. *See Wilmington Shipping*, 496 F.3d at 338 (in ruling that plan participants had standing to sue for fiduciary breaches after plan termination and appointment of a statutory trustee, court stated that "[t]he statute grants plan participants the right to sue for breach of fiduciary duty without qualification.").

Lubbock's citation to the Second Circuit's decision in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), which affirmed a grant of summary judgment following discovery on an individual's claim under Section 502(a)(2) (*see* Def. Mem. at 8), is misguided. In *Coan*, the court held that plaintiff, a plan participant, failed to represent adequately the interests of the other plan participants in a suit against former trustees of a defunct profit-sharing plan. *Id.* at 262. The court's decision relied heavily on the plan's defunct status, expressing concern about the

practical problems of temporarily resuscitating the plan and restoring funds to it, and questioning whether proceeding with this solitary plaintiff would create an opportunity to reach a settlement that would disproportionately, or exclusively, benefit her rather than the absent plan beneficiaries. *Id.* at 261.[3] Here, the ESOP is still in existence, and there is no doubt that this action, if successful, would benefit all Plan participants. Thus, none of the concerns in *Coan* are present in this case.

Even if *Coan* were factually similar, courts around the country have rejected its reasoning and refused to engraft additional requirements onto ERISA or to dismiss an action based on *Coan*'s reasoning. For example, in *Huizinga,* the plaintiff filed suit in a representative capacity for breach of fiduciary duty regarding the mismanagement of an ERISA governed 401(k) plan. *See* 2013 WL 4511291, at *1, 8. The court held that the plaintiff did not have to satisfy any procedural safeguards in order to bring a claim on behalf of the plan, stating:

> [N]one of the concerns from *Coan* are present here. There is no risk of a self-serving settlement because, in his breach of fiduciary duty claim, Huizinga seeks to recover only on behalf of the Plan as a whole. Because the Plan is still in existence, it is not likely there will be any serious problems disbursing the money back into the Plan and among its participants according to the Plan's terms. And as for the possibility of preclusion in future litigation, the preclusion doctrines themselves contain adequate safeguards—for example, the requirement of privity in some cases, and the requirement that a particular issue have been fully and fairly litigated before issue preclusion applies.

*Id.* at *8; *see also Waldron*, 2007 WL 4365358, at *6 (declining to follow *Coan*: "[T]he court is unwilling to add [a rule requiring section 502(a)(2) claims to be brought as a class action or in a manner analogous to derivative shareholder suits] to ERISA's carefully elaborated design.");

---

[3] *Thornton v. Evans,* 692 F.2d 1064 (7th Cir. 1982) (Def. Mem. at 7), is similarly inapposite. That case involved a claim by a participant against *a non-fiduciary*, which is a judicially-created supplement to ERISA relief; that case does not hold or imply that an action by a plan participant against a fiduciary under Section 502(a)(2) must be pled derivatively or as a class action. *See id.* at 1079-80. In fact, the court acknowledged that Section 502(a)(2) specifically authorizes individual suits by participants against plan fiduciaries. *Id.* at 1080 n. 35.

*Perez v. Bruister*, 54 F. Supp. 3d 629, 650 (S.D. Miss. 2014) (adopting the analysis from *Huizinga*), *modified on other grounds,* 823 F.3d 250 (5th Cir. 2016).

There are numerous other reasons why no additional procedural safeguards should be required.  Unlike in other cases in which procedural safeguards were deemed necessary, this case is not brought by a lone plaintiff, but rather is brought by four individual plaintiffs of a relatively-small corporation.  *See Mendenhall v. Out of Site Infrastructure, Inc.,* No. 14-4996, 2017 WL 3394735, at *6 (E.D. Pa. Aug. 8, 2017) (Def. Mem. at 10) (noting that the "Complaint identifies Plaintiff as the sole party bringing this action, and does not allege that he is bringing any claims in a representative capacity").  Additionally, because this case involves a claim that the ESOP overpaid for the shares sold by the Sharma Parties, the losses suffered by the participants are coterminous with those of the ESOP, and the Individual Plaintiffs have acknowledged that they are proceeding with their claims on behalf of the ESOP.  Therefore, there is no risk that the proceeds will not be distributed appropriately in the event of a favorable recovery, and no risk of self-dealing by the Individual Plaintiffs as representatives of the group.  Moreover, although Lubbock also raises concern that litigants in future cases will be impacted adversely by issue preclusion if the Individual Plaintiffs are allowed to proceed—specifically, that participants will lose the opportunity to sue one or more of the Individual Plaintiffs for failing to stop the ESOP Transaction, (Def. Mem. at 13)—that claim is meritless.  As Lubbock states, this suit was brought one day before the statute of limitations was due to expire on the ESOP Transaction.  *Id.*  Under these circumstances, the claim that other participants will be somehow deprived of a remedy based on issue preclusion rings hollow since those claims would have been time-barred had the Individual Plaintiffs not filed suit, and the Individual Plaintiffs have pledged to act in the interests of the Plan.

*Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949 (N.D. Ill. 2009) (Def. Mem. at 9)

involved concerns about procedural fairness that are not present here.   The *Fish* court required

the parties to discuss the most appropriate means of structuring the case so that all plan

participants would be bound, an approach the court deemed necessary because there was a

potentially dispositive statute of limitations issue.  *Id.* at 951.  Here, Lubbock has conceded that

this case is timely—it was brought one day before the statute of limitations expired—and

therefore, the concerns presented in the *Fish* case do not apply here.[4]

     As set forth above, Lubbock improperly seeks to undermine the standing of one of the

Individual Plaintiffs by resort to extrinsic evidence unavailable under Rule 12(b)(6).

"Consideration of extrinsic documents by a court during the pleading stage of litigation

improperly converts the motion to dismiss into a motion for summary judgment," which is not

appropriate absent an opportunity to conduct reasonable discovery.  *Zak v. Chelsea Therapeutics*

*Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon*

*Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

     Specifically, Lubbock seeks to introduce the Plan's IRS Form 5500 filed annually from

2011 to 2016 and signed by Individual Plaintiff Michele Bennett as TBM's Director of Finance.

*See* Def. Mem. Ex. B.  Lubbock claims that she lacks statutory standing because the forms she

---

[4]  Lubbock's reliance on two Illinois cases involving class certification are also
distinguishable.  *See George v. Kraft Foods Global, Inc.*, No. 08-C-3799, 2011 WL 5118815, at
*10-11 (N.D. Ill. Oct. 25, 2011) (Def. Mem. at 9-10) (plaintiffs failed to establish that
certification of a proposed class was appropriate; court declined to allow plaintiffs to get around
their failed class claims by bringing claims directly under 502(a)(2)); *Abbott v. Lockheed Martin
Corp.*, No. 06-CV-0701-MJR, 2010 WL 547172, at *4 (S.D. Ill. Feb. 10, 2010) (denying direct
action under Section 502(a)(2) where it was an attempt to evade court's ruling that intra-class
conflicts preclude class certification).  Also distinguishable is *Wagner v. Stiefel Laboratories,
Inc.*, No. 1:12-CV-3234-MHC, 2015 WL 4557686, at *8-11 (N.D. Ga. June 18, 2015) (case
reflected the fifth ERISA lawsuit against the company over the same allegations, and three of the
plaintiffs had signed releases and covenants not to sue).

signed do not disclose that the ESOP Transaction was a prohibited transaction, and because she

is theoretically liable herself in connection with the ESOP Transaction if she was knowingly

involved in it or concealed the facts. Def. Mem. at 12-13. Even assuming *arguendo* that there is

a basis for the Court to consider these forms notwithstanding Rule 12(b)(6),[5] these forms do not

prove that Ms. Bennett acted improperly, nor should Lubbock's allegations that she did be

considered by the Court. Indeed, as alleged in the Complaint, the Individual Plaintiffs, including

Ms. Bennett, did not know—and could not have known—earlier of significant information

regarding Lubbock's actions, including its conflict of interest and its pattern of over-valuing

shares in analogous situations of substantial shareholders cashing out at the ESOP's expense.

Compl. ¶ 50. Further, the Individual Plaintiffs aver that they were not privy to other significant

information respecting the ESOP Transaction that would have shed light on the transaction,

including the inflated valuation report on which Lubbock claims to have relied and other

information in its files that would shed light on its actions. *See id.* ¶¶ 50-51.

Under these circumstances, Lubbock cannot avoid scrutiny of its own conduct by

pointing fingers at Ms. Bennett or other Individual Plaintiffs for their supposed complicity or

alleged knowledge of Lubbock's breach of duty. At this stage, the Court must treat the

---

[5] Lubbock argues that the tax forms are subject to judicial notice under Federal Rule of Evidence 201 and appropriately considered at this stage. Even if the filing of tax forms and their signing by Ms. Bennett can be judicially noticed, Lubbock's use of judicial notice goes far beyond that limited purpose, and instead seeks to establish that Ms. Bennett somehow knew the contents of the forms were false. The point of judicial notice is to allow the court to consider matters that are beyond dispute. Here, the inference that Lubbock seeks to draw from the tax filings is obviously contested. Moreover, even assuming that the forms are judicially-noticeable, "when a court considers relevant facts from the public record at the pleading stage, *the court must construe such facts in the light most favorable to plaintiffs*," *Zak*, 780 F.3d at 607 (emphasis added) (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013)), and may not treat the contents of judicially-noticed records as evidence to be weighed as "support[ing] or contradict[ing]" the Complaint. *Clatterbuck*, 708 F.3d at 558, *abrogated on other grounds by Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).

allegations in the Complaint as true, not "weigh[] the evidence that might be offered to support or contradict it." *Clatterbuck*, 708 F.3d at 558.

 In addition, it is significant that Lubbock has not identified any basis to claim that the other Individual Plaintiffs—Bill Remy, Dan Sullivan, and Ken Koenemann—cannot properly represent the absent participants. Thus, even if the Court deemed Ms. Bennett to be an inadequate representative of the absent participants (which it should not), Messrs. Remy, Sullivan and Koenemann would effectively serve that role, and they could obtain the same remedy—recovery on behalf of the ESOP for the losses caused by Lubbock's conduct. *See Bruister*, 823 F.3d at 257 ("Sealy's claims fully overlap those brought by the Secretary, thus Sealy's individual standing will not affect issues of liability or remedy.")

Nor does Lubbock avail itself by complaining that the Individual Plaintiffs singled out Lubbock for their claims, and should have named other individuals or entities as defendants along with Lubbock. That Lubbock believes that others share blame for its malfeasance is not a basis to dismiss the pleading or to question the judgment of the Individual Plaintiffs.

Finally, in the event that the Court finds that additional measures should be taken to confirm that the Individual Plaintiffs may proceed with their claims in a representative capacity or to notify other participants (which it should not), the Individual Plaintiffs are open to taking appropriate and reasonable steps to accommodate any concern the Court may have. However, in the Individual Plaintiffs' view, nothing in the applicable law *requires or authorizes* the Court to implement any such measures.

## II.

### TBM'S NEGLIGENT MISREPRESENTATION CLAIM IS NOT PREEMPTED BY ERISA

Defendant argues that TBM's negligent misrepresentation claim is preempted because ERISA Section 514(a) "supersede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . ." 29 U.S.C. § 1144(a) (emphasis supplied). This so-called "conflict" preemption is more limited than the complete preemption set forth in ERISA Section 502, which Lubbock recognizes it cannot assert because TBM, a non-beneficiary of the ERISA Plan, lacks the statutory standing to assert claims thereunder. *See* Def. Mem. at 7; *see also Sonoco Prods. Co. v. Physicians Health Plan*, 338 F.3d 366, 372 (4th Cir. 2003) (setting forth the requirements for complete preemption under Section 502 including "the plaintiff['s] . . . standing under § 502(a) to pursue its claim . . . ." (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)).

Accordingly, to demonstrate conflict preemption under Section 514(a), Lubbock must show that TBM's state law negligent misrepresentation claim against Lubbock "relates to" an ERISA plan. Not only does Lubbock cite no precedent for preempting a negligent misrepresentation claim under the facts set forth in the Complaint, but it identifies no basis to extend the "relate to" language in Section 514(a) so far as to preclude a non-participant, who acts to its detriment in reliance on the negligent actions of an ERISA trustee, from bringing a claim involving an independent business transaction, unrelated to plan benefits or administration. Indeed, given that Lubbock argues that TBM lacks statutory standing to sue under ERISA, the upshot of Lubbock's position is that TBM has *no remedy at all* against Lubbock for injuries TBM sustained as a result of the loan—a draconian position that would immunize Lubbock from

liability even as to non-beneficiary third parties whom Lubbock knew were acting in reliance on its actions.

For the reasons set forth below, Lubbock's attempt to nullify any opportunity for TBM to hold Lubbock accountable for its actions must be rejected.

Lubbock notes that ERISA's preemption is "'deliberately expansive.'" Def. Mem. at 16 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987)). However, the Supreme Court has cautioned that there is a presumption *against* applying preemption, has recognized that the "relates to" language of the statute is vague and amorphous, and has urged courts to take a careful look at the nature of the claim before finding it preempted. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (in determining whether a claim "relates to" an employee benefit plan under Section 514(a), courts should "go beyond the unhelpful text . . . and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive" preemption); *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." (citing *Travelers Ins.*, 514 U.S. at 655)).

Congress's stated objectives in enacting ERISA were protecting "the interests of participants in employee benefit plans and their beneficiaries" by, among other things, "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefits plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Looking to these objectives and the Supreme Court's case law interpreting Section 514(a), the Fourth Circuit has explained that "'Congress intended to

preempt at least three categories of state law: (1) laws that mandate[] employee benefits structures or their administration; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits.'" *Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266, 270 (4th Cir. 2008) (quoting *Wilmington Shipping*, 496 F.3d at 342) (emphasis and internal quotation marks omitted).

Here, TBM, a non-participant in the Plan, seeks to bring a negligent misrepresentation claim that Lubbock induced it to take out an inflated bank loan to TBM's detriment. On its face, this claim does not fall within any of the three specific categories of state law that Congress intended to preempt, nor would it contravene Congress's objectives in enacting ERISA. First, neither North Carolina's law of negligent misrepresentation generally nor TBM's claim specifically "mandate[] employee benefits structures or their administration . . . ." *Great-West*, 523 F.3d at 270. Second, exposing Lubbock to a negligent misrepresentation claim under these facts would not bind it or any plan administrator to "particular choices or preclude uniform administrative practice," *id.*, because such a claim does not "regulate the structure or process for plan administration." *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 190 (4th Cir. 2002) (holding that claims by a plan beneficiary against a plan administrator under Maryland law for negligence, invasion of privacy, confidentiality of medical records, and unfair and deceptive trade practices were not preempted). Third, TBM's negligent misrepresentation claim is not an alternate enforcement mechanism for the civil enforcement scheme set forth in Section 502. *See Sonoco*, 338 F.3d at 372 (noting that an employer lacks standing to assert claims under ERISA Section 502(a) except when acting as a fiduciary); *see also* Def. Mem. at 7 (arguing, correctly, that TBM does not have standing to assert claims under ERISA).

Finally, with respect to Congress's intent in enacting ERISA, TBM is not a "participant[]
in [an] employee benefit plan[]," nor is it a beneficiary, 29 U.S.C. § 1001(b); *see also* 29 U.S.C.
§ 1002(7)-(8) (defining "participant" and "beneficiary" for the purposes of ERISA), and its
claims do not create any "potential for conflict in substantive law . . . requiring the tailoring of
plans and employer conduct to the peculiarities of the law of each jurisdiction" or undermine
Congress's intent to create "nationally uniform administration of employee benefit plans."
*Travelers*, 514 U.S. at 656-57 (quotation omitted).

In counterpoint to the three classes of cases that Congress specifically intended to
preempt, the Fourth Circuit has also explained what Congress did not intend to preempt:
"Congress *did not* intend to preempt traditional state-based laws of general applicability that do
not implicate the relations among the traditional ERISA plan entities, including the principals,
the employer, the plan, the plan fiduciaries and the beneficiaries." *Coyne & Delany Co. v.
Selman*, 98 F.3d 1457, 1469 (4th Cir. 1996) (emphasis added, internal quotation marks and
alteration omitted). At first blush TBM's claim might be read to "implicate the relations" among
the employer (TBM) and a plan fiduciary (Lubbock). However, the Fourth Circuit has made
clear (in the context of claims by plan beneficiaries against a plan administrator) that "the simple
fact that a defendant is an ERISA plan administrator does not automatically insulate it from state
law liability for alleged wrongdoing against a plan participant or beneficiary" so long as the
claims are not duplicative of Section 502's enforcement scheme and do not seek to enforce
"rights under ERISA or the plan." *See Darcangelo*, 292 F.3d at 191-92.

Thus, Lubbock is not automatically insulated from liability to TBM under state law
simply because Lubbock acted as the ESOP trustee. TBM's claims do not duplicate Section
502's enforcement scheme. As set forth above, except when TBM is operating in a fiduciary

capacity (which it is not here), it cannot bring suit under Section 502 at all, let alone for the conduct underlying its negligent misrepresentation claim. *See Sonoco*, 338 F.3d at 373-74 (holding that an employer not acting as a fiduciary lacks standing under Section 502 and that an employer is not acting as a fiduciary when it seeks to recover for its own injuries "separate and apart from any injury to the Plan Beneficiaries . . . .").

This threshold fact distinguishes TBM's claim from the negligent misrepresentation and other state law claims asserted by plan participants that were preempted in *Jenkins v. Moses H. Cone Memorial Health Services Corp.*, No. 5:16-cv-0188-FL, 2016 WL 9406697, at *4-8 (E.D.N.C. Dec. 30, 2016) and *Stevens v. E.I. Dupont de Nemours & Co.*, 145 F. Supp. 3d 541, 548-49 (E.D.N.C. 2015), two cases cited by Lubbock. *See also Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (observing that "[g]enerally speaking, ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefits plan."). Unlike the plan participants in *Jenkins* and *Stevens*, who could bring their claims under ERISA, TBM's sole remedy for the damages it has incurred as a result of Defendant's misrepresentations—an injury separate and apart from the damages incurred by the ESOP and ESOP participants and beneficiaries—is its claim for negligent misrepresentation.

Second, TBM is not seeking to enforce Defendant's fiduciary duties to the Plan or to Plan participants, but rather Defendant's duty of care to TBM under state law. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 214, 367 S.E.2d 609, 617 (1988) (holding that a financial advisor's duty of care with respect to claims of negligent misrepresentations in financial opinions extends to "persons, or classes of persons, whom [the advisor] knows and intends will rely on his opinion, or whom he knows his client intends will so rely."). In this

respect, the existence of the ESOP or the fact that Defendant serves as that Plan's trustee is irrelevant to TBM's claim. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990) (looking to whether "the existence of a pension plan is a critical factor in establishing liability . . . ." in deciding whether a claim was preempted by Section 514). Rather, TBM stands in the role of a lender that was misled into taking out a loan and misled about the true prospects that its loan could be repaid. *See LeBlanc v. Cahill*, 153 F.3d 134, 148 (4th Cir. 1998) (holding that a common-law fraud claim asserted by an ERISA plan was not preempted where the plan stood "simply in the role of an investor allegedly wronged").

Under these circumstances, TBM's claim for negligent misrepresentation does not "relate to" an employee benefits plan within the meaning of Section 514(a). Accordingly, Defendant's motion to dismiss Plaintiffs' third cause of action should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.

This the 22nd day of December, 2017.

_____/s/ John B. Harris_____
John B. Harris
NY Bar No. 2044840
Amelia K. Brankov
NY Bar No. 4153136
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175
jharris@ffks.com
abrankov@fkks.com
*Attorneys for Plaintiffs TBM Consulting Group,*
*Inc., Bill Remy, Michele Bennett, Dan Sullivan, and*
*Ken Koenemann*

19

Matthew H. Mall
NC Bar No. 36914
Catherine R. L. Lawson
NC Bar No. 44574
PARKER POE ADAMS & BERNSTEIN LLP|
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Phone: (919) 835-4626
Fax: (919) 834-4564
matthewmall@parkerpoe.com
catherinelawson@parkerpoe.com
*Local Civil Rule 83.1 Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **Memorandum of Law in Opposition to Defendant's Motion to Dismiss** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice of the same to the following:

> Michael W. Mitchell
> Craig B. Wheaton
> J. Gray Wilson
> Smith Anderson Blount Dorsett Mitchell & Jernigan, LLP
> Wells Fargo Capitol Center
> 150 Fayetteville St., Suite 2300
> P.O. Box 2611
> Raleigh, NC 27602-2611
> mmitchell@smithlaw.com
> cwheaton@smithlaw.com
> gwilson@smithlaw.com
>
> *Counsel for Defendant Lubbock National Bank*

This the 22nd day of December, 2017.

_____/s/ John B. Harris_____
John B. Harris, Esq.
Amelia K. Brankov, Esq.
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, NY 10022
jharris@fkks.com
abrankov@fkks.com
*Counsel for Plaintiffs TBM Consulting Group,*
*Inc., Bill Remy, Michele Bennett, Dan Sullivan,*
*and Ken Koenemann*
