IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-460-FL

| | | |
|---|---|---|
| TBM CONSULTING GROUP, INC., BILL REMY, MICHELE BENNETT, DAN SULLIVAN, and KEN KOENEMANN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| LUBBOCK NATIONAL BANK, | ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss (DE 17) pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion has been fully briefed, and in this

posture the issues presented are ripe for ruling. For the reasons noted, the motion is granted in part

and denied in part.

## STATEMENT OF THE CASE

Plaintiffs filed this action on September 11, 2017, under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking relief for defendant's alleged

violations of provisions of Title I of ERISA and for breaches of fiduciary duty incurred in

connection with defendant's role as trustee of an ERISA plan established by plaintiff TBM

Consulting Group, Inc. ("TBM") for the benefit of TBM employees, including plaintiffs Bill Remy,

Michele Bennett, Dan Sullivan, and Ken Koenemann ("individual plaintiffs") (collectively,

"plaintiffs").[1] Individual plaintiffs assert two claims: disloyalty, imprudence, failure to comply with plan documents in violation of ERISA §§ 404(a)(1)(A), (B), and (D) and violations of ERISA §§ 406(a)(1)(A) and (D) for prohibited transactions. Plaintiff TBM additionally asserts a state-law claim of negligent misrepresentation against defendant.

In lieu of answer, defendant filed the instant motion to dismiss on November 17, 2017, arguing that 1) plaintiffs lack statutory standing to pursue their ERISA-based claims and 2) plaintiff TBM's negligent-misrepresentation claim is preempted by ERISA. In support of defendant's motion to dismiss, defendant relies upon 1) the plan document at issue, the "TBM Consulting Group, Inc. Employee Stock Ownership Plan" (the "Plan") 2) the Plan's IRS Form 5500 filings, and 3) complaint from Perez v. Cactus Feeders, Inc., No. 2:16-CV-49 (N.D. Tex.), a case in which defendant was involved. On December 22, 2017, plaintiffs filed opposition, to which defendant filed reply on January 19, 2018. In support of defendant's reply, defendant relies upon the TBM Consulting Group, Inc. Stock Purchase Agreement (the "SPA").

On November 20, 2017, the court stayed scheduling activities pending resolution of defendant's instant motion.

### STATEMENT OF THE FACTS

The relevant facts alleged in the complaint may be summarized as follows. Founded in 1991, TBM is a management consulting firm headquartered in Morrisville, North Carolina, providing consulting services on a worldwide basis. In or around 2003, TBM established the Plan, an employee stock ownership plan entitled the "TBM Consulting Group, Inc. Employee Stock Ownership Plan." The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. §

---

[1] Individual plaintiffs are all officers of TBM. (Compl. (DE 1) at ¶¶ 5-8).

1002(2).  The Plan was created so that participants could obtain an ownership interest in TBM.

In or around 2011, Anand Sharma ("Sharma"), who was then TBM's president and chief executive officer, sought to sell most of the 77,799.07 shares of TBM Series B common stock that he owned either personally or through two entities he managed and/or controlled, representing approximately 25.1 percent of TBM's outstanding shares.  Sharma ultimately sought to sell approximately 80 percent of his shares ("Swarma shares") with the Plan serving as the buyer (the "Plan transaction").

From 2007 until in or about August 2011, North Star Trust Company ("North Star Trust") served as the trustee for the Plan.  In July 2011, approximately two months before the Plan's purchase of the Sharma shares, Sharma recommended to the TBM board of directors that it replace North Star Trust as Plan trustee with defendant, which the board accepted.  Defendant had a close relationship with the attorney advising plaintiff TBM and Sharma with respect to the Plan transaction and was otherwise unknown to the TBM's board prior to Sharma's recommendation. Defendant's appointment as trustee of the Plan became effective on or about August 12, 2011, 30 days before the Plan transaction closed on September 12, 2011.

As trustee of the Plan, defendant exercised discretionary authority and control over management and disposition of the Plan's assets.  In connection with the Plan transaction, defendant retained Stout Risius Ross, Inc. ("SRR") to act as its independent financial advisor.  SRR had previously provided valuation services to North Star Trust prior to defendant's retention.  SRR was to prepare a valuation of TBM for the Plan transaction, and a fairness opinion concerning, among other things, the proper consideration to be paid by the Plan for the Sharma shares.

Plaintiffs allege the SRR report relied heavily on financial projections for the ensuing four

years, from 2011 through 2015, which, influenced by Sharma, reflected substantial future increases in the business of TBM. These forecast increases over this period were inconsistent with the trajectory of TBM's actual financial performance, as audited, for the years 2006 to 2010, and with the internally prepared financial statements of TBM for the first seven months of 2011. Additionally, the annual forward-looking valuations prepared by SRR on behalf of the Plan trustee from 2007 through 2010 also relied heavily on future financial projections prepared, or heavily influenced, by Sharma. These projections were never subsequently achieved and were well in excess of actual TBM performance.

Defendant closed the Plan transaction on September 12, 2011, within one month of its appointment. On that date, defendant, Sharma, and plaintiff TBM entered into the SPA. Pursuant to the SPA, Sharma sold to defendant, as trustee, 62,239.26 shares of TBM Series B common stock for $10,500,000.00 in cash, payable at closing, an amount which plaintiffs allege "was unsupportable in light of the company's history and the unreliability of the Sharma-influenced projections." (Compl. (DE 1) ¶ 45).

The Plan transaction consisted of 1) a loan to plaintiff TBM from a third-party bank, 2) a $10,500,000.00 loan from TBM to the Plan, 3) the Plan's purchase of the Swarma shares using the $10,500,000.00 loan from TBM to the Plan, and 4) the pledging of those shares to TBM as collateral for the loan.

Individual plaintiffs also allege that they "seek relief . . . on behalf of the [Plan] as a whole and are appropriate representatives thereof, seeking no personal benefit from this action beyond the damages sustained" as a result of defendant's alleged breach. (Id. ¶ 9).

**COURT'S DISCUSSION**

4

Defendant moves to dismiss plaintiffs' two ERISA-based claims for lack of subject matter jurisdiction, alleging in what appears to be a facial challenge that 1) individual plaintiffs "lack standing to pursue their ERISA-based claims because they have employed no procedural safeguards to ensure they adequately represent the interests of the absent Plan participants," and, in what appears to be a factual challenge, that 2) "there are no procedural safeguards that would be sufficient to allow plaintiffs to proceed with their ERISA claims" because plaintiffs appear to be "singularly inadequate representatives of the plan as a whole." (DE 19 at 6-15). Additionally, defendant moves to dismiss plaintiff TBM's negligent-misrepresentation claim for failure to state a claim upon which relief can be granted, arguing ERISA preempts this claim.

The court will first address the appropriate standard of review and then address each of defendant's arguments in turn below.

A.      Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the petitioner bears the burden of showing that federal jurisdiction is appropriate when challenged by the respondent. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the factual basis for subject matter jurisdiction, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the [petitioner], in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges

sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the respondent challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Defendant argues that its challenge to plaintiffs' statutory standing is brought properly pursuant to Rule 12(b)(1). However, a challenge to  statutory, not constitutional, standing is properly considered under Rule 12(b)(6). See David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013) (noting distinction between statutory standing and Article III standing to bring ERISA claims); CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011) ("Nevertheless, the district court correctly focused on Civil Procedure Rule 12(b)(6) because the standing inquiry

at the heart of this case is statutory standing—a concept distinct from Article III and prudential standing. And typically, [a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.") (citations omitted)); <u>United States v. Oregon</u>, 671 F.3d 484, 490 (4th Cir. 2012) ("We note that the 'standing' at issue in this case is statutory standing, which is a separate inquiry from Article III standing. Statutory standing is itself a merits issue.") (citations omitted)); <u>see also</u> <u>DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.</u>, 852 F.3d 868, 873 (9th Cir. 2017) ("[A] dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction."); <u>AvuTox, LLC v. Cigna Health & Life Ins. Co.</u>, No. 5:17-CV-250-BO, 2017 WL 6062257, at *3 (E.D.N.C. Dec. 7, 2017) ("A challenge to a plaintiff's derivative standing to sue under ERISA is considered under Rule 12(b)(6).").[2]

Thus, the court considers defendant's motion to dismiss as one brought pursuant solely to Rule 12(b)(6). <u>See, e.g.</u>, <u>Hawes v. Network Solutions, Inc.</u>, 337 F.3d 377, 383 (4th Cir.2003) (explaining that a district court should consider a motion to dismiss improperly filed under Rule 12(b)(1), when predicated on non-jurisdictional grounds, as a motion under 12(b)(6)).

A court may not consider matters outside the pleadings without converting a Rule 12(b)(6) motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). However, documents attached to the complaint and those incorporated in it by reference are deemed part of the pleadings and

---

[2] As stated above, <u>David</u>, which defendant cites in support, does not hold otherwise. While that case states that "we have subject matter jurisdiction over ERISA claims only where the appellants have both statutory <u>and</u> constitutional standing," that case does not contradict <u>CGM</u> by holding that the Rule 12(b)(1) standard applies to issues of statutory standing. <u>See</u> <u>David</u>, 704 F.3d at 338 (emphasis in original). It was undisputed in <u>David</u> that plaintiffs had statutory standing under ERISA. <u>Id.</u> at 333 ("It is undisputed that Appellants have statutory standing to assert claims against Appellees on behalf of the Pension Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). However, appellants asserting ERISA claims must also have constitutional standing under Article III, U.S. Const. art. III, § 2.").

therefore may be considered without converting a Rule 12(b)(6) motion.  See Pueschel v. United States, 369 F.3d 345, 353 n. 3 (4th Cir.2004);  Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir.2004); see also Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009).

Here, the Plan document and SPA are clearly referenced throughout the complaint, (see, e.g., Compl. (DE 1) ¶¶ 12-14, 41-42), and the authenticity of the documents is not disputed.  Thus, the court will consider these documents.[3]

## B.    Statutory Standing

ERISA § 502(a)(2) provides that "[a] civil action may be brought—by the Secretary [of Labor], or by a [plan] participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  29 U.S.C. § 1132(a)(2).  ERISA § 409(a) provides

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C § 1109(a) (emphasis added). Based on the limitations in sections 502 and 409, participant claims must be "brought in a representative capacity on behalf of the plan as a whole."  Mass Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985); see also David, 704 F.3d at 332 ("Appellants cannot bring suit under § 502(a)(2) to recover personal damages for misconduct, but rather must

---

[3]  Although defendant additionally attached complaint from Perez v. Cactus Feeders, Inc., No. 2:16-CV-49 (N.D. Tex.), a case in which defendant was involved and which is discussed in plaintiffs' complaint, (see Compl. (DE 1) ¶¶ 25-26), defendant does not request the court to consider this document in support of defendant's arguments, (see DE 26 at 7).  However, defendant does request the court consider the Plan's publicly-filed IRS Form 5500s, which the court addresses below.

seek recovery on behalf of the plan").[4]

Here, defendant does not dispute that individual plaintiffs have alleged they are plan participants under ERISA and that plaintiffs' ERISA claims for breach of fiduciary duty are within the scope of ERISA § 502(a)(2). Defendant argues, instead, that individual plaintiffs lack statutory standing to pursue their ERISA-based claims because they have employed no procedural safeguards to ensure they "adequately represent" the interests of the absent Plan participants. (DE 19 at 15).[5]

Defendant, however, overstates the requirement for "adequate[]" representation. As noted, the text of ERISA allows suits to be brought by plan participants for "losses to the plan," 29 U.S.C. § 1109(a), and the Supreme Court has required only that such suits be "brought in a representative capacity on behalf of the plan as a whole." Russell, 473 U.S. at 142 n.9. Individual plaintiffs' allegations meet this threshold pleading standard.

In particular, individual plaintiffs allege that they "seek relief . . . on behalf of the [Plan] as a whole and are appropriate representatives thereof, seeking no personal benefit from this action beyond the damages sustained" as a result of defendant's alleged breach, (Complaint (DE 1) ¶ 9), and additionally allege damages not to individual plaintiffs, but damages to the Plan, where defendant "failed to prudently determine or verify the fair market value of TBM's stock as of the date of the [Plan] Transaction," (id. ¶ 54). These allegations are consistent with the Supreme Court's requirement that under § 502, participant claims must be "brought in a representative

---

[4] The Supreme Court explained that among the four classes of plaintiffs listed in § 502(a)(2), the Secretary of Labor, participants, beneficiaries, and fiduciaries, "the common interest . . . is in the financial integrity of the plan," not in any individual interest. Mass Mut. Life Ins., 473 U.S. at 142 n.9.

[5] Defendant argues that plaintiff TBM lacks standing as a participant or beneficiary to assert an ERISA-based claim against defendant. (DE 19 at 7; DE 26 at 9-10n.10). Because plaintiff clarifies that "TBM is not asserting an ERISA claim," (DE 22 at 6 n.2), it is unnecessary for the court to address defendant's arguments. For the same reason, plaintiff TBM's ability to adequately represent the Plan need not be addressed.

capacity on behalf of the plan as a whole," <u>Mass Mut. Life Ins.</u>, 473 U.S. at 142 n.9; <u>see also</u>

<u>Wilmington Shipping Co. v. New England Life Ins. Co.</u>, 496 F.3d 326, 334 (4th Cir. 2007) ("a plan

participant may <u>not</u> sue under ERISA § 502(a)(2) <u>unless</u> he seeks recovery on behalf of the plan")

(emphasis in original); <u>see also</u> <u>Estate of Spinner v. Anthem Health Plans of Virginia, Inc.</u>, 388 F.

App'x 275, 281 (4th Cir. 2010) ("The Supreme Court made clear that the injury which the §

1132(a)(2) provision attempts to redress cannot be an individual injury.").

Defendant does not cite to any binding authority, nor is the court aware of any, the requires

individual plaintiffs to plead procedural safeguards showing they can <u>adequately</u> represent the Plan

in order to establish statutory standing.

Defendant cites to <u>Thornton v. Evans</u>, 692 F.2d 1064, 1079–80 (7th Cir. 1982) (requiring

plaintiffs in that case who sought to recover damages from non-fiduciary defendants to sue in a

derivative action or in a class action) and <u>Coan v. Kaufman</u>, 457 F.3d 250, 261 (2d Cir. 2006)

(requiring "plaintiff take adequate steps under the circumstances properly to act in a 'representative

capacity on behalf of the plan'"), for the proposition that some procedural safeguards are necessary.

(DE 19 at 7-9; <u>see also</u> <u>id.</u> at 11-12 ("Rather, [plaintiffs] appear to be attempting to proceed without

any procedural safeguards at all to ensure their capacity to adequately represent the Plan")).

<u>Thornton</u> and <u>Coan</u>, as well as other cases cited by defendant from outside of this circuit,

however, are not applicable to the present situation.  In <u>Thornton</u>, the court reversed grant of summary

judgment, not motion to dismiss, and the court's holding concerned a claim against a non-fiduciary,

with the court acknowledging Section 502(a)(2) authorizes individual suits by participants against

plan fiduciaries.  <u>Thornton</u>, 692 F.2d. at 1080 n.35; <u>see also</u> <u>Sharp Elecs. Corp. v. Metro. Life Ins.</u>

<u>Co.</u>, 578 F.3d 505, 512 (7th Cir. 2009) ("To survive MetLife's motion to dismiss, Sharp had to

include allegations that supported (1) its right of action under ERISA (that is, that Sharp was acting either as a plan fiduciary, beneficiary, or participant); (2) MetLife's status as a plan fiduciary; (3) MetLife's breach of its fiduciary duties; and (4) a cognizable loss to the plan flowing from that breach.").

In <u>Coan</u>, the court affirmed grant of summary judgment, not motion to dismiss, and held:

> We think it neither necessary nor helpful to delineate minimum procedural safeguards that section 502(a)(2) requires in all cases. But in our view, although plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a "representative capacity" properly for purposes of section 502(a)(2). Similarly, a plan participant who joins or makes a good-faith effort to join other participants as parties pursuant to Rule 19 would seem to have discharged his or her duty to proceed on behalf of the plan. Ultimately, however, the requirement is only that the plaintiff take adequate steps under the circumstances properly to act in a "representative capacity on behalf of the plan."

<u>Coan</u>, 457 F.3d at 261. Importantly in that case, the district court noted that "it is undisputed that in the three years since this case was filed" plaintiff had taken no "antecedent steps required for plaintiff to proceed in a representative capacity," noting "merely labeling one's lawsuit a 'derivative suit' or 'representative action' does not make it so." <u>Coan v. Kaufman</u>, 333 F. Supp. 2d 14, 24 (D. Conn.).[6]

Again, this is not the situation before this court, where the only steps taken in this case thus far are the filing of plaintiffs' complaint and the filing of defendant's motion to dismiss in response.

---

[6] Additionally, in <u>Coan</u>, the plan at issue was defunct, plaintiff was a lone plaintiff that failed "to do anything to demonstrate that her action actually was intended to benefit former plan participants," and the court expressed concern as to the practical problems of preventing a settlement that would disproportionately, or exclusively, benefit plaintiff. <u>Coan</u>, 457 F.3d at 261. Even if <u>Coan</u> were factually similar, defendant does not argue that any <u>Coan</u> concerns are present in this case. <u>See also</u> <u>Huizinga v. Genzink Steel Supply & Welding Co.</u>, No. 1:10-CV-223, 2013 WL 4511291, at *8 (W.D. Mich. Aug. 23, 2013) (finding no <u>Coan</u> concerns and holding that plaintiff "is a Plan participant, and he is seeking to recover for the Plan as a whole. These are the only requirements on the face of the statute, itself"); <u>Waldron v. Dugan</u>, No. 07 C 286, 2007 WL 4365358, at *7 (N.D. Ill. Dec. 13, 2007) (declining to follow <u>Coan</u> and stating "A rule requiring section 502(a)(2) claims to be brought in a manner analogous to derivative shareholder lawsuits might be a wise one, but the court is unwilling to add such a requirement to ERISA's carefully elaborated design").

Importantly, the Coan court recognized no requirements for particular procedures, stating "[i]t seems to us, rather, that Congress was content to leave the procedures necessary to protect absent parties, and to prevent redundant suits, to be worked out by parties and judges according to the circumstances on a case by case basis." Coan, 457 F.3d at 260.[7]

Defendant also argues that plaintiffs have not sought class certification or instituted a derivative action, or "followed any other procedure analogous to those set out in Rule 23.1 for derivative actions," (DE 19 at 11). Defendant fails to offer any support that plaintiffs are so required, and neither Rule 23 (which governs class actions) nor Rule 23.1 (which governs derivative actions) requires suits against ERISA fiduciaries to use special procedures. See Fed. R. Civ. P. 23

_____

[7] Defendant's citations to numerous district court cases outside of this circuit are additionally unavailing and address representation concerns not found in the present case. These cases stand for the same proposition as that which is provided in Coan, that courts have declined to allow § 502(a)(2) claims to proceed at various stages of litigation where plaintiffs have failed to make the necessary showing they adequately represent the plan given the facts of that particular case. However, not a single court cited by defendant required plaintiffs to allege more than that which is alleged here or even addressed the issue of adequacy of pleading as to representation of an ERISA plan. See Fish v. Greatbanc Tr. Co., 667 F. Supp. 2d 949, 950-51 (N.D. Ill. 2009) (addressing motion to proceed without class certification where complaint contains class allegations and where "potentially dispositive statute of limitations issues existed" and directing the parties to be prepared to discuss how "this action must be structured in a manner that will bind all Plan participant to the holdings ultimately reached by this Court"); George v. Kraft Foods Glob., Inc., No. 08 C 3799, 2011 WL 5118815, at *9-10 (N.D. Ill. Oct. 25, 2011) (denying motion for class certification and not allowing plaintiff to side-step class certification requirements by bringing claims directly under 502(a)(2) where "Plaintiffs have not yet established that the proposed class definitions are appropriate to certify" and "have not suggested any procedural safeguards for other interested parties"); Abbott v. Lockheed Martin Corp., No. 06CV0701MJR, 2010 WL 547172, at *4 (S.D. Ill. Feb. 10, 2010) ("In the current proceeding, the Court has already determined . . . as to the company stock funds—an intra-class conflict exists. As stated above, the interests of average class members compared to 'day trader' members who invest in the company stock funds are antagonistic and irreconcilable. Because there are no procedural safeguards that the Court can put in place to protect absent members and to prevent redundant suits, this case may not proceed as to the company stock funds under a direct action theory"); Wagner v. Stiefel Labs., Inc., No. 1:12-CV-3234-MHC, 2015 WL 4557686, at *13 (N.D. Ga. June 18, 2015) (in "at least the fifth lawsuit brought by former employees of defendant," "[o]ther than filing a complaint and a motion for partial summary judgment and opposing Defendants' motions to dismiss and for summary judgment, Plaintiffs have done nothing to notify or otherwise involve other Plan participants," where "individual absent Plan participants may have made decisions to exercise their put rights based on their unique circumstances"); Mendenhall v. Out of Site Infrastructure, Inc., No. CV 14-4996, 2017 WL 3394735, at *6 (E.D. Pa. Aug. 7, 2017) (granting motion for judgment on the pleadings where "Plaintiff has not undertaken any procedural precautions to ensure the protection of other Plan participants. Based on the filings in the two years this litigation has been outstanding, Plaintiff has not made any colorable attempt to notify other Plan participants of this lawsuit, to amend the Complaint to reflect that he is proceeding in a representative capacity, or to set forth facts demonstrating that he is the proper party to represent the other Plan participant").

(lacking any mandatory requirements for any type of case to be brought as a class action); Fed. R. Civ. P. 23.1 (setting forth derivative procedures for suits involving corporations or unincorporated associations).

Next, defendant argues that "the few facts available to [defendant] concerning Plaintiffs at this point suggest that they are singularly <u>inadequate</u> representatives of the Plan as a whole," (DE 19 at 12 (emphasis in original)), arguing that plaintiffs cannot adequately represent the interests of the Plan or absent participants because of "irreconcilable conflicts of interest," (DE 26 at 4-5). Defendant cites to the Plan's IRS Form 5500 filed annually from 2011 to 2016 and signed by individual plaintiff Michele Bennett as TBM's director of finance, arguing plaintiff Bennett lacks statutory standing because the forms she signed do not disclose that the Plan transaction was a prohibited transaction, and because she is theoretically liable herself in connection with the Plan transaction if she was knowingly involved in it or concealed the facts. (<u>Id.</u>; DE 19 at 12-13). More generally, defendant alleges that the other individual plaintiffs, as officers of TBM, are potentially fiduciaries of the Plan as well, and are thus unable to adequately represent the Plan. (DE 26 at 6).

In essence, defendant is arguing that individual plaintiffs cannot fairly and adequately protect the interest of the Plan due to interests antagonistic to other Plan participants, importing the requirements of class certification under Rule 23(a)(4). <u>See id.</u> ("the representative parties will fairly and adequately protect the interest of the class"); <u>see also</u> <u>Barnett v. W. T. Grant Co.</u>, 518 F.2d 543, 548 (4th Cir. 1975) ("We see no way in which his interests could be antagonistic to those of anyone in the class, and thus no basis for fear that he might be an inadequate representative under Rule 23(a) (4).").  However, plaintiffs have not sought class certification, and as previously stated, defendant has failed to offer any support that plaintiffs were so required in order to bring their

claims.

Additionally, and assuming that there is a basis at this stage for the court to consider the Plan's IRS Form 5500s notwithstanding Rule 12(b)(6),[8] the court must treat the allegations in the complaint as true, not "weigh[] the evidence that might be offered to support or contradict it." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 558 (4th Cir. 2013). As alleged in the complaint, individual plaintiffs did not know, and could not have known, earlier of the alleged "conflict of interest suffered by" defendant or defendant's "pattern . . . of over-valuing shares." (Compl. (DE 1) ¶ 50).[9] Further, individual plaintiffs allege because defendant would not provide plaintiffs with the SRR report on which defendant claims to have relied as well as other information, "the details of [defendant's] actions are exclusively within its knowledge and control and cannot be imputed to Plaintiffs." (See id. ¶¶ 50-51).[10]

Finally, defendant acknowledges that "this Court is free to fashion adequate procedural safeguards on a case-by-case bases," but states this action should not be allowed "to proceed without

---

[8] Defendant argues that the tax forms are subject to judicial notice under Federal Rule of Evidence 201 and appropriately considered at this stage. (DE 26 at 5).

[9] A plan's acquisition of stock from a party in interest violates ERISA §§ 406(a)(1)(A) & (D), 29 U.S.C. §§ 1106(a)(1)(A) & (D), which prohibit a fiduciary from causing a plan to engage in a transaction if it knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest; or transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. ERISA § 408(e), 29 U.S.C. § 1108(e), provides an exemption to the prohibited transaction requirements by allowing plans to purchase stock from parties in interest as long as the price paid does not exceed adequate consideration.

[10] Defendant additionally levels accusations against the plaintiffs stating "the litigation strategy Plaintiffs have pursued–waiting to file the Complaint until the day before the six-year statute of limitations expired on the ESOP Transaction, and then refusing to disclose their fiduciary status in the Complaint–suggests that they are motivated by their own self-interest, not by the interest of the absent participants." (DE 19 at 13). However, nothing prevents plaintiffs from filing a complaint at any time before the statute of limitations has expired and, as will be discussed in the analysis concerning preemption, individual plaintiffs assert the did not act in a fiduciary status vis-a-vis the Plan transaction. Notwithstanding, as stated above, at this stage in the litigation, the court must accept all well-pleaded facts as true and construes these facts in the light most favorable to the plaintiff.

any procedural safeguards at all." (DE 19 at 12).[11] Defendant's argument is premature. The court may need to assess the suitability of individual plaintiffs as representatives and steps taken by plaintiffs to adequately represent the Plan and the interest of other Plan participants, but not at this stage of litigation. As stated by the Coan court after the close of discovery and after defendants moved for summary judgment:

> Because Coan has not taken any steps to permit the court to safeguard the interests of others or the court's proceedings under these circumstances, we agree with the district court that she has failed to represent adequately the interests of other plan participants and has therefore not properly proceeded in a representative capacity as required by section 502(a)(2). We further agree that it is "far too late in the day" for Coan to cure the procedural defects in her lawsuit. We therefore conclude that the court properly granted summary judgment to the defendants on Coan's section 502(a)(2) claim.

Coan, 457 F.3d at 262 (citations omitted) (emphasis added).

Plaintiffs argue "no additional procedural safeguards should be required," because the Plan "is still in existence and there is no doubt that this action, if successful, would benefit all Plan participants"; this case has not been "brought by a lone plaintiff, but rather four individual plaintiffs of a relatively small corporation"; this case involves "losses suffered by participants" that are "coterminous with those of the [Plan]"; and no other participants have been deprived of a remedy based on the fear of issue preclusion in that those claims would have been time-barred had

---

[11] Defendant requests that "[i]n the event the Court deems additional facts to be necessary to determine any of the Individual Plaintiffs' ability to proceed in a representative capacity, [defendant] requests that the Court order jurisdictional discovery and hold an evidentiary hearing on the matter before ruling on LNB's Rule 12(b)(1) motion." (DE 19 at 14). However, because defendant's request for dismissal for lack of statutory standing under ERISA is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction, and evidentiary hearing at this stage is not appropriate. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir.1999) (holding a district court can resolve a motion to dismiss for lack of subject matter jurisdiction in two ways: "(1) "[t]he court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)"; or (2) the court may conduct an evidentiary hearing and then weigh the evidence to determine whether the facts support the jurisdictional allegations"). The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of claims at a preliminary stage before discovery and evidentiary hearings.

individual plaintiffs not filed suit the day before the expiration of the statute of limitations. (DE 22 at 9-10). The court finds these arguments premature as well and reserves ruling as to whether any additional procedural safeguards will be required in this case on a more complete record.

At this stage of litigation, it is incumbent upon the court to determine if individual plaintiffs have successfully alleged statutory standing to assert ERISA claims, which the court determines individual plaintiffs have so done.

Accordingly, defendant's motion to dismiss plaintiffs' ERISA-based claims is denied.

C.      ERISA Preemption

There are two forms of preemption under ERISA, complete preemption under § 502(a) of ERISA and express preemption under § 514 of ERISA. The Court of Appeals for the Fourth Circuit described recently the "murky waters" of ERISA preemption as "complex and contentious," clarifying the related but distinct jurisdictional doctrine of complete preemption under ERISA § 502 and the substantive doctrine of conflict preemption under ERISA § 514. <u>Greenbrier Hotel Corp. v. UNITE HERE HEALTH</u>, 719 F. App'x 168, 176-78 (4th Cir. 2018). The court instructed that where, as is the case here, the issue is not jurisdictional, the court must apply the substantive doctrine of conflict preemption, which necessitates a court "to determine whether a conflict exists such that Congress clearly intended to preempt the law in question." <u>Id.</u> at 178.[12]

_____

[12] Defendant appears to argue otherwise, stating that although it "has focused on conflict preemption in briefing its motion to dismiss, its position is that TBM's negligent-misrepresentation claim is also completely preempted." (DE 26 at 9-10n.10). However, complete preemption doctrine is not applicable in the present case. <u>See</u> <u>Johnson v. Am. Towers, LLC</u>, 781 F.3d 693, 702 (4th Cir. 2015) ("Complete preemption and ordinary preemption on the merits are not as close kin jurisprudentially as their names suggest . . . . Put differently, complete preemption is a jurisdictional doctrine, while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. Complete preemption applies only when Congress has clearly manifested an intent to make causes of action . . . removable to federal court.") (citations omitted); <u>Moon v. BWX Techs., Inc.</u>, 498 F. App'x 268, 272 (4th Cir. 2012) ("In contrast, 'complete preemption' does give rise to removal jurisdiction. Properly understood as a jurisdictional doctrine, complete preemption arises only when plaintiff's state law claims come within the scope of ERISA's civil enforcement provision . . . ."); <u>see also</u> <u>Discover Bank v. Vaden</u>, 489 F.3d 594, 611 (4th Cir.2007) (Goodwin, J., dissenting), <u>maj.</u>

16

Section 514 explicitly provides that ERISA preempts all laws that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a); see Shaw v. Delta Airlines, 463 U.S. 85, 96 (1983). Although previously the Supreme Court defined the scope of § 514 preemption as "deliberately expansive," Pilot Life Ins. Co v. Dedeaux, 481 U.S. 41, 46 (1987), more recently the Court noted that it had "to recognize that our prior attempt to construe the phrase 'relate to' does not give us much help drawing the line" for preemption and explaining that it was necessary to "go beyond the unhelpful text and the frustrating difficulty of defining [§ 514's] key term." N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655–56 (1995). In Travelers, the Court explained that congressional intent was the key consideration in interpreting the preemptive effect of the statute and that the Court "worked on the 'assumption that the historic police powers of the States were not to be superseded by Federal Act unless that was the clear intent of Congress.'" Id. at 655 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

The Fourth Circuit has held that "'[c]onsidering ERISA's objectives set forth in 29 U.S.C.A. § 1001(b), the Supreme Court has explained that Congress intended ERISA to preempt at least three categories of state law: (1) laws that mandate[] employee benefits structures or their administration; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits.'" Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp., 523 F.3d 266, 270 (4th Cir. 2008) (quoting Wilmington Shipping, 496 F.3d at 342) (citations omitted). The Fourth Circuit has also explained that "[a] key feature of these categories of laws is that they implicate the relations among the traditional ERISA plan entities," contrasted to "state

---

op. rev'd, 556 U.S. 49 (2009) ("the doctrine of complete preemption has but one purpose—that is, the recharacterization of a plaintiff's state complaint so that it may be considered federal for the purposes of the wellpleaded complaint rule.").

actions [that] may affect employee benefit plans in too tenuous, remote, or peripheral a manner," such as "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." Id. (quoting Wilmington Shipping, 496 F.3d at 342; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983); Mackey v. Lanier Collection Agency & Svc., Inc., 486 U.S. 825, 833 (1988)).

Here, plaintiff TBM, the Plan sponsor and administrator, as well as the employer, seeks to bring a negligent misrepresentation claim that defendant induced it to take out an inflated bank loan to plaintiff TBM's detriment, challenging the same alleged conduct of defendant as that challenged by individual plaintiffs via ERISA claims, the failure of defendant to properly determine the value of the Swarma shares for the purposes of the Plan transaction. (See Compl. (DE 1) ¶¶ 54 (first cause of action, ERISA claim, alleging defendant "failed to prudently determine or verify the fair market value of TBM's stock as of the date of the [Plan] Transaction"); 61 (second cause of action, ERISA claim, alleging defendant caused the Plan "to acquire stock at a price that exceeded 'adequate consideration'"); 67 (third cause of action, negligent misrepresentation claim, alleging defendant "failed to exercise reasonable care in determining the adequate consideration to be paid to the Sharma Parties and provided a false representation that $10.5 million was the fair value of the Sharma shares").

Plaintiffs argue that plaintiff TBM's claim does falls within any of the three specific categories of state law that Congress intended to preempt. (DE 22 at 16). Defendant does not dispute this assertion but argues instead that because plaintiff TBM is the employer and plan fiduciary, defendant is a former fiduciary, both are unquestionably traditional ERISA plan entities, and TBM is challenging defendant's conduct when performing a fiduciary function as Trustee for

the plan, TBM's claim is preempted.  (DE 26 at 8-9).

The Fourth Circuit case of <u>Darcangelo</u> is instructive.  There, a plan participant or beneficiary sued both her employer, who was also the plan sponsor, and the separate administrator of the applicable plan, asserting multiple state law claims based on allegations that the administrator "disseminated Darcangelo's private medical information in order to assist Verizon in its efforts to declare Darcangelo a 'direct threat' to her coworkers so that she could be fired." <u>Darcangelo</u>, 292 F.3d at 186.  The court determined that plaintiff's state-law claims of negligence, invasion of privacy, the confidentiality of medical records, and unfair and deceptive trade practices did not implicate the three categories of state law identified above, because the conduct allegedly taken by the administrator "was entirely unrelated to and outside of the scope of their duties under the plan or in carrying out the terms of the plan." <u>Id.</u> at 193.  The Fourth Circuit stressed where challenged actions wholly unrelated to the plan are taken by a plan administrator or fiduciary, a finding of preemption is not appropriate:

> When an ERISA plan administrator takes action entirely unrelated to the administration of the plan, liability for that action does not threaten the uniformity of plan administration.  Likewise, while ERISA establishes standards of conduct, responsibility, and obligation for fiduciaries, it does not preempt general state laws covering non-fiduciary acts unrelated to an ERISA plan.  Finally, while Darcangelo's suit may in some way affect her relationship with CORE and Verizon, it does not implicate the relations among the traditional ERISA plan entities with respect to those entities' ERISA functions.

<u>Id.</u> at 194 (citations omitted).

Significant here, the Fourth Circuit also stressed the counter point, that "if Darcangelo's claims sought to enforce the defendants' fiduciary duties under the ERISA plan, her claims would constitute alternative enforcement mechanisms to § 502 and would therefore relate to the ERISA plan." <u>Id.</u> at 192.  The Fourth Circuit explained that "[i]f CORE's alleged misconduct here is not

fiduciary conduct, then Darcangelo's claims are not alternative enforcement mechanisms to a § 502 breach of fiduciary duty action." Id. "Thus, '[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under the plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Id. at 192-93 (citing Pegram v. Herdrich, 530 U.S. 211, 226 (2000)).

The Fourth Circuit concluded:

> Pegram thus requires us to look at Darcangelo's complaint and determine "whether [the entity employed to provide services under the plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Id. at 226, 120 S.Ct. 2143. If Darcangelo is alleging that CORE, in the course of processing a benefits claim or performing some other plan duty, improperly disclosed her private medical information, this would be a claim for breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and § 502(a)(1)-(3), 29 U.S.C. § 1132(a)(1)-(3). Such a claim would amount to an allegation that CORE, in the course of acting as a fiduciary, that is, in making decisions about "managing assets and distributing property to beneficiaries," Pegram, 530 U.S. at 231, 120 S.Ct. 2143, had not acted solely in the interests of the participants and beneficiaries, but had acted in the competing interest of Verizon. This would be an impermissible attempt to use state law to "define fiduciary duties or address faulty plan administration," Coyne & Delany, 98 F.3d at 1471, and would thus constitute an alternative enforcement mechanism to a breach of fiduciary duty claim under § 502.

Id. at 193.

Applying the direction of Darcangelo, the court turns to plaintiff TBM's complaint and finds that plaintiff alleges defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint," which here is the allegation of negligent misrepresentation. See id. Plaintiff TBM alleges that defendant "in the course of . . . performing some other plan duty," buying the Swarma shares, engaged in negligent misrepresentation. See id. Thus, plaintiff TBM's claim "amount[s] to an allegation that [defendant], in the course of acting as

20

a fiduciary, that is, in making decisions about managing assets . . . had not acted solely in the interests of the participants and beneficiaries." See id.

Additionally, the loan that is the subject of plaintiff TBM's negligent misrepresentation claim was not an "independent business transaction, unrelated to plan benefits or administration," as argued by plaintiffs. (DE 22 at 14). The purpose of the loan was to provide funds for plaintiff TBM to then loan to the Plan to finance the Plan's purchase of the Sharma shares, and the loan was an express condition precedent to the closing of the sale of the Sharma shares. (See SPA (DE 26-1) at ¶¶ 4, 8.2 ("the Company shall lend to the Trust the sum of $10,500,000 . . . . The Trustee shall apply the proceeds of the ESOP Loan in payment of the Purchase Price for the Shares .").[13]

The court finds preemption where ERISA establishes " 'standards of conduct, responsibility, and obligation for fiduciaries,'" Coyne & Delany, 98 F.3d at 1470 (quoting 29 U.S.C. § 1001(b)), and whereas here the conduct of a fiduciary acting in its fiduciary capacity is challenged, unlike in Darcangelo, where the court found ERISA "does not preempt general state laws covering non-fiduciary acts unrelated to an ERISA plan." 292 F.3d at 194. Thus, plaintiff TBM's claim is an impermissible attempt to use state law to "define fiduciary duties" and constitutes an alternative enforcement mechanism to a breach of fiduciary duty claim under § 502. Id. at 193.

Plaintiffs argue the because plaintiff TBM was not acting as a fiduciary to the Plan during the Plan transaction, plaintiff TBM thereby lacks standing to bring an ERISA claim, and the "upshot of [a finding of preemption of TBM's state-law claim] is that TBM has no remedy at all against [defendant] for injuries TBM sustained as a result of the loan–a draconian position that would

---

[13] Defendant additionally argues that plaintiff TBM, as a named fiduciary to the Plan, is a "party in interest" under ERISA, and thus its loan to the Plan is subject to extensive ERISA regulation. (DE 26 at 9 (citing 29 U.S.C. § 1106(a)(1)(B) (prohibiting any "lending of money or other extension of credit between the plan and a party in interest" unless an exception applies)). Given the court's holding above, it is unnecessary to address this argument.

immunize [defendant] from liability even as to non-beneficiary third parties whom [defendant] knew were acting in reliance on its actions." (DE 22 at 14-15 (emphasis in original)).[14]

However, the necessity of statutory standing is an element of complete preemption, not express preemption. See Sonoco, 338 F.3d at 372 (identifying one of three essential elements for complete preemption as plaintiff must have standing under § 502(a) to pursue its claim). ERISA § 514 expressly preempts all state laws that "relate to" an ERISA plan, including the administration of an ERISA plan, which plaintiff TBM's negligent misrepresentation claim challenges. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 418–19 (4th Cir. 1993) ("The Act's preemption clause does not place the analysis on whether remedies are provided by the Act, but rather on whether the action relates to any employee benefit plan."); see also Pharmacia Corp. Supplemental Pension Plan, ex rel. Pfizer Inc. v. Weldon, 126 F. Supp. 3d 1061, 1072 (E.D. Mo. 2015) ("To the extent Pfizer and the Plan are not plan fiduciaries, their state-law claims are still expressly preempted under § 1144(a) because they relate to an ERISA plan."); Humana, Inc. v. Shrader & Assocs., LLP, No. CV G-16-0354, 2018 WL 1384529, at *19 (S.D. Tex. Mar. 16, 2018) ("If Plaintiffs are not fiduciaries, their state law claims for unjust enrichment/money had and received that relate to ERISA plans are expressly preempted by § 1132(a) because they relate to an ERISA plan.").

---

[14] Defendant disagrees, arguing TBM is a named fiduciary in the Plan document; therefore, TBM does not lack standing, and simply chose not to bring a claim as a fiduciary. (DE 26 at 8-10; see Plan document (DE 19-1) at 64 ("The Plan Administrator, the Trustee, and the Company shall be the Named Fiduciaries for the Plan within the meaning of Section 402(a) of ERISA . . . .")). However, an employer that establishes or maintains an employee benefit plan is a plan sponsor, 29 U.S.C. § 1002(16)(B), and a plan sponsor acts as a fiduciary only to the extent that it "exercises 'any discretionary authority' over the management or administration of a plan." Coyne & Delany, 98 F.3d at 1465. Nothing alleged in the complaint nor argued by defendant indicates that in the Plan transaction, plaintiff TBM was acting in its fiduciary capacity to the Plan. Plaintiff TBM was not exercising authority or control respecting the management or disposition of the Plan's assets but instead loaned money to the Plan for the procurement of the Swarma shares, after procuring a loan from a third-party for that purpose. See Sonoco, 338 F.3d at 374n.12 ("the fact remains that Sonoco is not asserting the breach of contract claims in its fiduciary capacity. As a result, Sonoco lacks standing to bring the breach of contract claims under § 502(a), and thus those claims are not completely preempted by ERISA."); see also Malkani v. Clark Consulting, Inc., 441 F. App'x 164, 165 (4th Cir. 2011) ("An employer, such as ISN, has standing under § 502(a)(2) only if it is a fiduciary under ERISA and is asserting a claim in its fiduciary capacity.").

Accordingly, defendant's motion to dismiss plaintiff TBM's negligent misrepresentation claim is granted on the basis of express preemption by ERISA.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. (DE 17). The motion is GRANTED as to plaintiff TBM's negligent misrepresentation claim, and plaintiff TBM is DISMISSED from the action. Individual plaintiffs' ERISA claims are allowed to proceed. Stay of discovery pending resolution of the instant motion ordered November 30, 2017, is LIFTED. Case management order setting forth deadlines governing the next stages of the case will follow.

SO ORDERED, this the 31st day of May, 2018.


LOUISE W. FLANAGAN
United States District Judge