IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No.: 5:17-cv-460

| | | |
|---|---|---|
| TBM CONSULTING GROUP, INC., BILL REMY, MICHELE BENNETT, DAN SULLIVAN, and KEN KOENEMANN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LUBBOCK NATIONAL BANK, | ) ) | |
| Defendant / Counterclaim and Third-Party Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| BILL REMY, MICHELE BENNETT, and DAN SULLIVAN, | ) ) ) | **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT** |
| Counterclaim Defendants, and | ) ) | |
| TBM CONSULTING GROUP, INC., THE EMPLOYEE STOCK OPTION PLAN COMMITTEE OF TBM CONSULTING GROUP, INC., ROBERT DEAN, RON WINCE, STEPHEN SMITH, WILLIAM E. SCHWARTZ, MARK GOTTFREDSON, MELVIN R.  HAUGHT, ANAND SHARMA, ANAND SHARMA 2009 GRAT TRUST, LOTUS ONE LLC, STOUT RISIUS ROSS, LLC f/k/a/ STOUT RISIUS ROSS, INC., and JOHN DOES 1-15, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

Defendant Lubbock National Bank ("Defendant"), by and through its undersigned counsel, hereby submits its Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint.

## ANSWER

In response to the individually numbered paragraphs of the Complaint, Defendant states as follows:

1.   The allegations of Paragraph 1 do not require a response, but to the extent a response is required, the allegations of Paragraph 1 are denied.

2.   The allegations of Paragraph 2 are denied.

3.   If the Court were to have subject matter jurisdiction, then the allegations of Paragraph 3 are admitted.

4.   The allegations of Paragraph 4 are admitted.

5.   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 5 and, therefore, the same are hereby denied.

6.   Defendant lacks sufficient information to admit or deny the allegation that Ms. Bennett is, and at all relevant time was, a participant of the ESOP.  The remaining allegations of Paragraph 6 are admitted.

7.   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 7 and, therefore, the same are hereby denied.

8.   Defendant lacks sufficient information to admit or deny the allegations of Paragraph 8 and, therefore, the same are hereby denied.

9.   The allegations of Paragraph 9 are denied.

10.     The allegations of Paragraph 10 are admitted.

11.     The allegations of Paragraph 11 are admitted.

12.     The allegations of Paragraph 12 are admitted.

13.     The allegations of Paragraph 13 are admitted.

14.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 14 and, therefore, the same are hereby denied.

15.     The allegations of Paragraph 15 are admitted.

16.     The allegations of Paragraph 16 are admitted, except Defendant believes that the Sharma Parties' shares constituted 25.07 percent of the outstanding shares of TBM.

17.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 17 and, therefore, the same are hereby denied.

18.     The allegations of Paragraph 18 are admitted.

19.     The allegations of Paragraph 19 are admitted.

20.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 20 and, therefore, the same are denied.

21.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 21 and, therefore, the same are hereby denied.

22.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 22 and, therefore, the same are hereby denied.

23.     The allegations of Paragraph 23 are denied.

24.     The allegations of Paragraph 24 are denied.

25.     Defendant lacks sufficient information to admit or deny the allegations of Paragraph 25 and, therefore, the same are hereby denied.

26.     The allegations of Paragraph 26 are denied.

27.     The allegations of Paragraph 27 are denied.

28.     The allegations of Paragraph 28 are denied.

29.     It is admitted that Defendant served as the Trustee of the Trust and served as a fiduciary pursuant to 29 U.S.C. § 1002(21) and thus owed the legal duties of a fiduciary.  Except as herein admitted, the remaining allegations of Paragraph 29 are denied.

30.     It is admitted that Defendant served as a fiduciary pursuant to 29 U.S.C. § 1002(21).  Except as herein admitted, the remaining allegations of Paragraph 30 are denied.

31.     It is admitted that Defendant served as a fiduciary pursuant to 29 U.S.C. § 1002(21) and thus owed the legal duties of a fiduciary.  Except as herein admitted, the remaining allegations of Paragraph 31 are denied.

32.     The allegations of Paragraph 32 are admitted.

33.     The allegations of Paragraph 33 are admitted.

34.     The allegations of Paragraph 34 are denied.

35.     The allegations of Paragraph 35 are denied.

36.     The allegations of Paragraph 36 are denied.

37.     The allegations of Paragraph 37 are denied.

38.     The allegations of Paragraph 38 are denied.

39.     The allegations of Paragraph 39 are denied.

40.     It is admitted the ESOP Transaction closed on September 12, 2011.  The allegations of Paragraph 40 are denied.

41.     The allegations of Paragraph 41 are admitted.

42.     The allegations of Paragraph 42 are admitted.

43.     The allegations of Paragraph 43 are admitted.

44.     The allegations of Paragraph 44 are admitted.

45.     The allegations of Paragraph 45 are denied.

46.     The allegations of Paragraph 46 are denied.

47.     The allegations of Paragraph 47 are denied.

48.     The allegations of Paragraph 48 are denied.

49.     The allegations of Paragraph 49 are denied.

50.     The allegations of Paragraph 50 are denied.

51.     The allegations of Paragraph 51 are denied.

52.     Defendant incorporates by reference its responses to Paragraphs 1-51 of the Complaint as if fully set forth herein.

53.     The allegations of Paragraph 53 are denied, including all subparts therein.

54.     The allegations of Paragraph 54 are denied.

55.     The allegations of Paragraph 55 are denied.

56.     Defendant incorporates by reference its responses to Paragraphs 1-55 of the Complaint as if fully set forth herein.

57.     Lubbock, as Trustee, approved the ESOP Transaction after concluding that the Transaction was at fair market value. The remaining allegations of paragraph 57 are hereby denied.

58.     The allegations of Paragraph 58 are denied.

59.     The allegations of Paragraph 59 are denied.

60.     The allegations of Paragraph 60 are admitted.

61.     The allegations of Paragraph 61 are denied.

62.     The allegations of Paragraph 62 are denied.

63. – 70. The Third Cause of Action and its corresponding allegations of Paragraphs 63-70 have been dismissed and do not require a response. To the extent a response is required, Defendant denies such allegations.

## ADDITIONAL DEFENSES

1.     Lubbock's actions were at all times proper and in compliance with ERISA, fulfilling its duties as a prudent and reasonable fiduciary.

2.     The ESOP Transaction was for adequate consideration.

3.     Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

4.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of payment.

5.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

6.　　Plaintiffs' claims are barred, in whole or in part, by the doctrine of acquiescence.

7.　　Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

8.　　Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

9.　　Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

10.　　Paragraph 38 of Plaintiffs' Complaint alleges that Sharma "heavily influenced" the financial information relied on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction. Neither Lubbock, nor upon information and belief its independent valuation firm, Stout Risius Ross, LLC f/k/a Stout Risius Ross, Inc. ("SRR"), had reason to know that Sharma was influencing the financial information that it would rely on to determine the fair market value of the shares to be sold in the ESOP Transaction. If Paragraph 38 is correct, then Lubbock was the victim of fraud and Plaintiffs' claims are barred, in whole or in part, because, upon information and belief, some or all of the Plaintiffs knew or should have known that Sharma was deceiving Lubbock and SRR in order to manipulate the value of the shares to be purchased in the ESOP Transaction.

11.　　Plaintiffs' claims are barred, in whole or in part, by 29 U.S.C. §1110(b).

12.　　Plaintiffs failed to mitigate their damages, if any.

13.     Plaintiffs' claims are barred, in whole or in part, because Lubbock's reliance on the independent advice of financial advisors was reasonably justified.

## COUNTERCLAIM AGAINST
## BILL REMY, MICHELE BENNETT AND DAN SULLIVAN

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e), 29 U.S.C. § 1109(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

2.     Venue in this action lies properly in the Eastern District of North Carolina, pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391.

### PARTIES

3.     Upon information and belief, Michele Bennett ("Bennett") is a resident of Cary, North Carolina, and at all relevant times was serving as the Director of Finance of TBM Consulting Group, Inc. ("TBM"). Upon information and belief, at all relevant times, Bennett served as the chair of the TBM ESOP Committee (defined in para. 9 below) and, on at least an annual basis since 2011, Bennett has authorized, certified and executed certain filings with the Internal Revenue Service and the Department of Labor, intended to satisfy certain reporting and disclosure requirements imposed on ESOP fiduciaries, and she was acting as an agent for TBM and the TBM ESOP Committee, both of which are named fiduciaries, as well as acting in an individual fiduciary capacity.

4.     Upon information and belief, Bill Remy ("Remy") is a resident of Phoenix, Arizona, and he has been a member of The Board of Directors of TBM

Consulting Group, Inc. ("he "TBM Board of Directors") since at least 2015 and has been TBM's President and Chief Operating Officer since 2012.

5.     Upon information and belief, Dan B. Sullivan ("Sullivan") is a resident of Wilmington, North Carolina, and at all relevant times has been a member of the TBM Board of Directors.

6.     Lubbock National Bank ("Lubbock") is, and at all relevant times was, a Texas financial institution, organized and existing under the laws of the State of Texas with its principal place of business in Lubbock, Texas.

## FACTUAL BACKGROUND

7.     TBM is and at all relevant times was a corporation organized and existing under the laws of Delaware, with its principal place of business in Morrisville, North Carolina.  In or around 2003, TBM established an employee stock ownership plan known as the "TBM Consulting Group, Inc. Employee Stock Ownership Plan" (the "ESOP" or the "Plan").  At all relevant times, TBM is and was serving as an ERISA fiduciary to the ESOP.

8.     The TBM Board of Directors is and at all relevant time was the governing board and authority for TBM.  As the governing authority of TBM, it exercised authority and control over the ESOP, including without limitation with respect to its authority to amend the ESOP; to appoint, monitor and remove ESOP fiduciaries; and to monitor fiduciary performance for compliance with requirements of ERISA and the Internal Revenue Code of 1986 as amended (the "Code") so as to preserve the tax-exempt status of the ESOP, including avoiding conflicts of interest

in violation of ERISA, monitoring transactions involving TBM stock (including the valuation of TBM stock on at least an annual basis), and avoiding nonexempt prohibited transactions under ERISA.

9. The Employee Stock Option Plan Committee of TBM Consulting Group, Inc. (the "TBM ESOP Committee") is an entity formed by the TBM Board of Directors with duties given to it by the TBM Board of Directors and the Trust Agreement to oversee the management of ESOP, including the valuation of TBM stock, the avoidance of nonexempt prohibited transactions, and compliance with reporting and disclosure requirements related to the ESOP. The TBM ESOP Committee is a named fiduciary of the ESOP. In the performance of its duties, including when it exercised discretionary authority as to the disposition of ESOP assets, the TBM ESOP Committee acted as a fiduciary. Service of process on the TBM ESOP Committee can be made by serving TBM on its behalf.

10. Other than Plaintiff and Counterclaim Defendant Michele Bennett, Lubbock is unaware of the identity of the members of the TBM ESOP Committee. Fictitious Third-Party Defendants John Does 1-15 ("John Does") are or were members of the TBM ESOP Committee during relevant times. Once the identities of the remaining members of the TBM ESOP Committee members are discovered, Lubbock will seek leave to amend to join them as Third-Party Defendants in their true names.

11. Upon information and belief, Robert Dean a/k/a Bob Dean ("Dean") is a resident of North Carolina and at all relevant times has been a member of the TBM Board of Directors.

12.     Upon information and belief, Ron Wince ("Wince") is a resident of Illinois and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

13.     Upon information and belief, Stephen Smith ("Smith") is a resident of North Carolina and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

14.     Upon information and belief, William E. Schwartz ("Schwartz") is a resident of North Carolina and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

15.     Upon information and belief, Mark Gottfredson ("Gottfredson") is a resident of Texas and at all relevant times has been a member of the TBM Board of Directors.

16.     Upon information and belief, Melvin R. Haught ("Haught") is a resident of West Virginia and at least since 2015 has been a member of the TBM Board of Directors.

17.     Upon information and belief, Anand Sharma ("Sharma") is the former President and Chief Executive Officer of TBM and is a resident of Florida, with a home located at 3800 N. Ocean Dr. #1253, Singer Island, Florida, and/or a resident of North Carolina, with a home located at 1116 Magic Hollow Road, Durham, North Carolina.  In 2011, when the ESOP engaged in certain transactions involving TBM stock, Sharma was acting President and Chief Executive Officer of TBM and chair of the TBM Board of Directors.  Upon information and belief, in 2011, Sharma

individually exercised discretion over the disposition of ESOP plan assets, and in doing so acted as a fiduciary of the ESOP, individually and/or as an agent of other fiduciaries, including TBM. (The term "TBM Board of Directors" refers collectively to the governing body of TBM at the relevant time and, as applicable, refers individually to Dean, Wince, Smith, Schwartz, Gottfredson, Haught, Sharma, Sullivan, and Remy.)

18.     Upon information and belief, Anand Sharma 2009 GRAT Trust is a trust formed by and for the benefit of Anand Sharma and the beneficiaries of such trust, formed in Florida, with its principal place of business located at 3800 N. Ocean Dr., Singer Island, Florida. Upon information and belief, Sharma is and at all relevant times was the principal and trustee of Anand Sharma 2009 GRAT Trust, acting as its agent for purposes of the ESOP Transaction.

19.     Upon information and belief, Lotus One LLC, is a Florida company, with its principal place of business also located at 3800 N. Ocean Dr. #1253, Singer Island, Florida. Upon information and belief, Sharma is and at all relevant times was the Manager of Lotus One LLC, acting as its agent for purposes of the ESOP Transaction.

20.     Upon information and belief, Stout Risius Ross, LLC f/k/a Stout Risius Ross, Inc. ("SRR") is a company organized and existing under the laws of the State of Michigan, with its principal place of business in Southfield, Michigan.

21.     The ESOP is a pension plan within the meaning of 29 U.S.C. § 1002(2).

22.     From 2007 until in or about August 2011, North Star Trust Company ("North Star Trust") served as the Trustee for the ESOP.

23.     In August 2011, with the approval of the TBM Board of Directors, TBM entered into an agreement with Lubbock to retain Lubbock as Trustee, replacing North Star Trust.

24.     In 2011, Anand Sharma, who was then TBM's President and Chief Executive Officer, offered to sell to the ESOP most of the 77,799.07 shares of TBM Series B common stock that he owned personally and through two entities he managed and/or controlled, the Anand Sharma 2009 GRAT Trust and Lotus One LLC (collectively, with Mr. Sharma, the "Sharma Parties").

25.     In connection with the purchase of the Sharma Parties' shares, and as a condition precedent to the purchase pursuant to the Stock Purchase Agreement (defined in para. 53 below), TBM would borrow funds and then loan a portion of those funds to the ESOP to close the purchase. The purchase of the Sharma Parties' shares and the loan from TBM to the ESOP are herein referred to collectively as the "ESOP Transaction." This definition of the ESOP Transaction differs from the Plaintiffs' use of the same term because Plaintiffs' definition of the "ESOP Transaction" does not include the loan that was a condition of the Stock Purchase Agreement.

26.     Sharma was a party-in-interest under 29 U.S.C. § 1002(14)(H), and therefore the ESOP Transaction would be considered a "prohibited transaction" under 29 U.S.C. § 1106(a) that would require a statutory exemption in order for the transaction to comply with ERISA.

27. 29 U.S.C. § 1108(e) provides an exemption that permits plans to purchase stock from parties-in-interest as long as the price paid does not exceed adequate consideration.

28. Effective August 24, 2011, TBM created the "TBM Consulting Group, Inc. Employee Stock Ownership Trust (As Amended and Restated, Effective August 24, 2011)" (the "Trust Agreement"), attached hereto as **Exhibit 1**.

29. In connection with a potential sale of the Sharma Parties' shares to the ESOP, Lubbock, in its capacity as Trustee of the ESOP, entered into an agreement with SRR, attached hereto as **Exhibit 2**.

30. SRR holds itself out to the public and its clients as a professional and experienced financial adviser, including with expertise in valuation advisory services.

31. SRR had previously provided professional valuation services to North Star Trust prior to Lubbock's engagement as Trustee, and SRR enjoyed and continues to enjoy an excellent reputation as an independent professional valuation firm.

32. SRR was retained to prepare an independent valuation of TBM for the purposes of the ESOP's purchase of the Sharma Parties' shares and a fairness opinion concerning the proper consideration to be paid by the ESOP for the shares. Specifically, Lubbock requested the following written opinion from SRR:

- The consideration to be paid by the ESOP for its shares of Company stock pursuant to the terms of the Transaction is not greater than the fair market value (as such term is used for adequate consideration purposes as defined in Section 3(18) of the Employee Retirement Income Security Act of 1974, as amended (ERISA)) of such shares;

- The interest rate on the ESOP Loan is not in excess of a reasonable interest rate;

- The financial terms of the ESOP Loan are at least as favorable to the ESOP as would be the terms of comparable loan resulting from negotiations between independent parties; and

- The terms and conditions of the Transaction, taken as a whole, are fair to the ESOP from a financial point of view.

33. In undertaking its engagement, SRR's focus was directed to the valuation issues arising under 29 U.S.C. § 1002(18), which defines the term "adequate consideration" as the fair market value of an asset determined by a fiduciary in good faith, pursuant to the Department of Labor Proposed Regulation Section 2510.3-18(b)(2).

34. SRR is independent of the parties to the ESOP Transaction (other than the ESOP) within the meaning of proposed regulation 29 CFR 2510.3-18(b) issued by the U.S. Department of Labor and section 401(a)(28)(C) of the Code.

35. SRR's analysis took into consideration Revenue Ruling 59-60, 1959-1 C.B. 237, which outlines and reviews the general approaches, methods, and factors to be considered in the valuation of the capital stock of closely held companies and thinly traded corporations.

36. On behalf of TBM, Bennett signed the engagement agreement with SRR, acknowledging her and TBM's understanding that "[SRR's] work requires extensive cooperation from [TBM] and its representatives … ." She also acknowledged her and TBM's understanding that "it is important for [SRR] to be provided with information we request from [TBM] promptly," and that "if [TBM] is or

becomes aware of other relevant information necessary to the proper completion of this engagement, [TBM] agrees to provide us with this information."

37. TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM who may have been fiduciaries to the ESOP provided the financial information about TBM that Lubbock and SRR needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

38. Upon information and belief, SRR received financial information directly from Bennett and others at TBM, including other agents who, upon information and belief, were fiduciaries to the ESOP, that SRR needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

39. Lubbock provided to SRR financial information Lubbock received from Bennett and others at TBM, including other agents who, upon information and belief, were fiduciaries to the ESOP, that SRR and Lubbock needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

40. The information collected, reviewed, analyzed, and relied on by SRR included the following:

- TBM's audited financial statements for the fiscal years ended December 31, 2006 through December 31, 2010;

- TBM's internally-prepared financial statements for the seven-month periods ended July 31, 2011 and July 31, 2010;

- Financial projections for TBM prepared by management for the fiscal years ending December 31, 2011 through December 31, 2015;

- The TBM ESOP Stock Purchase Agreement by and among TBM, the Trustee, Anand Sharma, Anand Sharma, as Trustee of The

Anand Sharma 2009 GRAT Trust, and Lotus One LLC, dated September 12, 2011;

- A term sheet from the lender to the ESOP, dated June 30, 2011;

- The Amended and Restated Shareholder Agreement;

- The ESOP Credit Agreement between the ESOP and TBM dated September 12, 2011;

- The ESOP Pledge Agreement between the ESOP and TBM dated September 12, 2011;

- The Summary of the Terms of Price Protection Policy and Process for Annual Administration, dated September 12, 2011;

- The ESOP Non-Recourse Promissory Note between the ESOP and TBM, dated September 12, 2011;

- The By-Laws of TBM;

- The First Amended and Restated By-Laws of TBM;

- The Executive Employment Agreement by and between TBM and Anand Sharma dated September 12, 2011;

- The Executive Employment Agreement by and between TBM and Robert Dean dated December 22, 2009;

- The Executive Employment Agreement by and between TBM and Anand Sharma dated December 22, 2009;

- The Executive Employment Agreement by and between TBM and Daniel Sullivan dated December 22, 2009;

- The TBM Consulting Group, Inc. 2004 Stock Option Plan dated January 2004;

- The TBM Stock Purchase Agreement by and among TBM, the Trustee, Anand Sharma, Robert S. Dean, Mark W. Oakeson, William A. Schwartz, H. Samuel Swoyer, Jr., and John Michael Herr, dated January 2004;

- The TBM Consulting Group, Inc. Certificate of Incorporation dated January 13, 2004;

- The TBM Amended and Restated Certificate of Incorporation; and

- Publicly available information and financial data on publicly traded companies considered similar to TBM from an investment risk/return perspective.

41. SRR also held discussions with certain members of the senior management of TBM regarding the operations, financial condition, future prospects, and projected operations and performance of TBM.

42. The information collected, reviewed, analyzed, and relied on by SRR to form its independent opinion and provide its advice on the fair market value of the Sharma Parties' shares in the ESOP Transaction was reasonable and appropriate.

43. Plaintiffs' Complaint, including paragraph 38, alleges that Sharma "heavily influenced" the financial information relied on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction in order to drive up the price of those shares, contrary to the best interest of the ESOP and ESOP participants. Upon information and belief, if Paragraph 38 is correct, then the only means by which the Plaintiffs would know—six years after the fact—of such misconduct by Sharma is that they, and particularly Bennett, were privy to the misconduct, and they knew or should have known that Lubbock and SRR were the victims of Sharma's manipulation of financial information about TBM.

44. Lubbock had no reason to believe that Sharma had heavily influenced the financial information it and SRR would be relying on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction.

45. Upon information and belief, if Sharma improperly influenced the valuation of the Sharma Parties' shares, and those shares were excessively priced in the ESOP Transaction, then TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known that Sharma had heavily influenced the financial information Lubbock and SRR would be relying on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction.

46. Neither the Sharma Parties, TBM, the TBM Board of Directors, the TBM ESOP Committee, Bennett, nor other agents of TBM, including other agents who may have been fiduciaries to the ESOP, disclosed to Lubbock that the information being provided to Lubbock and SRR had been heavily influenced by Sharma.

47. It would have been particularly misleading for Bennett, TBM's Director of Finance and a fiduciary and a participant in the ESOP, to provide false or misleading financial information about TBM or to fail to disclose to Lubbock and SRR that Sharma had heavily influenced such information, when she knew that Lubbock and SRR were relying on the information to determine the fair market value of the Sharma Parties' shares in the ESOP Transaction.

48. If Sharma improperly influenced the valuation of the Sharma Parties' shares, and those shares were excessively priced in the ESOP Transaction, then Lubbock and, upon information and belief, SRR unknowingly relied on false and

misleading financial information about TBM that had been influenced by Sharma and provided by TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP.

49.    SRR made an independent valuation concluding that the price to be paid for the Sharma Parties' shares in the ESOP Transaction was in fact the fair market value of those shares.

50.    SRR provided an independent valuation of the ESOP for each calendar year from 2011 to 2016, using financial information about TBM received from TBM, Bennett, and other agents of TBM, and at no time has SRR's independent valuations suggested that the sale of the shares of the Sharma Parties had not been at fair market value.

51.    Lubbock conducted an appropriate and reasonable good faith review of SRR's independent appraisal, including an independent review of the information, assumptions, and methodology used by SRR to determine the fair market value of the Sharma Parties' shares, and Lubbock concluded that SRR's opinion on the fair market value of the shares was formed in a reasonable and reliable manner, upon a review of appropriate information, using reasonable assumptions and methodologies, and that the price to be paid for those shares was in fact their fair market value.

52.    The ESOP transaction closed on September 12, 2011.

53. On September 12, 2011, the Sharma Parties, TBM, and Lubbock, in its capacity as Trustee, entered into a Stock Purchase Agreement (the "SPA"), attached hereto as **Exhibit 3**.

54. Pursuant to the SPA, the Sharma Parties sold to the Trustee 62,239.26 shares of TBM Series B common stock for $10,500,000 payable at the closing.

55. In the SPA, the Sharma Parties made certain representations as to the accuracy and validity of the "Financial Statements" of TBM that had been delivered to the Trustee (see Section 6.6 of the SPA) and used by SRR for purpose of its independent determination of the value of TBM shares purchased in the ESOP Transaction.

56. Section 6.28 of the SPA represented to Lubbock as Trustee that no document or information (including the Financial Statements) provided to the Trustee "contain[s] any untrue statement of material fact or omits or shall omit a material fact necessary to make the statements contained therein not misleading." Pursuant to Section 15 of the SPA, a violation of this representation subjected the Sharma Parties to liability.

57. Upon information and belief, TBM is, and at all relevant times was, the Plan Administrator and Plan Sponsor of the ESOP, and Bennett was authorized to act on behalf of the Plan Administrator and Plan Sponsor.

58. Pursuant to Section 15.1 of the ESOP, TBM is, and at all relevant times was, a "Named Fiduciary" of the Plan.

59.     Upon information and belief, Bennett exercised control over TBM and the TBM ESOP Committee in their capacity as a "Named Fiduciary," and she exercised discretion over ESOP assets as a functional fiduciary.

60.     In her fiduciary capacities, Bennett owed the ESOP and its participants duties of care, prudence, and loyalty.  Bennett had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

61.     As an ERISA fiduciary, Bennett had responsibility for the review and approval of the valuation of TBM shares for purposes of the ESOP Transaction, as well as for the annual valuation as of each December 31.

62.     Bennett, acting both individually as a fiduciary and as an agent of one or more fiduciaries, is, and at all time was, responsible for the preparation of the annual Form 5500 filing (a joint disclosure to the Department of Labor and the Internal Revenue Service), including the ESOP financial statements reflecting the valuation methodology for TBM shares, the valuation of TBM shares for the ESOP, and the reporting and disclosure of prohibited transactions on ESOP loans and stock purchases.

63.     In September 2011 and, upon information and belief, for all periods since the closing of the ESOP loan and stock purchase, Bennett, as TBM's Director of Finance, has had responsibility for the preparation of the TBM financial statements, including the preparation and delivery of TBM financial statements and projections

considered by the appropriate ESOP fiduciaries for purposes of determining the valuation of TBM shares for ESOP purposes.

64.     In September 2011 and, upon information and belief, for all periods since the closing of the ESOP Transaction in 2011, the ESOP and the responsible fiduciaries, including Bennett, have maintained the same methodology for valuing the TBM shares for purposes of the ESOP.

65.     As stated in ESOP financial statements accompanying the 2016 Form 5500 filing executed individually by Bennett as a fiduciary and as Plan Administrator on behalf of TBM:  "This appraisal was based upon a combination of the market and income valuation techniques consistent with prior years.  The appraiser took into account historical and projected cash flow and net income, return on assets, return on equity, market comparables and fair market value of the Company's assets and liabilities."

66.     Upon information and belief, neither in the 2016 Form 5500 filing— executed by Bennett in a fiduciary capacity after the filing of the Complaint in this action—nor in any prior Form 5500 filings, has any violation of ERISA or even a suggestion of a violation of ERISA been raised with respect to the ESOP Transaction.

67.     Prior to the removal of Lubbock as a discretionary fiduciary of the ESOP on or about April 1, 2017, Bennett, a fiduciary to the ESOP and TBM's Director of Finance, never expressed any concern to Lubbock that the valuation of TBM shares was greater than the fair market value for the ESOP Transaction, or that a prohibited transaction had occurred related to the ESOP Transaction.

68.     Prior to filing the Complaint in her capacity as an individual participant of the ESOP on September 11, 2017, Bennett never raised any concern to Lubbock, either as a fiduciary of the ESOP or as TBM's Director of Finance, related to the valuation of TBM shares for the ESOP Transaction.

69.     Section 17 of the SPA confirmed the fiduciary responsibility of TBM for the ESOP and its obligations as to compliance with ERISA "as applicable to the Plan and this Agreement."

70.     To the extent that the execution of the SPA resulted in a fiduciary breach or prohibited transaction because of an excessive valuation of TBM shares as alleged in the Complaint, TBM contractually acknowledged its fiduciary responsibility in the SPA.

71.     TBM made the fiduciary decision to engage SRR to conduct its independent valuation of the Sharma Parties' shares pursuant to an agreement executed by Bennett on behalf of TBM.

72.     As the Plan Administrator and an ERISA fiduciary, TBM owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis.  TBM also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

73.     Pursuant to Section 4-2 of the Trust Agreement, the Board of Directors of TBM maintained the authority and control to appoint and remove the Trustee—a fiduciary responsibility.  The Board exercised this fiduciary authority when it replaced North Star Trust with Lubbock as Trustee on or about August 12, 2011.

74.     On or about November 21, 2016, the TBM Board of Directors again exercised its fiduciary authority when it replaced Lubbock as Trustee with Alerus Financial, N.A.

75.     Pursuant to Section 6-1 of the Trust Agreement, the TBM Board of Directors retained the authority and control to amend the Trust Agreement.

76.     As an ERISA fiduciary, the TBM Board of Directors owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis.  The TBM Board of Directors also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

77.     On or about August 11, 2011, TBM's Board of Directors created the TBM Employee Stock Ownership Plan Committee (the "TBM ESOP Committee").  Pursuant to Section 5-9 of the Trust Agreement, the TBM ESOP Committee was bound by the Trust Agreement.  The TBM ESOP Committee is and at relevant times was a fiduciary under 29 U.S.C. 1002(21)(A).

78.     As an ERISA fiduciary, the TBM ESOP Committee owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis. The TBM ESOP Committee also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

79.     Plaintiffs allege in the Complaint that Sharma heavily influenced the valuation of the Sharma Parties' shares in order to drive up the price of those shares for the ESOP stock purchase, contrary to the best interest of the ESOP and ESOP participants. If that is true, then Sharma was exercising authority or control with respect to the management or disposition of the ESOP's assets and he was functioning as a fiduciary with respect to the ESOP.

80.     With respect to the preparation and delivery of the financial information and documentation provided by the Sharma Parties to Lubbock as the Trustee, the integrated relationship of Bennett with the Sharma Parties is reflected in Section 33 of the SPA, which states that "'knowledge" with respect to the sellers means "the actual knowledge of Anand Sharma, Bob Dean, Dan Sullivan, Ron Wince, and/or Michele Bennett, after reasonable investigation." Upon information and belief, the four individuals other than Bennett constitute the TBM Executive Management Team at the time of the SPA's execution, including Sullivan, one of the individual Plaintiffs.

81.     A breach of the representation in the SPA related to the financial statements supporting the TBM share valuation (and that could result in liability to the Sharma Parties) depended on the knowledge of Bennett.

82.     The financial information that allegedly included the fraudulent projections "influenced" by Sharma was represented to Lubbock as having been prepared in ordinary course by TBM.

83.     As an ERISA fiduciary on and before September 12, 2011, Sharma owed the ESOP and its participants duties of care, prudence, and loyalty, including a fiduciary duty to ensure that TBM shares were valued consistent with the requirements of ERISA and the ESOP Plan on at least an annual basis. Sharma also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

84.     For ESOP Plan Year ending December 31, 2011, a little over three months following the SPA, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented on behalf of the ESOP that no nonexempt transactions occurred with any party-in-interest, and that the ESOP did not have a loss caused by fraud or dishonesty.

85.     For ESOP Plan Year January 1, 2012 to December 31, 2012, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that

audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

86. For ESOP Plan Year January 1, 2013 to December 31, 2013, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

87. For ESOP Plan Year January 1, 2014 to December 31, 2014, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent

third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

88.     For ESOP Plan Year January 1, 2015 to December 31, 2015, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

89.     For ESOP Plan Year January 1, 2016 to December 31, 2016, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

90.     For ESOP Plan Year January 1, 2017 to December 31, 2017, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan

Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

91.    TBM and Bennett's representations in the Form 5500s confirm that the ESOP Transaction involved no nonexempt prohibited transaction.

92.    Upon information and belief, if Sharma improperly influenced the valuation of the Sharma Parties' shares as alleged in Plaintiffs' Complaint, then TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known for an extended period of time that the TBM financial statements and projections were false, that the TBM stock valuation was excessive, and that the ESOP Transaction constituted nonexempt prohibited transactions and required disclosure and correction such that their representations in the Form 5500s related to ESOP prohibited transactions were false and misleading and were made in an effort to conceal nonexempt prohibited transactions involving the ESOP Transaction and avoid the resulting liability to TBM and culpability of other ESOP fiduciaries, including TBM, Remy, Bennett, and Sullivan.

93. If Sharma heavily influenced the valuation of the Sharma Parties' shares such that the Sharma Parties excessively valued, then the Sharma Parties, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known that the Sharma Parties' shares were excessively valued, and they failed to disclose such information prior to the closing of the ESOP Transaction.

94. If Sharma heavily influenced the valuation of the Sharma Parties shares, as alleged in the Complaint, then the Sharma Parties, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, made or acquiesced in material misrepresentations to Lubbock as the Trustee and they would be the sole proximate cause that the ESOP Transaction was not an exempt prohibited transaction under ERISA.

95. TBM and Plaintiffs filed their claims in this action on the day before the sixth anniversary of the ESOP Transaction. One of the statute of limitations under ERISA is six years, 29 U.S.C. § 1113.

96. Upon information and belief, when this action was filed, TBM and Plaintiffs believed that a statute of limitations under ERISA for claim arising out of the ESOP Transaction would expire on September 12, 2017.

97. Upon information and belief, by filing their claims in this action on the day before the expiration of one of ERISA's statute of limitations, TBM and Plaintiffs

made the decision to assert the claims against Lubbock believing that the statute of limitations would prevent any claim from successfully being asserted against other ESOP fiduciaries (including Remy, Bennett and Sullivan), and believing that by purporting to assert the claim in a non-fiduciary capacity that any fiduciary responsibility accompanying the assertion of a fiduciary breach and prohibited transaction claim could be avoided and an additional limitation imposed on any attempt to assess liability or seek contribution from other ESOP fiduciaries.

98.     Upon information and belief, the decisions made by TBM and Plaintiffs, acting collectively with the advice of common counsel and, upon information and belief with knowledge of the TBM Board of Directors, constituted the exercise of discretion over ESOP plan assets and a fiduciary decision intended to financially benefit TBM and Plaintiffs in terms of an individual financial recovery from Lubbock and the avoidance of liability that potentially otherwise existed on account of the acts or failure to act of other fiduciaries as to the alleged fiduciary claims investigated by the TBM Board of Directors and considered and assessed by TBM in its fiduciary capacity with the assistance of its special ESOP counsel, and in total disregard of the fiduciary responsibilities of other fiduciaries to the ESOP and its participants and beneficiaries.

99.     Further, if Sharma improperly influenced the valuation of the Sharma Parties' shares as alleged in Plaintiffs' Complaint such that the ESOP paid excessive value for those shares, Plaintiffs failed to identify the ESOP loan for the ESOP Transaction as a prohibited transaction in the Complaint, failed to address that the

alleged excessive valuation of TBM shares results in the inapplicability of any exemption for the ESOP loan from a prohibited transaction for purposes of the Code and ERISA, failed to address that the ESOP loan is a condition precedent to the stock purchase in the ESOP Transaction, and failed to address that TBM and other ESOP fiduciaries is named as a fiduciary responsible for compliance with the Code and ERISA with respect to the ESOP and specifically the ESOP Transaction.

100.    Upon information and belief, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, had a fiduciary obligation to reasonably inform the ESOP participants and beneficiaries of action they knew or should have known would be taken or foregone by ESOP fiduciaries or designees of ESOP fiduciaries, particularly if such disclosure could have reasonably prevented the substantial diminishment in the protected ERISA rights of participants and beneficiaries.  Despite the fiduciary obligations of these parties to timely and fully inform participants and beneficiaries and to not mislead them, these ESOP fiduciaries did not inform ESOP participants, among other things, of the following:

    a.  that a potential fiduciary breach and prohibited transaction with respect to the ESOP Transaction had tentatively been determined to exist by TBM pursuant to an investigation directed by the TBM Board of Directors;

    b.  that a determination had been made that the statute of limitations with respect to claims was believed to expire on September 12, 2017;

c.  that the fiduciaries responsible for the fiduciary investigation had decided that no claim as to a fiduciary breach or prohibited transaction by ESOP fiduciaries would be asserted, other than against Lubbock, prior to the believed running of the statute of limitations;

d.  that only selected TBM executives, including individual fiduciaries and agents of fiduciaries, would assert individual claims as participants;

e.  that the decision to assert an individual participant claim instead of a fiduciary claim may not provide a benefit to non-executive participants and might not prevent the statute of limitations from running as to non-executive participants;

f.  to the extent that the individual claim by an executive provided any relief to non-executive participants, it only extended to the claims asserted by executives in the Complaint;

g.  none of the many claims for fiduciary breach that reasonably existed against responsible fiduciaries other than Lubbock, a former fiduciary, were protected in asserting an individual claim;

h.  TBM intended to assert a claim for monetary relief for itself with respect to the ESOP Transaction, which would resulting in material liability to TBM if Plaintiffs' allegations are true;

i.  that TBM did not intend to comply with its statutory obligations resulting from such an alleged nonexempt prohibited transaction, including disclosure requirements, excise tax obligations and correction;

j.  the decision to assert an individual claim instead of a fiduciary claim may result in participants losing valuable ERISA rights, including the right to hold the decisions of the participant to the stringent standards imposed on an ESOP fiduciary;

k.  that TBM, Remy, Bennett, and Sullivan had taken contrary positions as fiduciaries to claims they asserted in the Complaint as to the valuation of TBM shares;

l.  that a fiduciary disregarding his or her known fiduciary responsibilities to assert an individual claim seeking individual relief reasonably could be considered a fiduciary breach resulting in the elimination of any claim; or

m.  the potential benefits for a participant or beneficiary in seeking independent legal counsel.

101.  Upon information and belief, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, did not inform ESOP participants (other than the TBM executives, including fiduciaries, selected to assert individual claims) because of a belief it was helpful in diminishing the risks of a successful fiduciary claim being asserted against TBM and other ESOP fiduciaries by other participants or Lubbock in total disregard to the rights of the ESOP, its participants and beneficiaries.

102. Upon information and belief, the decisions made by TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, in prosecuting the claims that TBM determined existed or in not fully informing ESOP participants were intended to provide a financial windfall to TBM and its executives without exposing other ESOP fiduciaries (including TBM and Plaintiffs) to the risk of potential fiduciary liability that resulted from their fiduciary status.

103. Regardless of the belief by TBM and Plaintiffs that they intended to benefit the ESOP as a whole, the decision to assert an individual claim provided no possible benefit to ESOP participants and beneficiaries and risked the survival of any claim that non-executive participants might have. The executives as individual participants did not define any specific group of participants for whom they purported to include in a financial recovery and likely would vary widely and materially from the participants and beneficiaries who entered and left the ESOP over a period of eight years since 2011 and would fall within the scope of a fiduciary claim that would be considered pursuant to fiduciary standards. For example, contrary to a fiduciary claim, an individual participant claim would not extend to former participants or beneficiaries.

## FIRST CAUSE OF ACTION
### (Equitable Indemnity)

104. Lubbock incorporates by reference the preceding paragraphs of its Counterclaim as if fully set forth herein.

105. Plaintiffs contend that Lubbock is liable for alleged breaches of fiduciary duty to the ESOP Plan, and that such breaches proximately caused a loss to the Plan.

106. Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint.

107. If, however, Lubbock is deemed to be liable for the losses alleged in the Complaint, then Bennett, Remy, and/or Sullivan are liable to Lubbock for equitable indemnity because, unbeknownst to Lubbock, their misconduct and fiduciary breaches proximately caused the ESOP Transaction (the stock purchase and the ESOP loan) to be a violation of law as a nonexempt prohibited transaction under ERISA, and their misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

## SECOND CAUSE OF ACTION
### (Equitable Contribution and Apportionment)

108. Lubbock incorporates by reference the preceding paragraphs of its Counterclaim as if fully set forth herein.

109. If Lubbock is deemed to be liable to the ESOP for the losses alleged in the Complaint, then Bennett, Remy and/or Sullivan are liable to Lubbock for equitable contribution for their proportionate share of the alleged loss because, unbeknownst to Lubbock, their misconduct and fiduciary breaches proximately caused the ESOP Transaction (the stock purchase and the ESOP loan) to be a violation of law as a nonexempt prohibited transaction under ERISA, and their misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A. Enter judgment in favor of Lubbock and against Plaintiffs;

B. Alternatively, enter judgment in favor of Lubbock and against Counterclaim Defendants Bill Remy, Michele Bennett, and/or Dan Sullivan for any sum or sums for which Lubbock may be deemed liable in this action;

C. Alternatively, enter judgment in favor of Lubbock and against Counterclaim Defendants Bill Remy, Michele Bennett, and/or Dan Sullivan for contribution for his or her proportionate share of any loss deemed against Lubbock in this action;

D. Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable.

E. Enter such other relief as the Court may deem just and proper.

## THIRD-PARTY COMPLAINT

NOW COMES Third-Party Plaintiff Lubbock National Bank ("Lubbock"), pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, to assert the following Third-Party Complaint against Third-Party Defendants TBM Consulting Group, Inc. ("TBM"), the ESOP Committee of TBM Consulting Group, Inc., Robert Dean, Ron Wince, Stephen Smith, William E. Schwartz, Mark Gottfredson, Melvin R. Haught, Anand Sharma, Anand Sharma 2009 GRAT Trust, Lotus One, LLC, and Stout Risius Ross, LLC f/k/a Stout Risius Ross, Inc., and alleges and states as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e), 29 U.S.C. § 1109(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

2.     Venue in this action lies properly in the Eastern District of North Carolina, pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391.

## PARTIES

3.     TBM is and at all relevant times was a corporation organized and existing under the laws of Delaware, with its principal place of business in Morrisville, North Carolina.  In or around 2003, TBM established an employee stock ownership plan known as the "TBM Consulting Group, Inc. Employee Stock Ownership Plan" (the "ESOP" or the "Plan").  At all relevant times, TBM is and was serving as an ERISA fiduciary to the ESOP.

4.     The Board of Directors of TBM Consulting Group, Inc. (the "TBM Board of Directors") is and at all relevant time was the governing board and authority for TBM.  As the governing authority of TBM, it exercised authority and control over the ESOP, including without limitation with respect to its authority to amend the ESOP; to appoint, monitor and remove ESOP fiduciaries; and to monitor fiduciary performance for compliance with requirements of ERISA and the Internal Revenue Code of 1986 as amended (the "Code") so as to preserve the tax-exempt status of the ESOP, including avoiding conflicts of interest in violation of ERISA, monitoring transactions involving TBM stock (including the valuation of TBM stock on at least an annual basis), and avoiding nonexempt prohibited transactions under ERISA.

5.     The Employee Stock Option Plan Committee of TBM Consulting Group, Inc. (the "TBM ESOP Committee") is an entity formed by the TBM Board of Directors with duties given to it by the TBM Board of Directors and the Trust Agreement to oversee the management of ESOP, including the valuation of TBM stock, the avoidance of nonexempt prohibited transactions, and compliance with reporting and disclosure requirements related to the ESOP.  The TBM ESOP Committee is a named fiduciary of the ESOP.  In the performance of its duties, including when it exercised discretionary authority as to the disposition of ESOP assets, the TBM ESOP Committee acted as a fiduciary.  Service of process on the TBM ESOP Committee can be made by serving TBM on its behalf.

6.     Other than Plaintiff and Counterclaim Defendant Michele Bennett, Lubbock is unaware of the identity of the members of the TBM ESOP Committee. Fictitious Third-Party Defendants John Does 1-15 ("John Does") are or were members of the TBM ESOP Committee during relevant times.  Once the identities of the remaining members of the TBM ESOP Committee members are discovered, Lubbock will seek leave to amend to join them as Third-Party Defendants in their true names.

7.     Upon information and belief, Robert Dean a/k/a Bob Dean ("Dean") is a resident of North Carolina and at all relevant times has been a member of the TBM Board of Directors.

8.     Upon information and belief, Ron Wince ("Wince") is a resident of Illinois and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

9.     Upon information and belief, Stephen Smith ("Smith") is a resident of North Carolina and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

10.     Upon information and belief, William E. Schwartz ("Schwartz") is a resident of North Carolina and, at least since 2011 and for pertinent times thereafter, has been a member of the TBM Board of Directors.

11.     Upon information and belief, Mark Gottfredson ("Gottfredson") is a resident of Texas and at all relevant times has been a member of the TBM Board of Directors.

12.     Upon information and belief, Melvin R. Haught ("Haught") is a resident of West Virginia and at least since 2015 has been a member of the TBM Board of Directors.

13.     Upon information and belief, Anand Sharma ("Sharma") is the former President and Chief Executive Officer of TBM and is a resident of Florida, with a home located at 3800 N. Ocean Dr. #1253, Singer Island, Florida, and/or a resident of North Carolina, with a home located at 1116 Magic Hollow Road, Durham, North Carolina.  In 2011, when the ESOP engaged in certain transactions involving TBM stock, Sharma was acting President and Chief Executive Officer of TBM and chair of the TBM Board of Directors.  Upon information and belief, in 2011, Sharma individually exercised discretion over the disposition of ESOP plan assets, and in doing so acted as a fiduciary of the ESOP, individually and/or as an agent of other fiduciaries, including TBM.

14. Upon information and belief, Anand Sharma 2009 GRAT Trust is a trust formed by and for the benefit of Anand Sharma and the beneficiaries of such trust, formed in Florida, with its principal place of business located at 3800 N. Ocean Dr., Singer Island, Florida. Upon information and belief, Sharma is and at all relevant times was the principal and trustee of Anand Sharma 2009 GRAT Trust, acting as its agent for purposes of the ESOP Transaction.

15. Upon information and belief, Lotus One LLC, is a Florida company, with its principal place of business also located at 3800 N. Ocean Dr. #1253, Singer Island, Florida. Upon information and belief, Sharma is and at all relevant times was the Manager of Lotus One LLC, acting as its agent for purposes of the ESOP Transaction.

16. Upon information and belief, Stout Risius Ross, LLC f/k/a Stout Risius Ross, Inc. ("SRR") is a company organized and existing under the laws of the State of Michigan, with its principal place of business in Southfield, Michigan.

17. Lubbock National Bank ("Lubbock") is, and at all relevant times was, a Texas financial institution, organized and existing under the laws of the State of Texas with its principal place of business in Lubbock, Texas.

## FACTUAL BACKGROUND

18. Upon information and belief, Michele Bennett ("Bennett") is a resident of Cary, North Carolina, and at all relevant times was serving as the Director of Finance of TBM Consulting Group, Inc. ("TBM"). Upon information and belief, at all relevant times, Bennett served as the chair of the TBM ESOP Committee (defined in para. 9 below) and, on at least an annual basis since 2011, Bennett has authorized,

certified and executed certain filings with the Internal Revenue Service and the Department of Labor, intended to satisfy certain reporting and disclosure requirements imposed on ESOP fiduciaries, and she was acting as an agent for TBM and the TBM ESOP Committee, both of which are named fiduciaries, as well as acting in an individual fiduciary capacity.

19.    Upon information and belief, Dan Sullivan ("Sullivan") is a resident of Wilmington, North Carolina, and at all relevant times has been a member of the TBM Board of Directors.

20.    Upon information and belief, Bill Remy ("Remy") is a resident of Phoenix, Arizona, and he has been a member of the TBM Board of Directors since at least 2015 and has been TBM's President and Chief Operating Officer since 2012. (The term "TBM Board of Directors" refers collectively to the governing body of TBM at the relevant time and, as applicable, refers individually to Dean, Wince, Smith, Schwartz, Gottfredson, Haught, Sharma, Sullivan, and Remy.)

21.    The ESOP is a pension plan within the meaning of 29 U.S.C. § 1002(2).

22.    From 2007 until in or about August 2011, North Star Trust Company ("North Star Trust") served as the Trustee for the ESOP.

23.    In August 2011, with the approval of the TBM Board of Directors, TBM entered into an agreement with Lubbock to retain Lubbock as Trustee, replacing North Star Trust.

24.    In 2011, Anand Sharma, who was then TBM's President and Chief Executive Officer, offered to sell to the ESOP most of the 77,799.07 shares of TBM

Series B common stock that he owned personally and through two entities he managed and/or controlled, the Anand Sharma 2009 GRAT Trust and Lotus One LLC (collectively, with Mr. Sharma, the "Sharma Parties").

25.     In connection with the purchase of the Sharma Parties' shares, and as a condition of the purchase pursuant to the Stock Purchase Agreement (defined in para. 53 below), TBM would borrow funds and then loan a portion of those funds to the ESOP to close the purchase.  The purchase of the Sharma Parties' shares and the loan from TBM to the ESOP are herein referred to collectively as the "ESOP Transaction."  This definition of the ESOP Transaction differs from the Plaintiffs' use of the same term because Plaintiffs' definition of the "ESOP Transaction" does not include the loan that was a condition of the Stock Purchase Agreement.

26.     Sharma was a party-in-interest under 29 U.S.C. § 1002(14)(H), and therefore the ESOP Transaction would be considered a "prohibited transaction" under 29 U.S.C. § 1106(a) that would require a statutory exemption in order for the transaction to comply with ERISA.

27.     29 U.S.C. § 1108(e) provides an exemption that permits plans to purchase stock from parties-in-interest as long as the price paid does not exceed adequate consideration.

28.     Effective August 24, 2011, TBM created the "TBM Consulting Group, Inc. Employee Stock Ownership Trust (As Amended and Restated, Effective August 24, 2011)" (the "Trust Agreement"), attached hereto as **Exhibit 1**.

29.     In connection with a potential sale of the Sharma Parties' shares to the ESOP, Lubbock, in its capacity as Trustee of the ESOP, entered into an agreement with SRR, attached hereto as **Exhibit 2**.

30.     SRR holds itself out to the public and its clients as a professional and experienced financial adviser, including with expertise in valuation advisory services.

31.     SRR had previously provided professional valuation services to North Star Trust prior to Lubbock's engagement as Trustee, and SRR enjoyed and continues to enjoy an excellent reputation as an independent professional valuation firm.

32.     SRR was retained to prepare an independent valuation of TBM for the purposes of the ESOP's purchase of the Sharma Parties' shares and a fairness opinion concerning the proper consideration to be paid by the ESOP for the shares. Specifically, Lubbock requested the following written opinion from SRR:

- The consideration to be paid by the ESOP for its shares of Company stock pursuant to the terms of the Transaction is not greater than the fair market value (as such term is used for adequate consideration purposes as defined in Section 3(18) of the Employee Retirement Income Security Act of 1974, as amended (ERISA)) of such shares;

- The interest rate on the ESOP Loan is not in excess of a reasonable interest rate;

- The financial terms of the ESOP Loan are at least as favorable to the ESOP as would be the terms of comparable loan resulting from negotiations between independent parties; and

- The terms and conditions of the Transaction, taken as a whole, are fair to the ESOP from a financial point of view.

33.     In undertaking its engagement, SRR's focus was directed to the valuation issues arising under 29 U.S.C. § 1002(18), which defines the term "adequate

consideration" as the fair market value of an asset determined by a fiduciary in good faith, pursuant to the Department of Labor Proposed Regulation Section 2510.3-18(b)(2).

34. SRR is independent of the parties to the ESOP Transaction (other than the ESOP) within the meaning of proposed regulation 29 CFR 2510.3-18(b) issued by the U.S. Department of Labor and section 401(a)(28)(C) of the Code.

35. SRR's analysis took into consideration Revenue Ruling 59-60, 1959-1 C.B. 237, which outlines and reviews the general approaches, methods, and factors to be considered in the valuation of the capital stock of closely held companies and thinly traded corporations.

36. On behalf of TBM, Bennett signed the engagement agreement with SRR, acknowledging her and TBM's understanding that "[SRR's] work requires extensive cooperation from [TBM] and its representatives … ." She also acknowledged her and TBM's understanding that "it is important for [SRR] to be provided with information we request from [TBM] promptly," and that "if [TBM] is or becomes aware of other relevant information necessary to the proper completion of this engagement, [TBM] agrees to provide us with this information."

37. TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM who may have been fiduciaries to the ESOP provided the financial information about TBM that Lubbock and SRR needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

38. Upon information and belief, SRR received financial information directly from Bennett and others at TBM, including other agents who, upon information and belief, were fiduciaries to the ESOP, that SRR needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

39. Lubbock provided to SRR financial information Lubbock received from Bennett and others at TBM, including other agents who, upon information and belief, were fiduciaries to the ESOP, that SRR and Lubbock needed and relied on to evaluate the fair market value of the shares to be sold by the Sharma Parties.

40. The information collected, reviewed, analyzed, and relied on by SRR included the following:

- TBM's audited financial statements for the fiscal years ended December 31, 2006 through December 31, 2010;

- TBM's internally-prepared financial statements for the seven-month periods ended July 31, 2011 and July 31, 2010;

- Financial projections for TBM prepared by management for the fiscal years ending December 31, 2011 through December 31, 2015;

- The TBM ESOP Stock Purchase Agreement by and among TBM, the Trustee, Anand Sharma, Anand Sharma, as Trustee of The Anand Sharma 2009 GRAT Trust, and Lotus One LLC, dated September 12, 2011;

- A term sheet from the lender to the ESOP, dated June 30, 2011;

- The Amended and Restated Shareholder Agreement;

- The ESOP Credit Agreement between the ESOP and TBM dated September 12, 2011;

- The ESOP Pledge Agreement between the ESOP and TBM dated September 12, 2011;

- The Summary of the Terms of Price Protection Policy and Process for Annual Administration, dated September 12, 2011;

- The ESOP Non-Recourse Promissory Note between the ESOP and TBM, dated September 12, 2011;

- The By-Laws of TBM;

- The First Amended and Restated By-Laws of TBM;

- The Executive Employment Agreement by and between TBM and Anand Sharma dated September 12, 2011;

- The Executive Employment Agreement by and between TBM and Robert Dean dated December 22, 2009;

- The Executive Employment Agreement by and between TBM and Anand Sharma dated December 22, 2009;

- The Executive Employment Agreement by and between TBM and Daniel Sullivan dated December 22, 2009;

- The TBM Consulting Group, Inc. 2004 Stock Option Plan dated January 2004;

- The TBM Stock Purchase Agreement by and among TBM, the Trustee, Anand Sharma, Robert S. Dean, Mark W. Oakeson, William A. Schwartz, H. Samuel Swoyer, Jr., and John Michael Herr, dated January 2004;

- The TBM Consulting Group, Inc. Certificate of Incorporation dated January 13, 2004;

- The TBM Amended and Restated Certificate of Incorporation; and

- Publicly available information and financial data on publicly traded companies considered similar to TBM from an investment risk/return perspective.

41.     SRR also held discussions with certain members of the senior management of TBM regarding the operations, financial condition, future prospects, and projected operations and performance of TBM.

42.     The information collected, reviewed, analyzed, and relied on by SRR to form its independent opinion and provide its advice on the fair market value of the Sharma Parties' shares in the ESOP Transaction was reasonable and appropriate.

43.     Plaintiffs' Complaint, including paragraph 38, alleges that Sharma "heavily influenced" the financial information relied on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction in order to drive up the price of those shares, contrary to the best interest of the ESOP and ESOP participants.  Upon information and belief, if Paragraph 38 is correct, then the only means by which the Plaintiffs would know—six years after the fact—of such misconduct by Sharma is that they, and particularly Bennett, were privy to the misconduct, and they knew or should have known that Lubbock and SRR were the victims of Sharma's manipulation of financial information about TBM.

44.     Lubbock had no reason to believe that Sharma had heavily influenced the financial information it and SRR would be relying on to determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction.

45.     Upon information and belief, if Sharma improperly influenced the valuation of the Sharma Parties' shares, and those shares were excessively priced in the ESOP Transaction, then TBM, the TBM Board of Directors, the TBM ESOP Committee, Bennett, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known that Sharma had heavily influenced the financial information Lubbock and SRR would be relying on to

determine the fair market value of the shares to be sold by the Sharma Parties in the ESOP Transaction.

46.     Neither the Sharma Parties, TBM, the TBM Board of Directors, the TBM ESOP Committee, Bennett, nor other agents of TBM, including other agents who may have been fiduciaries to the ESOP, disclosed to Lubbock that the information being provided to Lubbock and SRR had been heavily influenced by Sharma.

47.     It would have been particularly misleading for Bennett, TBM's Director of Finance and a fiduciary and a participant in the ESOP, to provide false or misleading financial information about TBM or to fail to disclose to Lubbock and SRR that Sharma had heavily influenced such information, when she knew that Lubbock and SRR were relying on the information to determine the fair market value of the Sharma Parties' shares in the ESOP Transaction.

48.     If Sharma improperly influenced the valuation of the Sharma Parties' shares, and those shares were excessively priced in the ESOP Transaction, then Lubbock and, upon information and belief, SRR unknowingly relied on false and misleading financial information about TBM that had been influenced by Sharma and provided by TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP.

49. SRR made an independent valuation concluding that the price to be paid for the Sharma Parties' shares in the ESOP Transaction was in fact the fair market value of those shares.

50. SRR provided an independent valuation of the ESOP for each calendar year from 2011 to 2016, using financial information about TBM received from TBM, Bennett, and other agents of TBM, and at no time has SRR's independent valuations suggested that the sale of the shares of the Sharma Parties had not been at fair market value.

51. Lubbock conducted an appropriate and reasonable good faith review of SRR's independent appraisal, including an independent review of the information, assumptions, and methodology used by SRR to determine the fair market value of the Sharma Parties' shares, and Lubbock concluded that SRR's opinion on the fair market value of the shares was formed in a reasonable and reliable manner, upon a review of appropriate information, using reasonable assumptions and methodologies, and that the price to be paid for those shares was in fact their fair market value.

52. The ESOP transaction closed on September 12, 2011.

53. On September 12, 2011, the Sharma Parties, TBM, and Lubbock, in its capacity as Trustee, entered into a Stock Purchase Agreement (the "SPA"), attached hereto as **Exhibit 3**.

54. Pursuant to the SPA, the Sharma Parties sold to the Trustee 62,239.26 shares of TBM Series B common stock for $10,500,000 payable at the closing.

55. In the SPA, the Sharma Parties made certain representations as to the accuracy and validity of the "Financial Statements" of TBM that had been delivered to the Trustee (see Section 6.6 of the SPA) and used by SRR for purpose of its independent determination of the value of TBM shares purchased in the ESOP Transaction.

56. Section 6.28 of the SPA represented to Lubbock as Trustee that no document or information (including the Financial Statements) provided to the Trustee "contain[s] any untrue statement of material fact or omits or shall omit a material fact necessary to make the statements contained therein not misleading." Pursuant to Section 15 of the SPA, a violation of this representation subjected the Sharma Parties to liability.

57. Upon information and belief, TBM is, and at all relevant times was, the Plan Administrator and Plan Sponsor of the ESOP, and Bennett was authorized to act on behalf of the Plan Administrator and Plan Sponsor.

58. Pursuant to Section 15.1 of the ESOP, TBM is, and at all relevant times was, a "Named Fiduciary" of the Plan.

59. Upon information and belief, Bennett exercised control over TBM and the TBM ESOP Committee in their capacity as a "Named Fiduciary," and she exercised discretion over ESOP assets as a functional fiduciary.

60. In her fiduciary capacities, Bennett owed the ESOP and its participants duties of care, prudence, and loyalty. Bennett had the fiduciary responsibility to

determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

61.     As an ERISA fiduciary, Bennett had responsibility for the review and approval of the valuation of TBM shares for purposes of the ESOP Transaction, as well as for the annual valuation as of each December 31.

62.     Bennett, acting both individually as a fiduciary and as an agent of one or more fiduciaries, is, and at all time was, responsible for the preparation of the annual Form 5500 filing (a joint disclosure to the Department of Labor and the Internal Revenue Service), including the ESOP financial statements reflecting the valuation methodology for TBM shares, the valuation of TBM shares for the ESOP, and the reporting and disclosure of prohibited transactions on ESOP loans and stock purchases.

63.     In September 2011 and, upon information and belief, for all periods since the closing of the ESOP loan and stock purchase, Bennett, as TBM's Director of Finance, has had responsibility for the preparation of the TBM financial statements, including the preparation and delivery of TBM financial statements and projections considered by the appropriate ESOP fiduciaries for purposes of determining the valuation of TBM shares for ESOP purposes.

64.     In September 2011 and, upon information and belief, for all periods since the closing of the ESOP Transaction in 2011, the ESOP and the responsible fiduciaries, including Bennett, have maintained the same methodology for valuing the TBM shares for purposes of the ESOP.

65.     As stated in ESOP financial statements accompanying the 2016 Form 5500 filing executed individually by Bennett as a fiduciary and as Plan Administrator on behalf of TBM: "This appraisal was based upon a combination of the market and income valuation techniques consistent with prior years. The appraiser took into account historical and projected cash flow and net income, return on assets, return on equity, market comparables and fair market value of the Company's assets and liabilities."

66.     Upon information and belief, neither in the 2016 Form 5500 filing— executed by Bennett in a fiduciary capacity after the filing of the Complaint in this action—nor in any prior Form 5500 filings, has any violation of ERISA or even a suggestion of a violation of ERISA been raised with respect to the ESOP Transaction.

67.     Prior to the removal of Lubbock as a discretionary fiduciary of the ESOP on or about April 1, 2017, Bennett, a fiduciary to the ESOP and TBM's Director of Finance, never expressed any concern to Lubbock that the valuation of TBM shares was greater than the fair market value for the ESOP Transaction, or that a prohibited transaction had occurred related to the ESOP Transaction.

68.     Prior to filing the Complaint in her capacity as an individual participant of the ESOP on September 11, 2017, Bennett never raised any concern to Lubbock, either as a fiduciary of the ESOP or as TBM's Director of Finance, related to the valuation of TBM shares for the ESOP Transaction.

69.     Section 17 of the SPA confirmed the fiduciary responsibility of TBM for the ESOP and its obligations as to compliance with ERISA "as applicable to the Plan and this Agreement."

70.     To the extent that the execution of the SPA resulted in a fiduciary breach or prohibited transaction because of an excessive valuation of TBM shares as alleged in the Complaint, TBM contractually acknowledged its fiduciary responsibility in the SPA.

71.     TBM made the fiduciary decision to engage SRR to conduct its independent valuation of the Sharma Parties' shares pursuant to an agreement executed by Bennett on behalf of TBM.

72.     As the Plan Administrator and an ERISA fiduciary, TBM owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis.  TBM also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

73.     Pursuant to Section 4-2 of the Trust Agreement, the Board of Directors of TBM maintained the authority and control to appoint and remove the Trustee—a fiduciary responsibility.  The Board exercised this fiduciary authority when it replaced North Star Trust with Lubbock as Trustee on or about August 12, 2011.

74.     On or about November 21, 2016, the TBM Board of Directors again exercised its fiduciary authority when it replaced Lubbock as Trustee with Alerus Financial, N.A.

75.     Pursuant to Section 6-1 of the Trust Agreement, the TBM Board of Directors retained the authority and control to amend the Trust Agreement.

76.     As an ERISA fiduciary, the TBM Board of Directors owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis.  The TBM Board of Directors also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

77.     On or about August 11, 2011, TBM's Board of Directors created the TBM Employee Stock Ownership Plan Committee (the "TBM ESOP Committee"). Pursuant to Section 5-9 of the Trust Agreement, the TBM ESOP Committee was bound by the Trust Agreement.  The TBM ESOP Committee is and at relevant times was a fiduciary under 29 U.S.C. 1002(21)(A).

78.     As an ERISA fiduciary, the TBM ESOP Committee owed the ESOP and its participants duties of care, prudence, and loyalty, including the duty to determine whether TBM shares were valued consistent with the requirements of ERISA and the ESOP plan document on at least an annual basis.  The TBM ESOP Committee also had the fiduciary responsibility to determine whether the price paid by the ESOP

for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

79.     Plaintiffs allege in the Complaint that Sharma heavily influenced the valuation of the Sharma Parties' shares in order to drive up the price of those shares for the ESOP stock purchase, contrary to the best interest of the ESOP and ESOP participants.  If that is true, then Sharma was exercising authority or control with respect to the management or disposition of the ESOP's assets and he was functioning as a fiduciary with respect to the ESOP.

80.     With respect to the preparation and delivery of the financial information and documentation provided by the Sharma Parties to Lubbock as the Trustee, the integrated relationship of Bennett with the Sharma Parties is reflected in Section 33 of the SPA, which states that "'knowledge" with respect to the sellers means "the actual knowledge of Anand Sharma, Bob Dean, Dan Sullivan, Ron Wince, and/or Michele Bennett, after reasonable investigation."  Upon information and belief, the four individuals other than Bennett constitute the TBM Executive Management Team at the time of the SPA's execution, including Sullivan, one of the individual Plaintiffs.

81.     A breach of the representation in the SPA related to the financial statements supporting the TBM share valuation (and that could result in liability to the Sharma Parties) depended on the knowledge of Bennett.

82.     The financial information that allegedly included the fraudulent projections "influenced" by Sharma was represented to Lubbock as having been prepared in ordinary course by TBM.

83.     As an ERISA fiduciary on and before September 12, 2011, Sharma owed the ESOP and its participants duties of care, prudence, and loyalty, including a fiduciary duty to ensure that TBM shares were valued consistent with the requirements of ERISA and the ESOP Plan on at least an annual basis. Sharma also had the fiduciary responsibility to determine whether the price paid by the ESOP for the Sharma Parties' shares in the ESOP Transaction was the fair market value of those shares.

84.     For ESOP Plan Year ending December 31, 2011, a little over three months following the SPA, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented on behalf of the ESOP that no nonexempt transactions occurred with any party-in-interest, and that the ESOP did not have a loss caused by fraud or dishonesty.

85.     For ESOP Plan Year January 1, 2012 to December 31, 2012, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was

neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

86. For ESOP Plan Year January 1, 2013 to December 31, 2013, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

87. For ESOP Plan Year January 1, 2014 to December 31, 2014, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

88.    For ESOP Plan Year January 1, 2015 to December 31, 2015, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

89.    For ESOP Plan Year January 1, 2016 to December 31, 2016, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

90.    For ESOP Plan Year January 1, 2017 to December 31, 2017, Bennett on behalf of herself as a fiduciary and on behalf of TBM, a named fiduciary and Plan Administrator, executed a Form 5500 in which she and TBM represented that audited financial statements for the ESOP showed that there had been no nonexempt

transactions with any party-in-interest, that the ESOP did not have a loss caused by fraud or dishonesty, that the ESOP did not hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser, and that the ESOP had not failed to provide any benefit when due under the ESOP.

91. TBM and Bennett's representations in the Form 5500s confirm that the ESOP Transaction involved no nonexempt prohibited transaction.

92. Upon information and belief, if Sharma improperly influenced the valuation of the Sharma Parties' shares as alleged in Plaintiffs' Complaint, then TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known for an extended period of time that the TBM financial statements and projections were false, that the TBM stock valuation was excessive, and that the ESOP Transaction constituted nonexempt prohibited transactions and required disclosure and correction such that their representations in the Form 5500s related to ESOP prohibited transactions were false and misleading and were made in an effort to conceal nonexempt prohibited transactions involving the ESOP Transaction and avoid the resulting liability to TBM and culpability of other ESOP fiduciaries, including TBM, Remy, Bennett, and Sullivan.

93. If Sharma heavily influenced the valuation of the Sharma Parties' shares such that the Sharma Parties excessively valued, then the Sharma Parties, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other

agents of TBM, including other agents who may have been fiduciaries to the ESOP, knew or should have known that the Sharma Parties' shares were excessively valued, and they failed to disclose such information prior to the closing of the ESOP Transaction.

94.    If Sharma heavily influenced the valuation of the Sharma Parties shares, as alleged in the Complaint, then the Sharma Parties, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, made or acquiesced in material misrepresentations to Lubbock as the Trustee and they would be the sole proximate cause that the ESOP Transaction was not an exempt prohibited transaction under ERISA.

95.    TBM and Plaintiffs filed their claims in this action on the day before the sixth anniversary of the ESOP Transaction.  One of the statute of limitations under ERISA is six years, 29 U.S.C. § 1113.

96.    Upon information and belief, when this action was filed, TBM and Plaintiffs believed that a statute of limitations under ERISA for claim arising out of the ESOP Transaction would expire on September 12, 2017.

97.    Upon information and belief, by filing their claims in this action on the day before the expiration of one of ERISA's statute of limitations, TBM and Plaintiffs made the decision to assert the claims against Lubbock believing that the statute of limitations would prevent any claim from successfully being asserted against other ESOP fiduciaries (including Remy, Bennett and Sullivan), and believing that by

purporting to assert the claim in a non-fiduciary capacity that any fiduciary responsibility accompanying the assertion of a fiduciary breach and prohibited transaction claim could be avoided and an additional limitation imposed on any attempt to assess liability or seek contribution from other ESOP fiduciaries.

98.     Upon information and belief, the decisions made by TBM and Plaintiffs, acting collectively with the advice of common counsel and, upon information and belief with knowledge of the TBM Board of Directors, constituted the exercise of discretion over ESOP plan assets and a fiduciary decision intended to financially benefit TBM and Plaintiffs in terms of an individual financial recovery from Lubbock and the avoidance of liability that potentially otherwise existed on account of the acts or failure to act of other fiduciaries as to the alleged fiduciary claims investigated by the TBM Board of Directors and considered and assessed by TBM in its fiduciary capacity with the assistance of its special ESOP counsel, and in total disregard of the fiduciary responsibilities of other fiduciaries to the ESOP and its participants and beneficiaries.

99.     Further, if Sharma improperly influenced the valuation of the Sharma Parties' shares as alleged in Plaintiffs' Complaint such that the ESOP paid excessive value for those shares, Plaintiffs failed to identify the ESOP loan for the ESOP Transaction as a prohibited transaction in the Complaint, failed to address that the alleged excessive valuation of TBM shares results in the inapplicability of any exemption for the ESOP loan from a prohibited transaction for purposes of the Code and ERISA, failed to address that the ESOP loan is a condition precedent to the stock

purchase in the ESOP Transaction, and failed to address that TBM and other ESOP fiduciaries is named as a fiduciary responsible for compliance with the Code and ERISA with respect to the ESOP and specifically the ESOP Transaction.

100.    Upon information and belief, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, had a fiduciary obligation to reasonably inform the ESOP participants and beneficiaries of action they knew or should have known would be taken or foregone by ESOP fiduciaries or designees of ESOP fiduciaries, particularly if such disclosure could have reasonably prevented the substantial diminishment in the protected ERISA rights of participants and beneficiaries.  Despite the fiduciary obligations of these parties to timely and fully inform participants and beneficiaries and to not mislead them, these ESOP fiduciaries did not inform ESOP participants, among other things, of the following:

a.  that a potential fiduciary breach and prohibited transaction with respect to the ESOP Transaction had tentatively been determined to exist by TBM pursuant to an investigation directed by the TBM Board of Directors;

b.  that a determination had been made that the statute of limitations with respect to claims was believed to expire on September 12, 2017;

c.  that the fiduciaries responsible for the fiduciary investigation had decided that no claim as to a fiduciary breach or prohibited transaction

by ESOP fiduciaries would be asserted, other than against Lubbock, prior to the believed running of the statute of limitations;

d. that only selected TBM executives, including individual fiduciaries and agents of fiduciaries, would assert individual claims as participants;

e. that the decision to assert an individual participant claim instead of a fiduciary claim may not provide a benefit to non-executive participants and might not prevent the statute of limitations from running as to non-executive participants;

f. to the extent that the individual claim by an executive provided any relief to non-executive participants, it only extended to the claims asserted by executives in the Complaint;

g. none of the many claims for fiduciary breach that reasonably existed against responsible fiduciaries other than Lubbock, a former fiduciary, were protected in asserting an individual claim;

h. TBM intended to assert a claim for monetary relief for itself with respect to the ESOP Transaction, which would resulting in material liability to TBM if Plaintiffs' allegations are true;

i. that TBM did not intend to comply with its statutory obligations resulting from such an alleged nonexempt prohibited transaction, including disclosure requirements, excise tax obligations and correction;

j. the decision to assert an individual claim instead of a fiduciary claim may result in participants losing valuable ERISA rights, including the

right to hold the decisions of the participant to the stringent standards imposed on an ESOP fiduciary;

k.  that TBM, Remy, Bennett, and Sullivan had taken contrary positions as fiduciaries to claims they asserted in the Complaint as to the valuation of TBM shares;

l.  that a fiduciary disregarding his or her known fiduciary responsibilities to assert an individual claim seeking individual relief reasonably could be considered a fiduciary breach resulting in the elimination of any claim; or

m.  the potential benefits for a participant or beneficiary in seeking independent legal counsel.

101.  Upon information and belief, TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, did not inform ESOP participants (other than the TBM executives, including fiduciaries, selected to assert individual claims) because of a belief it was helpful in diminishing the risks of a successful fiduciary claim being asserted against TBM and other ESOP fiduciaries by other participants or Lubbock in total disregard to the rights of the ESOP, its participants and beneficiaries.

102.  Upon information and belief, the decisions made by TBM, the TBM Board of Directors, Bennett, the TBM ESOP Committee, and other agents of TBM, including other agents who may have been fiduciaries to the ESOP, in prosecuting

the claims that TBM determined existed or in not fully informing ESOP participants were intended to provide a financial windfall to TBM and its executives without exposing other ESOP fiduciaries (including TBM and Plaintiffs) to the risk of potential fiduciary liability that resulted from their fiduciary status.

103. Regardless of the belief by TBM and Plaintiffs that they intended to benefit the ESOP as a whole, the decision to assert an individual claim provided no possible benefit to ESOP participants and beneficiaries and risked the survival of any claim that non-executive participants might have. The executives as individual participants did not define any specific group of participants for whom they purported to include in a financial recovery and likely would vary widely and materially from the participants and beneficiaries who entered and left the ESOP over a period of eight years since 2011 and would fall within the scope of a fiduciary claim that would be considered pursuant to fiduciary standards. For example, contrary to a fiduciary claim, an individual participant claim would not extend to former participants or beneficiaries.

## THIRD-PARTY CLAIMS AGAINST TBM

### FIRST CAUSE OF ACTION
### (Contractual Indemnification)

104. Lubbock realleges and incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

105. Effective as of August 24, 2011, TBM and Lubbock, in its capacity as Trustee, entered into the Trust Agreement with respect to the ESOP.

106. Section 5-4 of the Trust Agreement provides, in pertinent part, the following:

> 5-4. <u>Indemnification; Payment of Defense Costs; Settlement of Claims</u>. Notwithstanding any provision in the Plan to the contrary, the Company [TBM] shall indemnify and hold harmless the Trustee and its affiliates, its and their respective officers, directors, employees and agents and any other entity or person controlling the Trustee or its affiliates (each an "Indemnified Party"), to the extent not prohibited under applicable law, from and against any losses, claims, costs, expenses, damages or liabilities (including actions or proceedings in respect thereto and including, without limitation, attorneys' fees and litigation expenses) (collectively, "Losses"), related to the Trust or the Trustee's or any other Indemnified Party's performance thereof, including, without limitation, any legal proceedings, actions, suits, arbitrations and investigations, except to the extent such Losses are determined by a court of competent jurisdiction, and the Company and Indemnified Party determine in good faith not to appeal such decision or from which no appeal can be taken, to have resulted directly and primarily from gross negligence, willful misconduct or a breach of fiduciary duty under Section 404(a) of ERISA on the part of such Indemnified Party . . . .
>
> At the request of the Indemnified Party, and to the extent permitted by applicable law, the Company may advance any funds to an Indemnified Party for the purpose of defending any legal proceeding with respect to which indemnification may be sought against the Company pursuant to this Section 5-4 (a "Proceeding"), provided that such Indemnified Party shall first have entered into a written agreement with the Company evidencing his or her or its intent to repay such amounts in the event a court of competent jurisdiction, and the Company and Indemnified Party determine in good faith not to appeal such decision or from which no appeal can be taken, determines that the Loss resulted from gross negligence, willful misconduct, or a breach of fiduciary duty under Section 404(a) of ERISA on the part of such Indemnified Party … .

107. In addition, Section 11.11 of the ESOP Plan provides, in pertinent part:

> 11.11 <u>Indemnification</u>. Unless a written agreement between the Trustee and the Company [TBM] provides for indemnification

other than as set forth in this Section, each Trustee and each director and officer of the Company shall be indemnified by the Company to the extent permitted by law against all expenses (including costs and attorneys' fees) actually and necessarily incurred or paid by him or her in connection with the defense of any action, suit or proceeding in any way relating to or arising from the Plan to which he or she may be made a party by reason of his or her being or having been a Trustee, director or officer or by reason of any action or omission or alleged action or omission by him in such capacity, and against any amount or amounts which may be paid by him (other than to the Company) in reasonable settlement of any such action, suit or proceeding, where it is in the interest of the Company that such settlement be made, unless such expense results primarily and directly from bad faith, fraud, willful or wanton misconduct or action in a manner that is a material and substantial departure from prevailing standards of ordinary care in similar circumstances. In cases where such action, suit, or proceeding shall proceed to final adjudication, such indemnification shall not extend to matters as to which it shall be adjudged that such Trustee, director or officer has acted primarily and directly from bad faith, fraud, willful or wanton misconduct or action in a manner that is a material and substantial departure from prevailing standards of ordinary care in similar circumstances … .

108.    The Trust Agreement and the Plan are valid contracts, providing enforceable rights and remedies to Lubbock.

109.    The expenses Lubbock is incurring in this lawsuit, including its attorneys' fees, are within the scope of TBM's indemnification obligations under the Trust Agreement and the Plan.

110.    Accordingly, pursuant to the Trust Agreement and/or the Plan, Lubbock is entitled to indemnification from TBM for the expenses Lubbock has incurred and continues to incur in connection with this lawsuit.

111.    Further, Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint; however, if Lubbock is deemed to be liable for the losses

alleged in the Complaint, then TBM is liable to Lubbock for contractual indemnification for the alleged losses.

## SECOND CAUSE OF ACTION
### (Equitable Indemnity)

112.    Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

113.    Plaintiffs contend that Lubbock is liable for alleged breaches of fiduciary duty to the ESOP Plan, and that such breaches proximately caused a loss to the Plan.

114.    Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint.

115.    If, however, Lubbock is deemed to be liable for the losses alleged in the Complaint, then TBM is liable to Lubbock for equitable indemnity because, unbeknownst to Lubbock, its misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

## THIRD CAUSE OF ACTION
### (Equitable Contribution and Apportionment)

116.    Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

117.    If Lubbock is deemed to be liable for the losses alleged in the Complaint, then TBM is liable to Lubbock for equitable contribution for its proportionate share of the alleged loss because, unbeknownst to Lubbock, its misconduct and fiduciary

breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A.      Enter judgment in favor of Lubbock and against Plaintiffs;

B.      Enter judgment in favor of Lubbock, and against Third-Party Defendant TBM, for contractual indemnification for any sum or sums for which Lubbock may be deemed liable and for its expenses, including reasonable attorneys' fees, incurred in this action;

C.      Alternatively, enter judgment for equitable indemnity in favor of Lubbock, and against Third-Party Defendant TBM, for any sum or sums for which Lubbock may be deemed liable in this action;

D.      Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendant TBM, for contribution for its proportionate share of any loss deemed against Lubbock in this action; and

E.      Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable; and

F.      Enter such other relief as the Court may deem just and proper.

## THIRD-PARTY CLAIMS AGAINST THE TBM BOARD OF DIRECTORS

### FIRST CAUSE OF ACTION
### (Equitable Indemnity)

118.     Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

119. Plaintiffs contend that Lubbock is liable for alleged breaches of fiduciary duty to the ESOP Plan, and that such breaches proximately caused a loss to the Plan.

120. Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint.

121. If, however, Lubbock is deemed to be liable for the losses alleged in the Complaint, then the TBM Board of Directors, including without limitation Dean, Wince, Smith, Schwartz, Gottfredson, Haught, Sharma, Sullivan, and Remy individually, is liable to Lubbock for equitable indemnity because, unbeknownst to Lubbock, its misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

## SECOND CAUSE OF ACTION
### (Equitable Contribution and Apportionment)

122. Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

123. If Lubbock is deemed to be liable for the losses alleged in the Complaint, then the TBM Board of Directors, including without limitation Sharma, Dean, Wince, Smith, Schwartz, Gottfredson, and Haught individually, is liable to Lubbock for equitable contribution for its proportionate share of the alleged loss because, unbeknownst to Lubbock, its misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction

under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A.     Enter judgment in favor of Lubbock and against Plaintiffs;

B.     Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendants Sharma, Dean, Wince, Smith, Schwartz, Gottfredson, and Haught for any sum or sums for which Lubbock may be deemed liable in this action;

C.     Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendants Sharma, Dean, Wince, Smith, Schwartz, Gottfredson, and Haught for contribution for their proportionate share of any loss deemed against Lubbock in this action;

D.     Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable; and

E.     Enter such other relief as the Court may deem just and proper.

### THIRD-PARTY CLAIMS AGAINST
### THE TBM ESOP COMMITTEE

### FIRST CAUSE OF ACTION
### (Equitable Indemnity)

124.     Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

125.     Plaintiffs contend that Lubbock is liable for alleged breaches of fiduciary duty to the ESOP Plan, and that such breaches proximately caused a loss to the Plan.

126.     Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint.

127.     If, however, Lubbock is deemed to be liable for the losses alleged in the Complaint, then the TBM ESOP Committee (including its members Michele Bennett and John Does 1-15 individually) is liable to Lubbock for equitable indemnity because, unbeknownst to Lubbock, its misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

### SECOND CAUSE OF ACTION
### (Equitable Contribution and Apportionment)

128.     Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

129.     If Lubbock is deemed to be liable for the losses alleged in the Complaint, then the TBM ESOP Committee (including its members Michele Bennett and John Does 1-15 individually) is liable to Lubbock for equitable contribution for its proportionate share of the alleged loss because, unbeknownst to Lubbock, its misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and its misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A.     Enter judgment in favor of Lubbock and against Plaintiffs;

B.     Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendant the TBM ESOP Committee and John Does 1-15 individually, for any sum or sums for which Lubbock may be deemed liable in this action;

C.     Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendant the TBM ESOP Committee and John Does 1-15 individually for contribution for their proportionate share of any loss deemed against Lubbock in this action;

D.     Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable; and

E.     Enter such other relief as the Court may deem just and proper.

## THIRD-PARTY CLAIMS AGAINST
## SHARMA, ANAND SHARMA 2009 GRAT TRUST, AND LOTUS ONE, LLC

### FIRST CAUSE OF ACTION
### (Equitable Indemnity)

130.    Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

131.    Plaintiffs contend that Lubbock is liable for alleged breaches of fiduciary duty to the ESOP Plan, and that such breaches proximately caused a loss to the Plan.

132.    Lubbock denies any liability for the remedies requested by Plaintiffs in the Complaint.

133.    If, however, Lubbock is deemed to be liable for the losses alleged in the Complaint, then Sharma, Anand Sharma 2009 GRAT Trust, and Lotus One, LLC, are liable to Lubbock for equitable indemnity, because unbeknownst to Lubbock, their

misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and their misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

**SECOND CAUSE OF ACTION**
**(Equitable Contribution and Apportionment)**

134.    Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

135.    If Lubbock is deemed to be liable for the losses alleged in the Complaint, then Sharma, Anand Sharma 2009 GRAT Trust, and Lotus One, LLC, are liable to Lubbock for equitable contribution for their proportionate share of the alleged loss, because their misconduct and fiduciary breaches proximately caused the ESOP Transaction to be a violation of law as a nonexempt prohibited transaction under ERISA, and their misconduct fraudulently induced Lubbock as Trustee to give its assent to the ESOP Transaction.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A.    Enter judgment in favor of Lubbock and against Plaintiffs;

B.    Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendants Sharma, Anand Sharma 2009 GRAT Trust, and Lotus One LLC, for any sum or sums for which Lubbock may be deemed liable in this action;

C.    Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendants Sharma, Anand Sharma 2009 GRAT Trust, and Lotus One LLC,

for contribution for their proportionate share of any loss deemed against Lubbock in this action; and

D.     Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable; and

E.     Enter such other relief as the Court may deem just and proper.

## THIRD-PARTY CLAIMS AGAINST SRR

### FIRST CAUSE OF ACTION
### (Equitable Contribution and Apportionment)

136.     Lubbock incorporates by reference the preceding paragraphs of its Third-Party Complaint as if fully set forth herein.

137.     If Lubbock is deemed to be liable for the losses alleged in the Complaint, then SRR is liable to Lubbock for equitable contribution for its proportionate share of the alleged loss, because its breach of its professional duty to Lubbock and the ESOP proximately contributed to the alleged losses to the Plan.

WHEREFORE, Lubbock respectfully requests that this Honorable Court:

A.     Enter judgment in favor of Lubbock and against Plaintiffs;

B.     Alternatively, enter judgment in favor of Lubbock, and against Third-Party Defendant Stout Risius Ross, LLC, for contribution for its proportionate share of any loss deemed against Lubbock in this action;

C.     Enter judgment that Lubbock have and recover cost and attorneys' fees, and post-judgment interest at the legal rate, if applicable; and

D.     Enter such other relief as the Court may deem just and proper.

This the 5th day of July, 2018.

                    SMITH, ANDERSON, BLOUNT, DORSETT,
                       MITCHELL & JERNIGAN, L.L.P.

              By:    /s/ Michael W. Mitchell
                     Michael W. Mitchell
                     N.C. State Bar No. 16750
                     Craig B. Wheaton
                     N.C. State Bar No. 10103
                     J. Gray Wilson
                     N.C. State Bar No. 46509
                     P.O. Box 2611
                     Raleigh, North Carolina 27602
                     Telephone:  (919) 821-1220
                     Facsimile:   (919) 821-6800
                     Emails:  mmitchell@smithlaw.com
                              cwheaton@smithlaw.com
                              gwilson@smithlaw.com

                     *Attorneys for Defendant Lubbock*
                     *National Bank*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day, I electronically filed the foregoing document with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to the CM/ECF participants as addressed below:

| | |
|---|---|
| John B. Harris, Esq. | Matthew H. Mall, Esq. |
| Amelia K. Brankov, Esq. | Catherine R. L. Lawson, Esq. |
| FRANKFURT KURNIT KLEIN & SELZ, P.C. | PARKER POE ADAMS & BERNSTEIN LLP |
| 488 Madison Avenue | PNC Plaza |
| New York, New York 10022 | 301 Fayetteville Street, Suite 1400 |
| | Raleigh, North Carolina 27601 |

This the 5th day of July, 2018.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By:    /s/ Michael W. Mitchell
       Michael W. Mitchell
       N.C. State Bar No. 16750
       Craig B. Wheaton
       N.C. State Bar No. 10103
       J. Gray Wilson
       N.C. State Bar No. 46509
       P.O. Box 2611
       Raleigh, North Carolina 27602
       Telephone:  (919) 821-1220
       Facsimile:   (919) 821-6800
       Emails:  mmitchell@smithlaw.com
                cwheaton@smithlaw.com
                gwilson@smithlaw.com

*Attorneys for Defendant Lubbock National Bank*