| | |
|---|---|
| BILL REMY, MICHELE BENNETT, DAN SULLIVAN, and KEN KOENEMANN, <br><br> Plaintiffs, <br><br> v. <br><br> LUBBOCK NATIONAL BANK, <br><br>   Defendant / Counterclaim and Third-Party Plaintiff <br><br> v. <br><br> BILL REMY, MICHELE BENNETT, and DAN SULLIVAN, <br><br>   Counterclaim Defendants, and <br><br> TBM CONSULTING GROUP, INC., TBM CONSULTING GROUP, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ROBERT DEAN, RON WINCE, STEPHEN SMITH, WILLIAM E. SCHWARTZ, MARK GOTTGREDSON, MELVIN R. HAUGHT, ANAND SHARMA, ANAND SHARMA 2009 GRAT TRUST, LOTUS ONE LLC, STOUT RISIUS ROSS, LLC f/k/a STOUT RISIUS ROSS, INC., and JOHN DOES 1-15 <br><br>   Third Party Defendants. | **MEMORANDUM IN SUPPORT OF THIRD PARTY DEFENDANT STOUT RISIUS ROSS, LLC'S MOTION TO DISMISS LUBBOCK NATIONAL BANK'S FIRST AMENDED THIRD-PARTY COMPLAINT** <br><br> **Fed. R. Civ. P. 12(b)(6)** |

# I. STATEMENT OF FACTS

TBM Consulting Group, Inc. ("TBM") engaged Lubbock National Bank ("Lubbock") in July 2011 to represent the TBM Employee Stock Ownership Plan ("TBM ESOP") in its contemplated purchase of approximately 25% of TBM's outstanding common stock from TBM's former president and Chief Executive Officer ("Transaction"). Plaintiffs' Complaint ("Pls.' Compl."), Dkt. 1, ¶¶ 15-16. As trustee and fiduciary to the TBM ESOP under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Lubbock had "the highest duty known to the law," *LaScala v. Scrufari*, 479 F.3d 213, 220 (2d Cir. 2007), which required Lubbock to act "solely in the interest of [these] participants and their beneficiaries." August 24, 2011 Trust Agreement, Lubbock's First Amended Third Party Complaint, Dkt. 50 ("Am. Third Party Compl."), Ex. 1 ("Trust Agreement"), §§ 2-8, ¶¶ 29-31.

The Trust Agreement executed between TBM and Lubbock granted Lubbock "full discretionary authority" and a broad array of "powers, rights, and duties" to "perform any and all . . . acts in its judgment necessary or appropriate for the proper and advantageous management, investment, and distribution of the Trust." Trust Agreement at §§ 2-6. These powers included the ability to employ "independent financial advisors for any purpose [Lubbock] consider[ed] desirable." *Id*.

Acting under this authority, Lubbock engaged Stout Risius Ross, Inc. ("Stout") – which "enjoyed and continues to enjoy an excellent reputation as an independent professional valuation firm," Am. Third Party Compl. ¶ 38 – to estimate the range of fair market value of TBM and prepare a fairness opinion addressing whether the terms of the Transaction were fair to the ESOP from a financial point of view. Pls.' Compl. ¶¶ 31-33. As the engaging ERISA fiduciary, Lubbock had a duty to "investigate [Stout's] qualifications," "provide [Stout] with complete and

1

accurate information" and "make certain that reliance on [Stout]'s advice [wa]s reasonably justified under the circumstances." *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996), *cert. denied, Shay v. Howard*, 520 U.S. 1237 (1997); *accord Acosta v. Vinoskey*, 310 F. Supp. 3d 662, 682 (W.D. Va. 2018). This oversight also required Lubbock to "probe[]"and "question [Stout's] methods and assumptions" to ensure its understanding of the Transaction was both accurate and comprehensive. *Howard*, at 1489-90; *Vinoskey*, 310 F. Supp. 3d at 683.

The agreement between Lubbock and Stout clearly defined the contours of Stout's limited role: Stout would "report solely to the Trustee," its analysis would "not cover the procedural fairness or prudence of the Transaction," and its work product was "only to be used by the Trustee as one factor to consider in the process of analyzing the contemplated Transaction," August 19, 2011 Stout Engagement Agreement, Am. Third Party Compl. Ex. 4 ("Stout Engagement Agreement"), at 1-3. Lubbock "provided to [Stout] financial information Lubbock received from [TBM]," Am. Third Party Compl. ¶ 46, and acknowledged that Stout could not successfully perform its services if Stout did not receive accurate information on which to base its conclusions. Stout Engagement Agreement at 2. Stout was not an ERISA fiduciary to the TBM ESOP for the purposes of the Transaction (and Lubbock does not so allege). *See generally* Am. Third Party Compl. The Transaction closed on September 12, 2011. Pls.' Compl. ¶ 40.

## II.  STATEMENT OF THE CASE

Plaintiffs filed their complaint on September 11, 2017, claiming that Lubbock breached its fiduciary duties and violated ERISA's prohibited transaction provisions by causing the ESOP to purchase TBM stock for allegedly more than fair market value. *Id*. ¶¶ 53, 61. Lubbock filed a motion to dismiss the Complaint on November 17, 2017, Dkt. 17, which the Court granted in

2
GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 3 of 18

part on May 31, 2018, Dkt. 28. On July 5, 2018, Lubbock answered the Complaint's remaining claims and brought counterclaims and third-party claims, including a claim against Stout for contribution. Lubbock's Answer, Counterclaim, and Third-Party Complaint, Dkt. 31, ¶¶ 136-37. Stout requested, and the Court granted, an extension of time until September 14, 2018 to respond to Lubbock's third party claim. Dkt. 43. Lubbock amended its answer, counterclaims, and third-party claims on September 13, 2018. *See generally* Am. Third Party Compl. This amended pleading included the same third-party claims against Stout for contribution as Lubbock's original third party complaint. *Id.* ¶¶ 151-52.

### III. SUMMARY OF ARGUMENT

TBM engaged Lubbock to serve as trustee for the TBM ESOP in connection with its September 12, 2011 acquisition of approximately 25% of TBM's outstanding common stock. As trustee, Lubbock was to evaluate the terms of the proposed Transaction, negotiate on behalf of the TBM ESOP, and cause the TBM ESOP to purchase the offered shares of TBM if Lubbock, in its sole discretion, determined doing so would be in the ESOP's best interest. In this role, Lubbock was acting as an ERISA fiduciary and, as such, was required to adhere to fiduciary standards of conduct in carrying out its duties.

Lubbock engaged Stout to serve as its financial advisor in evaluating the financial terms of the proposed Transaction. Unlike Lubbock, Stout did not have the fiduciary authority to cause the TBM ESOP to enter into the Transaction.

Now faced with a lawsuit brought by participants in the TBM ESOP over its decision to cause the plan to enter into the Transaction, Lubbock seeks to avoid its potential liability and place blame on Stout, its non-fiduciary service provider. Am. Third Party Compl. ¶ 152. Yet

3

GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 4 of 18

Lubbock provides absolutely no basis for a contribution claim: it fails even to specify whether the claim is brought under ERISA or state law.

The claim fails no matter its source. There is no right to contribution under ERISA – certainly not between fiduciaries and non-fiduciaries – and there is no basis for the Court to create a brand new federal common law cause of action now. There likewise is no state law claim for contribution available to Lubbock, and even if there were, it would be preempted by ERISA. As explained more fully below, Lubbock's claim against Stout therefore fails under Rule 12(b)(6) of the Federal Rules of Civil Procedure and must be dismissed with prejudice.

## IV. <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). A plaintiff "may proceed into the litigation process only when [its] complaint[] [is] justified by both law and fact," *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009), and when the facts alleged "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (requiring a "plausible claim for relief"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Claims that "lack[] even an arguable basis in law . . . counsel dismissal." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

## V. <u>ARGUMENT</u>

Regardless of whether Lubbock purports to bring its claim for contribution against Stout under ERISA or North Carolina state law, Lubbock fails to state a claim under Rule 12(b)(6). It follows that Count I of the Amended Third Party Complaint against Stout must be dismissed with prejudice.

4

GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 5 of 18

**A.      Lubbock Fails To State A Claim For Contribution Under ERISA.**

**1.      There is no right to contribution against a non-fiduciary under ERISA, and courts – including Fourth Circuit courts – have declined to create one.**

In crafting ERISA, Congress expressly established various causes of action that could be brought to enforce its provisions and specifically defined parties empowered to bring them. For example, Congress created two mechanisms for holding fiduciaries responsible under ERISA: section 409 for a fiduciary's own breaches, 29 U.S.C. § 1109, and section 405 for enabling or participating in another fiduciary's breaches, 29 U.S.C. § 1105. Likewise, Congress created one mechanism for holding non-fiduciaries liable: section 502(a)(3)'s "equitable relief" provision, 29 U.S.C. 1132(a)(3), for a non-fiduciary's participation in a prohibited transaction under section 406, 29 U.S.C. § 1106. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 249-51 (2000). ERISA's enforcement framework contains no express right to contribution among defendants sued under ERISA. *See Brock v. Gillikin*, 677 F.Supp. 398, 402-03 (E.D.N.C. 1987) (acknowledging that there are "no specific provisions within ERISA providing a right of indemnification or contribution").

To the extent Lubbock seeks contribution under ERISA, then, it would be as a new cause of action under federal common law. But the majority of courts considering the issue – including this Court in a decision upheld by the Fourth Circuit – have ***already declined*** to create a federal common law right to contribution in favor of a fiduciary against a non-fiduciary. *See N. Carolina Life & Accident & Health Ins. Guar. Ass'n v. Alcatel*, 876 F.Supp. 748, 756 (E.D.N.C.), *aff'd* 72 F.3d 127 (4th Cir. 1995) ("[T]his court interprets ERISA as creating neither an express nor an implied right to indemnification between a plan fiduciary and a non-fiduciary and . . . 'doubts that any claim for indemnification or contribution should be read into ERISA.'") (quoting *Brock*, 677 F. Supp. at 403).

Courts outside the Fourth Circuit have likewise held that no right to contribution exists between a fiduciary and a non-fiduciary. *E.g.*, *Spear v. Fenkell*, No. 13-cv-02391, 2015 WL 518235, at *3 (E.D. Pa. Feb. 6, 2015); *Fedex Corp. v. N. Tr. Co.*, No. 08-cv-2827, 2010 WL 2836345, at *4 (W.D. Tenn. July 16, 2010); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 195 (D. Mass. 2008); *Petrilli v. Gow*, 957 F. Supp. 366, 375 (D. Conn. 1997); *Daniels v. Nat'l Emp. Benefit Services, Inc.*, 877 F. Supp. 1067, 1074 (N.D. Ohio 1995); *Nat'l Elec. Benefit Fund v. Heary Bros.*, 931 F. Supp. 169, 191-93 (W.D.N.Y. 1995); *Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.*, 823 F. Supp. 1191, 1196 (E.D. Pa. 1993); *McLaughlin v. Biasucci*, 688 F. Supp. 965, 967 (S.D.N.Y. 1988); *Mass. Laborers' Health & Welfare Fund v. Varrasso*, 111 F.R.D. 62, 64 (D. Mass. 1986); *McLendon v. Cont'l Grp., Inc.*, No. 83-cv-1340, 1986 WL 11789, at *2 (D.N.J. Oct. 21, 1986).

### 2. Creating a new right to contribution under ERISA would frustrate Congress's intentions in crafting ERISA's remedial scheme.

The Court should not break new ground and create a federal common law right to contribution now. "Federal common law . . . does not grant federal courts '*carte blanche* authority to use state common law to re-write a federal statute.'" *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir. 1992), as amended (July 17, 1992) (quoting *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 992 (4th Cir. 1990) (internal quotations omitted)). Under a "comprehensive legislative scheme" like ERISA, any "omissions regarding remedies" – such as Congress's omission of a right to contribution against a non-fiduciary – "should be presumed deliberate." *Brock*, 677 F.Supp. at 402-03 (citing *Mass. Mutual Life. Ins. Co. v. Russell*, 473 U.S. 134 (1985)). Indeed, Fourth Circuit courts have already declined to create a federal common law right to contribution under ERISA for just this reason. *See NARDA, Inc. v. Rhode Island Hosp. Tr. Nat. Bank*, 744 F. Supp. 685, 697 (D. Md. 1990) ("It thus appears that

6

the failure to include the rights of contribution and indemnity in ERISA was intended by Congress and the omission of those rights is not an unaddressed detail or gap to be filled by a federal common law."); *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 363 (D. Md. 2004) ("[T]here is no indication that Congress intended th[e] portion of trust law [allowing a cause of action for contribution] to be incorporated into ERISA."); *Colleton Reg'l Hosp. v. MRS Med. Review Sys., Inc.*, 866 F. Supp. 896, 902 (D.S.C. 1994) ("[J]udicial remedies for non-fiduciary participation in a fiduciary breach fall within the line of cases where Congress deliberately omitted a potential cause of action rather than . . . invited the courts to engage in interstitial lawmaking.") (quoting *Reich v. Rowe*, 20 F.3d 25, 31 (1st Cir. 1994)).

Creating a right to contribution against a non-fiduciary would fly in the face of the presumption that Congress intentionally omitted the cause of action when it carefully crafted ERISA's remedial scheme. *See NARDA*, 744 F. Supp. at 698 ("The Court concludes that the directive to develop a federal common law under ERISA does not include the right to infer common law rights of contribution and indemnity when the language and structure of the statute leads to a contrary intent."). As noted above, Congress designed rules for holding non-fiduciaries liable – contained in section 502(a)(3)'s "equitable relief" provision – which are narrow. The Supreme Court in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 252-53 (2000), explained that non-fiduciary liability under section 502(a)(3) is limited to those circumstances where a non-fiduciary "had actual or constructive knowledge of the circumstances that rendered [a fiduciary's] transaction unlawful," and then only for relief that is "'equitable' in nature," meaning "restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of)" and the "profits derived therefrom," *id.* at 250-51, that can be traced to a non-fiduciary's possession. Importantly, relief against non-

fiduciaries is equitable only – they cannot be liable for legal damages. *Id*. (holding that the suggestion that a non-fiduciary might face civil liability "ignores the limiting principle . . . that the retrospective relief sought [must] be appropriate equitable relief.") (internal quotations omitted). Permitting Lubbock to seek contribution from Stout for the amount the TBM ESOP (allegedly) overpaid – ***legal damages, not equitable relief*** – would thus drastically expand, and thereby undermine, the Congressionally-crafted framework for non-fiduciary liability under ERISA.

Finally, under Fourth Circuit precedent, "[c]ourts should only fashion federal common law when 'necessary to effectuate the purposes of ERISA,'" *United McGill Corp. v. Stinnett*, 154 F.3d 168, 171 (4th Cir. 1998) (quoting *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992)), which include "enforc[ing] . . . strict fiduciary standards of care," *Vogel v. Indep. Fed. Sav. Bank*, 692 F. Supp. 587, 595 (D. Md. 1988) (quoting *Mass. Mutual Life Ins. Co.,* 473 U.S. at 157-58), deterring fiduciary misconduct, and holding fiduciaries liable for their misdeeds. *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 370 (4th Cir. 2014) (rejecting standard that would not deter a fiduciary's imprudent decision-making); *Chao v. Malkani*, 452 F.3d 290, 291, 293 (4th Cir. 2006) (justifying remedies for fiduciary's misconduct on grounds that "ERISA was . . . designed to deter 'the mismanagement of funds accumulated to finance employee benefits'") (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.,* 519 U.S. 316, 326-27 (1997)).

Far from deterring fiduciary misconduct, a right to contribution against non-fiduciaries would incentivize it by allowing a "culpable fiduciary to sue [other parties] . . . 'comfortable in the knowledge that they themselves would not be brought to task for their own misconduct.'" *Fedex Corp.*, 2010 WL 2836345, at *5; *see also Colleton Reg'l Hosp. v. MRS Med. Review Sys.,*

8

GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 9 of 18

*Inc.*, 866 F. Supp. 896, 902 (D.S.C. 1994) (holding that the "threat of liability . . . will deter such individuals from helping fiduciaries navigate the intricate financial and legal thicket of ERISA") (quoting *Reich v. Rowe*, 20 F.3d 25, 32 (1st Cir. 1994)). It would also frustrate the purpose of ERISA's provision that expressly prohibits "any provision in an agreement or instrument" from "reliev[ing] a fiduciary from responsibility or liability for any responsibility, obligation, or duty." 29 U.S.C. § 1110; *see also Singer*, 964 F.2d at 1452 ("[R]esort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA[.]"). Accordingly, the best way to effectuate Congressional intent and further ERISA's goal of deterring fiduciary misconduct is to leave its carefully crafted remedial framework intact and decline to create a new federal common law cause of action for contribution against non-fiduciaries.

        **3.     The minority position that a federal common law right to contribution exists among co-fiduciaries does not support the creation of such a right against non-fiduciaries.**

While some courts have created a cause of action for contribution ***among co-fiduciaries***, *see Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 18 (2d Cir. 1991), most – including many Fourth Circuit courts – have declined even to take this step, let alone find such a right against a non-fiduciary, *e.g.*, *Openshaw*, 320 F. Supp. 2d 357; *Brock*, 677 F. Supp. 398; *NARDA*, 744 F. Supp. at 686; *Travelers Cas. And Sur. Co. of Am. v. IADA Services*, 497 F. 3d 862 (8th Cir. 2007) ("[W]hether to provide for a right of contribution is 'a matter of high policy for resolution within the legislative process after the kind of investigation, examination, and study that legislative bodies can provide and courts cannot.' . . . Accordingly, we hold that ERISA does not create a right of contribution."); *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989); *Fedex Corp.*, 2010 WL 2836345, at *3-4; *Williams v. Provident Inv. Counsel, Inc.*, 279 F.

9

Supp. 2d 894, 903 (N.D. Ohio 2003).

And the trend among courts since *Chemung* was decided in 1991 is to decline to create a federal common law right to contribution among co-fiduciaries, given that Supreme Court decisions subsequent to *Chemung* "have emphasized the reluctance with which courts should imply statutory remedies not authorized by the text of ERISA." *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 194 (D. Mass. 2008) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)); *Mertens v. Hewiss Assocs.*, 508 U.S. 248, 251 (1993)); *accord Travelers*, 497 F.3d at 866 ("Since [*Chemung*] . . . the Supreme Court has reiterated more than once its admonition that . . . [ERISA's] 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'"). Courts that have created a right to contribution among co-fiduciaries have done so on the theory that allowing one breaching fiduciary to share liability with another breaching fiduciary advances ERISA's goals of holding fiduciaries accountable for their misdeeds. *See, e.g.*, *Perez v. Silva*, No. 15-cv-3484, 2017 WL 713759, at *3 (D. Md. Feb. 23, 2017) ("[D]isallowance of contribution claims [between co-fiduciaries] would 'frustrate ERISA's purpose of deterring plan abuse by allowing breaching fiduciaries to escape the consequences of their actions.'") (quoting *Cooper v. Kossan*, 993 F.Supp. 375, 377 (E.D. Va. 1998)). As explained above, this rationale does not support the creation of a right to contribution in favor of a fiduciary against a non-fiduciary, but rather counsels against it, since doing so would relieve a breaching fiduciary of responsibility and incentivize rather than deter fiduciary malfeasance. *See supra* Part V.A.2.

**B.      Lubbock Fails To State A Claim For Contribution Under North Carolina Law.**

If Lubbock contends that it is not seeking to create a new right under ERISA federal common law, but instead is seeking contribution under North Carolina law, its claim still must fail. Even if North Carolina law provided a common law or statutory basis for a contribution claim under these circumstances (it does not), that claim would be preempted by ERISA.

    **1.      Lubbock has no state statutory right to contribution.**

Lubbock has no basis for a contribution claim under North Carolina law. Contribution is a statutory right of relief in North Carolina, governed by the Uniform Contribution Among Tort-Feasors Act (the "Act"), N.C. Gen. Stat. § 1B–1 (2001). *See Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 45, 587 S.E.2d 470, 477-78 (2003); *accord Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 883, 602 S.E.2d 1, 3 (2004). The Act forecloses any common law right to contribution. *See Holland v. Edgerton*, 85 N.C. App. 567, 571, 355 S.E.2d 514 (1987) ("The right to contribution is statutory; therefore, it must be enforced according to the terms of the statute."). Any state law contribution claim must therefore be brought under the Act, which bars Lubbock's claim on multiple grounds.

First, the Act *expressly prohibits* a party who breached its fiduciary duties from seeking contribution from others: "This Article shall not apply to breaches of trust or of other fiduciary obligation." N.C. Gen. Stat. § 1B-1(g); *see Maxwell v. Phillips*, No. 06-cv-00510, 2007 WL 2156337, at *8 (M.D.N.C. July 25, 2007) (because plaintiffs sought "to hold [defendant] liable for . . . a breach of fiduciary duty, North Carolina['s joint tortfeasor statute] bars [defendant] from pursuing a right of contribution."); *Andrews v. Fitzgerald*, No. 89-cv-649, 1992 WL 159766, at *5 (M.D.N.C. Feb. 7, 1992) ("Where there is a claim of the breach of a fiduciary obligation, the Uniform Contribution Among Tortfeasors Act does not apply. . . . Therefore, there is no right to contribution under the statute."). Because the basis for Lubbock's claim

11

against Stout is its own liability for breaching its fiduciary duties to the TBM ESOP, Pls.' Compl., ¶¶ 53-54, Lubbock's contribution claim fails for this reason alone.

Even if it did not, under the terms of the Act, a party has a right to contribution "where two or more persons become jointly or severally liable *in tort* for the same injury." N.C. Gen. Stat. Ann. § 1B-1(a). This right exists "only in favor of a tort-feasor who has paid more than his pro rata share of the common liability[.]" N.C. Gen. Stat. Ann. § 1B-1(b). North Carolina courts thus dismiss claims for contribution as "inapplicable" where there is no allegation of common tort liability. *See, e.g.*, *BOGNC, LLC v. Cornelius NC Self-Storage LLC*, No. 10-cv-12371, 2013 WL 1867065, at *18 (N.C. Super. May 1, 2013) (dismissing claim for contribution where "[n]one of the parties ha[d] alleged any underlying tort against Plaintiffs and Defendants as joint tort-feasors"). Here, Lubbock makes no such tort allegation against Stout – it is, in fact, unclear precisely how Lubbock believes Stout acted impermissibly – and so it does not have a contribution claim under the Act. Lubbock may not circumvent clear statutory language where state law has codified and eliminated contribution claims for Lubbock's intended purposes.

### 2. A contribution claim brought under North Carolina common law would be preempted by ERISA.

Even if a valid basis existed under the Act in theory, any contribution claim brought under North Carolina state law would be preempted by ERISA, which preempts all state law claims that "relate to any employee benefit plan." ERISA section 514(a), 29 U.S.C. § 1144(a). The Supreme Court has held that "the words 'relate to' should be construed expansively: 'a law "relate[s] to" an employee benefit plan . . . if it has a connection with or reference to such a plan.'" *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129-30, 134 (1992) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97 (1983)). The Fourth Circuit has likewise held that Congress was "deliberately expansive" when it "designed [ERISA] to establish

12

GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 13 of 18

pension plan regulation as exclusively a federal concern." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987)). The preemption standard is therefore "easily met," even where a state law at issue is "not specifically designed to affect ERISA plans or [has] only an indirect effect" on them. *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 657 (E.D. Va. 2006) (citing *District of Columbia*, 506 U.S. at 129-30).

As an initial matter, the Fourth Circuit has held that state law claims that were "specifically pled . . . in the alternative to ERISA claims," *Greenbriar Hotel Corp. v. Unite Here Health*, No. 5:13-cv-11644, 2013 WL 12250281, at *8 (S.D.W. Va. Dec. 19, 2013), are presumed preempted, since such pleading is "a good tip off that [parties] seek the kind of alternative enforcement mechanism that ERISA preempts." *Wilmington Shipping*, 496 F.3d at 343 (internal quotations omitted). Lubbock is decidedly vague with regard to how it is bringing its contribution claim, but to the extent it argues both ERISA and state law contribution, the Court should find the state law claim preempted.

Beyond that, the Fourth Circuit has identified a nonexclusive list of categories of state law claims that ERISA preempts, including "laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 190 (4th Cir. 2002). The "key feature of these categories . . . is that they 'implicate the relations among the traditional ERISA plan entities.'" *Wilmington Shipping*, 496 F.3d at 342.

Fourth Circuit courts have applied these preemption principles broadly when given the opportunity, holding that ERISA preempts a wide array of state law claims. *See Elmore v. Cone Mills Corp.*, 23 F.3d 855, 863 (4th Cir. 1994) (breach of contract, tort); *Guiragoss*, 444
13

GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 14 of 18

F.Supp.2d at 657–58 (fraud); *Searls v. Sandia Corp.*, 50 F.Supp.3d 737, 742-46 (E.D. Va 2014) (fraudulent inducement); *Aliff v. BP Am., Inc.*, 26 F.3d 486, 488-89 (4th Cir. 1994) (per curiam) (misrepresentation); *Greenbriar Hotel Corp.*, 2013 WL 12250281, at *8 (unjust enrichment, money had and received); *Van Lier v. Unisys Corp.*, 142 F. Supp. 3d 477, 486 (E.D. Va. 2015) (negligence).

As to contribution specifically, at least one Fourth Circuit court has addressed the issue in the ERISA context and held that claims for contribution are preempted. *See Trustees of Int'l Union of Operating Engineers Local 132 Health and Welfare Fund v. Brown's Excavating, Inc.*, No. 5:14CV118, 2015 WL 2354624, at *9-10 (N.D.W. Va. May 15, 2015) (noting that the court was "not alone in finding claims for indemnification and contribution by a non-fiduciary against a fiduciary preempted"). While the Fourth Circuit itself has not yet weighed in, the other circuit court to consider the issue, the Eighth Circuit, likewise held that ERISA preempts claims for contribution. *See Travelers*, 497 F.3d at 864-68 ("We also agree with the district court that the state common-law claims brought by Travelers are preempted by ERISA. ERISA's comprehensive legislative scheme not only generates a strong presumption against creating additional federal remedies, it also has a strong preemptive effect on state-law causes of action."); *see also, e.g.*, *Guididas v. Cmty. Nat. Bank Corp.*, No. 11-cv-2545, 2012 WL 5974984, at *7 (M.D. Fla. Nov. 5, 2012) ("Because Defendants do not articulate the legal basis for contribution and indemnity in their counterclaim, Counter–Defendants argue that any such attempt to establish that claim on Florida law would be superseded by ERISA. The Court agrees."); *Atrix Int'l v. Hartford Life Group Ins. Co.*, No. 06-cv-4140, 2008 WL 151614, at *6 (D. Minn. Jan. 15, 2008) (recognizing that ERISA contains no right to contribution and dismissing state law contribution claim as preempted).

Prohibiting state law contribution claims would be consistent with the preemption principles established by the Fourth Circuit. As explained above in Part V.A, Congress carefully designed ERISA's enforcement scheme to omit claims for contribution to ensure that fiduciaries would be held liable for their misconduct. In the same way that creating a federal common law cause of action for contribution under ERISA would undermine Congress's policy objectives by giving fiduciaries an escape route, so too would holding that ERISA does not preempt state law contribution claims by fiduciaries against non-fiduciaries. State law contribution claims are preempted, then, because they "implicate the relations among the traditional ERISA plan entities," *Wilmington Shipping*, 496 F.3d at 342 – *i.e.*, trustees with fiduciary obligations – by "provid[ing] alternative enforcement mechanisms to ERISA's civil enforcement provisions," *Darcangelo*, 292 F.3d at 190 – *i.e.*, letting fiduciaries off the hook contrary to Congressional intent. *See Travelers*, 497 F.3d at 867 ("Given that Congress made a policy choice to exclude a remedy of contribution for breaching fiduciaries, it would undermine the comprehensive federal scheme to permit an action under state law for that same remedy.") (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.")).

Lubbock's contribution claim, to the extent it is brought under state law, therefore "relates to" TBM's ERISA-covered Plan and is preempted. *See Atrix Int'l*, 2008 WL 151614, at *5-6 (holding that, even though the "state law claim for contribution does not reference the plan, it bears an indisputable connection to it requiring preemption" because deciding it would require the court to evaluate whether the defendant seeking contribution breached its ERISA fiduciary

15
GLG-357442.1
Case 5:17-cv-00460-FL   Document 58   Filed 09/18/18   Page 16 of 18

duties). As a result, Lubbock has neither a state law nor ERISA basis for his claim, so it must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Count I of Lubbock's Amended Third Party Complaint against Stout.

Respectfully submitted this 18th day of September, 2018,

By: */s/ Lars C. Golumbic*
Lars C. Golumbic
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW, Suite 1200
Washington, D.C. 20006
Telephone: (202) 857-0620
Fax: (202) 452-7844
Email: lgolumbic@groom.com

Sumrell, Sugg, Carmichael, Hicks & Hart, P.A.
Scott C. Hart
Post Office Drawer 889
State Bar No. 19060
New Bern, North Carolina 28563
Telephone: (252) 633-3131
Fax: (252) 633-3507
E-mail: shart@nclawyers.com
*Local Civil Rule 83.1(d) Counsel*

*Counsel for Third Party Defendant Stout Risius Ross, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the **MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS LUBBOCK NATIONAL BANK'S FIRST AMENDED THIRD-PARTY COMPLAINT** was served upon all counsel of record via CM/ECF.

| | |
|---|---|
| This the 18th day of September, 2018 | By: */s/ Lars C. Golumbic* <br> Lars C. Golumbic <br> Groom Law Group, Chartered <br> 1701 Pennsylvania Ave., NW, Suite 1200 <br> Washington, D.C. 20006 <br> Telephone: (202) 857-0620 <br> Fax: (202) 452-7844 <br> Email: lgolumbic@groom.com <br><br> *Counsel for Third Party Defendant Stout Risius Ross, LLC* |