| | | |
|---|---|---|
| BILL REMY, MICHELE BENNETT, DAN SULLIVAN, and KEN KOENEMANN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LUBBOCK NATIONAL BANK, | ) ) | |
| Defendant. | ) ) | |
| LUBBOCK NATIONAL BANK, | ) ) | |
| Counter Claimant, | ) ) | |
| v. | ) ) | ORDER |
| BILL REMY, MICHELE BENNETT, and DAN SULLIVAN, | ) ) ) | |
| Counter Defendants. | ) ) | |
| LUBBOCK NATIONAL BANK, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| TBM CONSULTING GROUP, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE; ANAND SHARMA 2009 GRAT TRUST; ANAND SHARMA; ROBERT DEAN; STEPHEN SMITH; RON WINCE; MELVIN R. HAUGHT; JOHN DOES 1-15; WILLIAM SCHWARTZ; TBM CONSULTING GROUP, INC.; LOTUS ONE LLC; MARK GOTTFREDSON; and STOUT RISIUS ROSS, LLC f/k/a/ Stout Risius Ross, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court on motions to dismiss filed by third-party defendants Stout Risius Ross, LLC f/k/a Stout Risius Ross, Inc. ("Stout") (DE 57), and Anand Sharma ("Sharma"), Anand Sharma 2009 GRAT Trust, and Lotus One LLC (collectively, "Sharma parties") (DE 61). The issues raised have been fully briefed and in this posture are ripe for ruling. For the reasons that follow, the court grants both motions.

## STATEMENT OF THE CASE

TBM Consulting Group, Inc. ("TBM") and four of its officers filed this action against Lubbock National Bank ("Lubbock"), a former trustee of the TBM Consulting Group, Inc. Employee Stock Ownership Plan (the "ESOP"), on September 11, 2017, seeking relief for Lubbock's alleged breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., arising out of a 2011 transaction (the "2011 transaction") in which, among other things, the ESOP purchased stock from the Sharma parties. In connection with the 2011 transaction, Lubbock engaged Stout, an independent advisory firm, to perform a valuation of TBM and provide a fairness opinion concerning the consideration to be paid by the ESOP for the Sharma parties' shares.

On November 17, 2017, Lubbock filed a motion to dismiss, and on May 31, 2018, the court granted in part and denied in part Lubbock's motion, in part dismissing TBM as a plaintiff. On July 5, 2018, Lubbock filed answer, affirmative defenses, counterclaim, and third-party complaint. Lubbock subsequently amended its answer and third-party complaint on September 13, 2018, and in its first amended third-party complaint seeks indemnity, contribution and/or apportionment from counterclaim defendants and third-party defendants, including Stout and the Sharma parties, should Lubbock be deemed liable to the ESOP for the losses alleged in the complaint.

Stout and the Sharma parties filed the instant motions to dismiss Lubbock's claims on September 18 and 27, 2018, respectively. Stout argues that ERISA does not provide fiduciary Lubbock a right to contribution against non-fiduciary Stout. The Sharma parties argue that 1) ERISA does not provide fiduciary Lubbock a right to contribution or indemnity against co-fiduciaries, the Sharma parties, 2) even if ERISA did provide such a cause of action, the Sharma parties were not ERISA fiduciaries, and 3) Lubbock's claims are barred by the statute of limitations. Lubbock opposes, arguing that ERISA provides for a right of indemnity and contribution against fiduciaries and non-fiduciaries, Lubbock sufficiently has alleged that the Sharma parties were fiduciaries, and its claims are not barred by the statute of limitations.

On February 8, 2019, Stout and Sharma parties filed motion to stay all discovery pending resolution of the instant motions to dismiss, which the court granted on March 20, 2019, holding in part that the motions to dismiss raise "significant issues for the court's consideration," including whether ERISA provides for a right of contribution or indemnity by a fiduciary against a co-fiduciary or non-fiduciary, an issue of law not yet decided by the United States Court of Appeals for the Fourth Circuit. (DE 88 at 5).

## STATEMENT OF THE FACTS

The facts alleged in Lubbock's third-party complaint as relevant to the resolution of the instant motions are summarized as follows.[1]

TBM established the ESOP in or around 2003. (TP Compl. (DE 50) ¶ 3). TBM is a named fiduciary of the ESOP. (Id. ¶ 60). The board of directors of TBM ("TBM board of directors") exercised authority and control over the ESOP, including without limitation with respect to its

---

[1]     As necessary, the court incorporates facts alleged in complaint. The complaint (DE 1) will be referenced as "Compl." and Lubbock's third-party complaint (DE 50) will be referenced as "TP Compl."

authority to amend the ESOP, to appoint, monitor and remove ESOP fiduciaries, and to monitor fiduciary performance compliance with ERISA and other applicable laws, including by monitoring transactions involving TBM stock and the valuation of TBM stock and avoiding nonexempt prohibited transactions under ERISA. (Id. ¶ 4). Lubbock alleges, therefore, the TBM board of directors owed fiduciary duties to the ESOP. (Id. ¶¶ 4 and 73-77).

The TBM board of directors formed the TBM Consulting Group, Inc. Employee Stock Ownership Plan Committee (the "TBM ESOP committee") to oversee the management of the ESOP, including the valuation of TBM stock, the avoidance of nonexempt prohibited transactions under ERISA, and compliance with reporting and disclosure requirements related to the ESOP. (Id. ¶ 5). The TBM ESOP committee is a named fiduciary of the ESOP and also acted as a fiduciary in the performance of its duties, including when it exercised discretionary authority as to the disposition of ESOP assets. (Id. ¶ 5).

In 2011, Sharma was TBM's president and chief executive officer, the chair of the TBM board of directors, and a member of the TBM ESOP committee. (Id. ¶ 12). Lubbock alleges Sharma individually exercised discretion over the disposition of ESOP plan assets and thus acted as a fiduciary of the ESOP, individually and/or as an agent of other fiduciaries such as TBM, the TBM board of directors, and the TBM ESOP committee. (Id. ¶ 12). Lubbock alleges as an ERISA fiduciary during the relevant time period, Sharma owed the ESOP and its participants duties of care, prudence, and loyalty, including a fiduciary duty to ensure that TBM shares were valued consistent with the requirements of ERISA and the ESOP on at least an annual basis. (Id. ¶ 84).

In August 2011, TBM retained Lubbock to serve as the trustee of the ESOP. (Id. ¶ 23). Around that time, Sharma offered to sell to the ESOP most of the 77,799.07 shares of TBM Series

B common stock that he owned personally and through two entities he managed and/or controlled, third-party defendants Anand Sharma 2009 GRAT Trust and Lotus One, LLC. (Id. ¶ 25). On September 12, 2011, the Sharma parties, TBM, and Lubbock, as trustee, entered into a Stock Purchase Agreement (the "SPA") pursuant to which the Sharma parties sold 62,239.26 of their shares in TBM to the ESOP for $10,500,000.00. (Id. ¶ 27; see also SPA (DE 50-2)).[2]

As a condition precedent to the SPA, TBM and the ESOP entered into an ESOP credit agreement on September 12, 2011, pursuant to which TBM loaned $10,500,000.00 to the ESOP to finance the purchase of the Sharma parties' shares. (TP Compl. (DE 5) ¶ 30; see also ESOP credit agreement (DE 50-3)). Sharma, as TBM's president and CEO, signed the ESOP credit agreement on behalf of TBM. (Id. at 16).

Lubbock alleges that Sharma was acting as the agent of Anand Sharma 2009 GRAT Trust and Lotus One, LLC for purposes of the 2011 transaction. (TP Compl. (DE 50) ¶¶ 13-14). Lubbock further alleges Sharma and TBM were each a party-in-interest under 29 U.S.C. § 1002(14), and therefore the 2011 transaction (including both the purchase of the Sharma parties' shares and the loan from TBM), was a "prohibited transaction" under 29 U.S.C. § 1106(a) that would require a statutory exemption to comply with ERISA. (Id. ¶ 34). One of the exemptions requires that the price paid for the Sharma parties' shares not exceed adequate consideration. (Id. ¶ 35).

---

[2]     A court may not consider matters outside the pleadings without converting a Rule 12(b)(6) motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). However, documents attached to the complaint and those incorporated in it by reference are deemed part of the pleadings and therefore may be considered without converting a Rule 12(b)(6) motion. See Pueschel v. United States, 369 F.3d 345, 353 n. 3 (4th Cir.2004); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir.2004); see also Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009). Here, as relevant to the resolution of the instant motions, Lubbock attaches to third-party complaint the SPA and ESOP credit agreement ("ESOP credit agreement"), both of which are clearly referenced in Lubbock's third-party complaint, and the authenticity of which is not disputed. Thus the court will consider these documents.

In connection with the 2011 transaction, Lubbock, in its capacity as trustee of the ESOP, retained Stout to prepare an independent valuation of TBM and a fairness opinion concerning the proper consideration to be paid by the ESOP for the Sharma parties' shares. (Id. ¶¶ 36, 39). Stout holds itself out to the public and its clients as a professional and experienced financial advisor, including as an expert in valuation advisory services. (Id. ¶ 37). Stout was knowledgeable about TBM, as it had previously provided professional valuation services to the ESOP. (Id. ¶ 38).

In the SPA, the Sharma parties made certain representations as to the accuracy and validity of TBM financial information that had been delivered to Lubbock and used by its financial advisor Stout for purpose of its independent valuation of the TBM shares purchased in the 2011 transaction. (Id. ¶ 28). Lubbock alleges that, among other things, the Sharma parties represented that no document or information provided to Lubbock "contain[s] any untrue statement of material fact or omits or shall omit a material fact necessary to make the statements contained therein not misleading." (Id. ¶ 29; see also SPA (DE 50-2)§ 6.28). Lubbock alleges the SPA also confirmed TBM's fiduciary responsibility for the ESOP and its obligation to "administer the Plan in compliance with … the Code and ERISA, as applicable to the Plan and this Agreement." (TP Compl. (DE 50) ¶ 70-71; see also SPA (DE 50-2) § 17). Additionally, in the ESOP credit agreement by which TBM loaned funds to the ESOP to purchase the Sharma parties' shares, TBM also represented, warranted, and covenanted to the ESOP that the "ESOP Loan satisfies the Exempt Loan Rules and qualifies as an Exempt Loan and the transactions contemplated by the ESOP Loan Documents are not 'prohibited transactions' within the meaning of Section 4975 of the Code or Section 406(a) of ERISA." (TP Compl. (DE 50) ¶¶ 30-31).

Lubbock alleges that the financial information that Lubbock and Stout relied on to evaluate

the fair market value of the shares to be sold by the Sharma parties was provided by TBM, its directors and officers, the TBM ESOP committee, and other agents of TBM who may have been fiduciaries to the ESOP. (Id. ¶¶ 43-45). Nonetheless, plaintiffs allege that Stout, in preparing its valuation report, relied on financial projections for TBM for 2011-2015 that were "heavily influenced by Sharma" in order "to maximize the amount paid by the ESOP," and that were inconsistent with the trajectory of TBM's actual performance and with TBM's internally prepared financial statements for the first seven months of 2011. (Compl. (DE 1) ¶¶ 34-35, 38). Plaintiffs allege Lubbock knew or should have known that the financial projections used by Stout were unreliable as a means to calculate the reasonable value of the Sharma parties' shares and that the $10,500,000.00 price for those shares was unsupportable given the unreliability of the financial projections influenced by Sharma. (Id. ¶¶ 37, 45). Accordingly, plaintiffs have asserted ERISA claims against Lubbock for its alleged breaches of fiduciary duty, including by allegedly failing to adequately review and verify Stout's valuation and causing the ESOP to enter into a nonexempt prohibited transaction under ERISA by paying more than adequate consideration for the Sharma parties' shares. (Id. ¶¶ 53, 59- 61).

Lubbock has denied all liability to plaintiffs and the ESOP, and has specifically denied it had any reason to believe that Sharma had heavily influenced the financial information it and Stout relied upon to determine the fair market value of the Sharma parties' shares, or that the price paid for the Sharma parties' shares was for more than adequate consideration. (TP Compl. (DE 50) ¶¶ 51, 58). Lubbock alleges that neither the Sharma parties nor the other ESOP fiduciaries disclosed to Lubbock prior to its removal as the ESOP trustee that the financial information provided to Lubbock and Stout for the 2011 transaction was manipulated by Sharma to the ESOP's detriment. (Id. ¶ 53).

Lubbock alleges Stout's independent valuation concluded that the price for the Sharma parties' shares was in fact no more than adequate consideration for those shares, and this conclusion was consistent with the independent valuations that Stout provided to the ESOP each of the six years following the 2011 transaction. (Id. ¶¶ 56-57).

## DISCUSSION

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.    Analysis

    1.    Stout's Motion to Dismiss (DE 57)

        a.    Right to Contribution Among Fiduciaries Under ERISA

Congress created two mechanisms for holding fiduciaries responsible under ERISA: section 409 for a fiduciary's own breaches, 29 U.S.C. § 1109, and section 405 for enabling or participating in another fiduciary's breaches, 29 U.S.C. § 1105. However, there are no specific provisions within ERISA providing a right of indemnification or contribution among fiduciaries.

Neither the United States Supreme Court nor the Fourth Circuit has specifically addressed this issue, and other circuits remain split. Compare Chesemore v. Fenkell, 829 F.3d 803, 811-13 (7th Cir. 2016) ("ERISA's grant of equitable remedial power and its foundation in principles of trust law permit the courts to order contribution or indemnification among cofiduciaries based on degrees of culpability") and Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 15-18 (2d Cir. 1991) ("incorporating traditional trust law's doctrine of contribution and indemnity into the law of ERISA is appropriate"), with Travelers Cas. & Sur. Co. of America v. IADA Services, Inc., 497 F.3d 862, 867 (8th Cir. 2007) ("ERISA does not create a right of contribution for Travelers against IADA Services, another fiduciary"), and Kim v. Fujikawa, 871 F.2d 1427, 1432-33 (9th Cir. 1989) ("we cannot agree with Fujikawa's contention that Congress implicitly intended to allow a cause of action for contribution under ERISA").

Likewise, district courts within the Fourth Circuit have not reached consensus. Compare Cooper v. Kossan, 993 F. Supp. 375, 376-77 (E.D. Va. 1998) (finding right of contribution, noting "the contribution claim does not conflict with ERISA's enforcement scheme, and it promotes both the enforcement of strict fiduciary standards of care as well as the beneficiaries' best interests") and Perez v. Silva, No. CV JKB-15-3484, 2017 WL 713759, at *3 (D. Md. Feb. 23, 2017) ("As did the court in Cooper, this Court finds more persuasive the rationale of courts that allow a claim for contribution . . . . One reason for finding such a right is that, in enacting ERISA, Congress was focused on providing remedies for plan beneficiaries and participants and was content on letting courts applying traditional principles of trust law to fill the gaps.") with Openshaw v. Cohen, Klingenstein & Marks, Inc., 320 F. Supp. 2d 357, 363-64 (D. Md. 2004) ("[T]here is no indication that Congress intended th[e] portion of trust law [allowing a cause of action for contribution] to be

incorporated into ERISA.") and NARDA, Inc. v. Rhode Island Hosp. Tr. Nat. Bank, 744 F. Supp. 685, 697 (D. Md. 1990) ("It thus appears that the failure to include the rights of contribution and indemnity in ERISA was intended by Congress and the omission of those rights is not an unaddressed detail or gap to be filled by a federal common law.").[3]

The court finds the reasoning of the cases holding ERISA provides for the right of indemnification or contribution among fiduciaries more persuasive. First, as repeatedly noted by the Fourth Circuit, "ERISA borrows heavily from the language and the law of trusts." See e.g., Pender v. Bank of Am. Corp., 788 F.3d 354, 367 (4th Cir. 2015) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989) ("ERISA abounds with the language and terminology of trust law.")). As stated by the Seventh Circuit, "the district court's remedial authority under ERISA includes the power of courts under the law of trusts, which vests in them the authority to fashion 'traditional equitable remedies' . . . . Indemnification and contribution are among those remedies." Chesemore, 829 F.3d at 811-12. Additionally, disallowing claims for indemnification and contribution among co-fudiciaries will frustrate ERISA's purpose of deterring plan abuse by allowing breaching fiduciaries to escape the consequences of their actions. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 158 (1985) (Brennan, J., concurring) ("courts must always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would

---

[3]        In this district, whether ERISA provides for a right to contribution among fiduciaries has been addressed briefly, without analysis or resolution. See N. Carolina Life & Acc. & Health Ins. Guar. Ass'n v. Alcatel, 876 F. Supp. 748, 756 (E.D.N.C.), aff'd,72 F.3d 127 (4th Cir. 1995) (citing Brock v. Gillikin, 677 F.Supp. 398, 402–03 (E.D.N.C.1987)) ("[T]his court interprets ERISA as creating neither an express nor an implied right to indemnification between a plan fiduciary and a non-fiduciary and has specifically stated its 'doubts that any claim for indemnification or contribution should be read into ERISA.'"). Alcatel did not involve a contribution claim, but a direct claim by a non-fiduciary against a fiduciary; thus the court held plaintiff, "a potential subrogee and not a plan participant, beneficiary or fiduciary," lacked standing. 876 F. Supp. at 756. In Brock, the court, as stated, expressed doubt that any claim for indemnification or contribution should be read into ERISA but did not analyze or resolve that issue and held, after holding a non-jury trial, "under the facts of this case there is no claim for indemnification." Brock, 667 F. Supp. at 403.

best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries"). Finally, such a result is equitable. See Chemung, 939 F.2d at 16 ("There is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.").[4]

Thus, the court holds that ERISA provides for a right to contribution among co-fiduciaries.

b. Right to Contribution Among Fiduciaries and Non-Fiduciaries Under ERISA

Lubbock also seeks the court to hold ERISA provides for the right of contribution, not only among co-fiduciaries, but also among fiduciaries and non-fiduciaries. This the court declines to do, where the significant weight of authority holds otherwise. See, e.g., Colleton Reg'l Hosp. v. MRS Med. Review Sys., Inc., 866 F. Supp. 896, 902 (D.S.C. 1994) ("[J]udicial remedies for non-fiduciary participation in a fiduciary breach fall within the line of cases where Congress deliberately omitted a potential cause of action rather than . . . invited the courts to engage in interstitial lawmaking.") (quoting Reich v. Rowe, 20 F.3d 25, 31 (1st Cir. 1994)); Spear v. Fenkell, No. 13-cv-02391, 2015 WL 518235, at *3 (E.D. Pa. Feb. 6, 2015) ("there is no contribution claim in favor of a non-fiduciary, under federal common law, in response to ERISA liability under Harris Trust");

_____

[4] The Swarma parties, in arguing that ERISA does not support claims for indemnification and contribution among co-fiduciaries, (see DE 62 at 11), cite to the Supreme Court's following statement in Russell: "We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." 473 U.S. at 147. However, as recognized by the Seventh Circuit, Russell dealt with a non-analogous situation:

Nothing in Russell undermines Free. . . . A cofiduciary seeking contribution or indemnification for a plan-related award is not analogous to a plan participant seeking extracontractual damages under an implied right of action for, say, emotional distress or pain and suffering.

Chesemore, 829 F.3d at 813 (citing Free v. Briody, 732 F.2d 1331 (7th Cir. 1984) (recognizing ERISA indemnification and contribution rights among co-fiduciaries)).

Petrilli v. Gow, 957 F.Supp. 366, 375 (D.Conn.1997) (non-fiduciaries cannot be sued under ERISA for contribution or indemnity); Nat'l Elec. Benefit Fund v. Heary Bros., 931 F.Supp. 169, 191-93 (W.D.N.Y.1995) (same); Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec. Inc., 823 F.Supp. 1191, 1194-95 (E.D.Pa.1993) (same); McLaughlin v. Biasucci, 688 F. Supp. 965, 967 (S.D.N.Y. 1988) (same); but see Daniels v. Bursey, 329 F. Supp. 2d 975 (N.D. Ill. 2004) (federal common law supplementing ERISA permits a contribution claim against a non-fiduciary who knowingly participated in fiduciary's breach).

Lubbock brings to the court's attention the decision in McDannold v. Star Bank, N.A., 261 F.3d 478 (6th Cir. 2001). However, in that case, the court recognized there is a circuit split regarding whether an ERISA fiduciary may pursue an action for contribution against another fiduciary, further stating as follows:

> Cogent opinions have been written supporting each view, reasoning from congressional intent, public policy, and traditional trust law. In fact, the instant case presents an even more challenging question as the appellants here would claim a right to contribution against ERISA non fiduciaries. Yet we do not decide now whether contribution can be claimed from either fiduciaries or nonfiduciaries. . . . Because the parties have yet to litigate their ERISA claims, we will not attempt to allocate liability among the defendants due to the significant factual questions that remain. Rather, we simply observe that the basis for the District Court's rejection of the right has been modified by a recent Supreme Court decision and we remand for reconsideration in light of that authority.

McDannold, 261 F.3d at 485-86 (citing Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000)).

Harris Trust, however, does not address the availability under ERISA for contribution among fiduciaries and non-fiduciaries and, in fact, undermines so finding. As recognized in Harris Trust, Congress created one mechanism for holding non-fiduciaries liable, the "equitable relief" provision, as found at 29 U.S.C. 1132(a)(3). The contours of the equitable relief provision are narrow in scope;

the Court explained non-fiduciary liability under this section is limited to those circumstances where a non-fiduciary "had actual or constructive knowledge of the circumstances that rendered [a fiduciary's] transaction unlawful," and then only for relief that is "'equitable' in nature." 530 U.S. at 250-53; see also Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages —monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief."). Although this section provides "appropriate equitable relief" against a non-fiduciary, it "does not … authorize 'appropriate equitable relief' at large, but only 'appropriate equitable relief' for the purpose of 'redress[ing] any] violations or … enforc[ing] any provisions' of ERISA or an ERISA plan." Harris Trust, 530 U.S. at 246 (quoting Peacock v. Thomas, 516 U.S. 349, 353 (1996)).

Additionally, declining to find the right of contribution among fiduciaries and non-fiduciaries is consistent with Congressional intent of deterring fiduciary misconduct, which the Fourth Circuit has held goes to the core of ERISA: "ERISA's primary aim is to protect individuals who participate in employee benefit plans" and "[t]o effectuate this goal, Congress established 'strict standards' of conduct for those with discretionary authority over employee benefit plans." Chao v. Malkani, 452 F.3d 290, 293 (4th Cir. 2006) (emphasis added) (citing Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985)); see also Reich, 20 F.3d at 32 ("extending the threat of liability over the heads of those who only lend professional services to a plan without exercising any control over, or transacting with, plan assets will deter such individuals from helping fiduciaries

navigate the intricate financial and legal thicket of ERISA").[5]

It is undisputed that Stout is a nonfiduciary. Stout moves to dismiss Lubbock's claim for contribution with prejudice, and the court so allows.[6]

2. Swarma Parties' Motion to Dismiss (DE 61)

Turning to the Swarma parties, Lubbock and these parties dispute whether Lubbock has sufficiently alleged the Swarma parties are fiduciaries to the ESOP.

As relevant to the instant case, ERISA defines fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . .

29 U.S.C. § 1002(21)(A). As stated by the Fourth Circuit, "[t]he statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992).

---

[5]     Citing Mertens, the Sharma parties argue that the "Supreme Court has clearly held that a fiduciary under ERISA cannot maintain a claim for indemnification or contribution from a non-fiduciary." (DE 62 at 10). However, Mertens did not address claims for indemnification or contribution. In Mertens, the Court held ERISA does not authorize suits for money damages against non fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. The Court assumed, without deciding, that non-fiduciaries who knowingly participate in a breach of fiduciary duty are liable under section 502(a)(3) and questioned whether the relief sought in that action was "equitable relief," holding that even if it were, the relief did not satisfy the other requirements of section 502(a)(3) that it was for the purpose of redressing any ERISA violations or enforcing ERISA or the plan. Mertens, 508 U.S. at 253. Accordingly, the Supreme Court affirmed the dismissal of plaintiffs' ERISA claim for monetary damages against the non-fiduciary. Id. at 263. Thereafter, as stated above, Harris Trust affirmatively decided non-fiduciaries who knowingly participate in a breach of fiduciary duty are liable under section 502(a)(3).

[6]     Given the court's holding above, it is unnecessary to address Stout's argument that Lubbock does not "seek any of the 'limited' forms of equitable relief that the Supreme Court has authorized under section 502(a)(3)." (DE 73 at 7).

As argued by Lubbock, (DE 71 at 21-22), Lubbock has alleged that Sharma was a key member of several named and functional fiduciary entities, as president and CEO of TBM, chair of the TBM board of directors, and a member of the TBM ESOP committee. (TP Compl. (DE 50) ¶¶ 4, 5, 12, 60). Lubbock has further alleged "Sharma individually exercised discretion over the disposition of ESOP plan assets, and in doing so acted as a fiduciary of the ESOP, individually and/or as an agent of other fiduciaries, including TBM." (Id. ¶ 12). Sharma, individually and through TBM, the TBM Board of Directors and the TBM ESOP committee, owed fiduciary duties to the ESOP, including to ensure that the 2011 transaction was not a nonexempt prohibited transaction. (Id. ¶¶ 4, 5, 12, 72, 77, 79, and 84). Sharma is also alleged to be the agent of Anand Sharma 2009 GRAT Trust and Lotus One, LLC for purposes of the 2011 transaction. (Id. ¶¶ 13-14).

Additionally, plaintiffs have alleged that Sharma "heavily influenced" the valuation of TBM's shares to maximize the amount paid, which is the genesis of the ESOP's alleged loss, as follows:

> Although Plaintiffs have not been given access to the [Stout] valuation report . . . prepared in connection with the ESOP Transaction, upon information and belief the [report] relied heavily on financial projections for the ensuing four years (2011-2015) which, influenced by Sharma, reflected substantial future increases in the business of TBM. These forecast increases over this period were inconsistent with the trajectory of TBM's actual financial performance, as audited, for the years 2006-2010, and with the internally prepared financial statements of TBM for the first seven months of 2011. Notably, the annual forward-looking valuations prepared by SRR on behalf of the ESOP Trustee from 2007 through 2010 also relied heavily on future financial projections prepared, or heavily influenced, by Sharma. These projections were never subsequently achieved and were well in excess of actual TBM performance.

(Compl. (DE 1) ¶¶ 34-36).[7]

In sum, Lubbock has alleged that Swarma held various titles; that he "exercised discretion over the disposition of the ESOP plan assets," although Lubbock does not identify in what way; and that he owed a fiduciary duty to the ESOP. Additionally, Lubbock relies on plaintiffs' allegations that Sharma "heavily influenced" future financial projections as utilized by Stout in preparing a valuation report for the 2011 transaction, although no details are provided as to this alleged influence.

Such allegations are insufficient. It is undisputed that Sharma was not a named fiduciary for the ESOP, nor is it alleged that he was assigned any specific fiduciary responsibility with regard to the 2011 transaction. Additionally, the allegations that Sharma "heavily influenced" the future financial projections, without more, do not raise Lubbock's right to relief above the speculative level. See Twombly, 550 U.S. at 555.

The Fourth Circuit has addressed a similar issue in Custer v. Sweeney, 89 F.3d 1156 (4th Cir. 1996). There plaintiff alleged that an attorney that represented the ERISA plan caused the plan at issue to enter into and continue with certain transactions by "(1) exercising discretionary decisionmaking authority over 'all aspects' of those transactions and (2) 'with [holding] vital information [from] and actively deceiv[ing]' the pension plan's trustees." Id. at 1162. The Fourth Circuit found such allegations insufficient, holding that "[w]hile Custer's amended complaint is replete with assertions of Sweeney's 'discretionary authority, control, and responsibility over the

_____

        7        Lubbock notes that because it had no reason to believe that Sharma had "heavily influenced" the financial information provided to it for the 2011 transaction, (TP Compl. (DE 50) ¶ 51), its third-party claim for indemnity and contribution is dependent on plaintiffs' claims, and Lubbock "must rely on Plaintiffs' allegations regarding Sharma's alleged misconduct with respect to the ESOP Transaction at this stage of the litigation without the benefit of discovery." (DE 71 at 22 n.8).

management of the Fund and certain assets of the Fund,' it nevertheless lacks any specific allegations capable of demonstrating that Sweeney transcended his role as legal counsel." Id. at 1163.

Lubbock cites in support of its position Perez v. Bruister, 823 F.3d 250 (5th Cir. 2016). In that case, the Fifth Circuit, on summary judgment, upheld the district court's determination that defendant was a "functional fiduciary," where defendant had been found to have committed the following actions:

> (1) firing the first appraiser for being too thorough, (2) hiring Donnelly to replace him, (3) influencing the outcome of Donnelly's valuations, (4) making his personal preferences known to Smith and Henry, and (5) actively participating in all of the meetings related to the subject transactions. Further, the findings show that David Johanson ("Johanson"), Bruister's personal lawyer, influenced the ESOP's decisionmaking through emails Johanson wrote to Donnelly (without copying the ESOP's counsel) indicating that Donnelly needed to "tweak" his findings in order to get a higher price for Bruister after Johanson reviewed Donnelly's initial valuations (without providing them to the ESOP's counsel).

Id. at 259–60. The current allegations as to Swarma, that he "heavily influenced" the future financial projections, are unlike the above detailed evidence presented in Perez.[8]

The court grants the Swarma parties' motion to dismiss. However, Lubbock's claims for contribution and indemnification against the Swarma parties are dismissed without prejudice, whereas here, it is not clearly indicated "that no amendment in the complaint could cure the defects in the [party's] case." See Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 623 (4th

---

[8]      Lubbock's citation to Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 241 (2d Cir. 2002), holding allegations as to the exercise of discretionary authority and control over a plan sufficient to allege fiduciary status, is not helpful to Lubbock where Smith is not binding authority and appears inconsistent with the Fourth Circuit's holding in Custer. Lubbock also argues that "[e]ven if the Sharma Parties are not deemed to be fiduciaries, however, LNB has sufficiently pled that the Sharma Parties knowingly participated in the alleged breach of fiduciary duty to maintain its claims against them as non-fiduciaries . . . and have liability to the ESOP pursuant to Harris Trust." (DE 71 at 22-23). The court has addressed and rejected this argument above.

Cir. 2015).[9]

## CONCLUSION

Based on the foregoing, the court GRANTS Stout's motion to dismiss, (DE 57), dismissing Lubbock's claim for contribution against Stout WITH PREJUDICE. The court GRANTS Swarma parties' motion to dismiss, (DE 61), dismissing Lubbock's claims contribution and indemnification against the Swarma parties WITHOUT PREJUDICE. Third-party defendants Stout and Swarma parties are DISMISSED from the case. Stay entered March 20, 2019, is LIFTED. Remaining parties to this action are directed to file no later than September 11, 2019, joint report and plan concerning discovery consistent with the court's initial order regarding planning and scheduling entered January 14, 2019.

SO ORDERED, this the 8th day of August, 2019.


LOUISE W. FLANAGAN
United States District Judge

---

[9] Given the court's holding above, it is unnecessary to address the Swarma parties' argument that Lubbock's claims are barred by the applicable statute of limitations.